UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

MICAH OVERBY,

                       Plaintiff,

           -against-

WENDELL ERIC FABIAN; TARIQ AKRAM;
STAPLES THE OFFICE SUPERSTORE EAST,
INC.; Detective GIANPAOLO DILISIO #36;
Police Officer MONTESANO #42; VILLAGE OF
ELMSFORD; ELMSFORD POLICE
DEPARTMENT; and JOHN and JANE DOE 1
through 10,

                     Defendants.

-----------------------------------------------------------------x

**COMPLAINT**

Jury Trial Demanded

17 CV 3377

## NATURE OF THE ACTION

1.    This is an action to recover money damages and declaratory relief arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5.    This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6.    Plaintiff demands a trial by jury in this action.

## PARTIES

7.    Plaintiff Micah Overby is a resident of Westchester County in the State of New York.

8.    Defendant Staples the Office Superstore East, Inc. is a corporate subsidiary of Staples, Inc. ("Staples"), a corporation with a principal place of business in Framingham, Massachusetts. Staples operates over 1,500 retail stores in North America, including a location at 339 Tarrytown Road, Elmsford, New York (the "Tarrytown Road Staples"), where plaintiff and defendants Fabian and Akram were employed at the time of plaintiff's arrest.

9.    Defendant Wendell Eric Fabian, at the time of plaintiff's arrest, was employed by Staples as a Field Loss Prevention Manager. Upon information and belief, defendant Fabian was subsequently terminated.

10.     Defendant Tariq Akram, at all relevant times, was employed by Staples as a manager at the Tarrytown Road Staples.

11.     The Village of Elmsford, located in Westchester County, is a public corporation organized under the laws of the State of New York. It operates the defendant Elmsford Police Department, an agency of defendant Village of Elmsford responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.     Defendant Detective Police Officer Gianpaolo Dilisio #36 ("Dilisio"), at all times relevant herein, was an officer, employee and agent of the Elmsford Police Department. Defendant Dilisio is sued in his individual and official capacities.

13.     Defendant Police Officer Montesano #42 ("Montesano"), at all times relevant herein, was an officer, employee and agent of the Elmsford Police Department. Defendant Montesano is sued in his individual and official capacities. Plaintiff does not know the real first name of defendant Montesano.

14.     At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the Elmsford Police Department

or employees of Staples. Plaintiff does not know the real names or, if applicable, shield numbers of defendants John and Jane Doe 1 through 10.

15.     At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the Village of Elmsford and the Elmsford Police Department or Staples. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

16.     At all times relevant herein, all individual defendants were acting under color of state law.

<u>STATEMENT OF FACTS</u>

17.     In October 2013, plaintiff Micah Overby took a job as a Copy and Print Associate at the Tarrytown Road Staples.

18.     Mr. Overby was supervised by defendant Akram, the store's General Manager.

19.     Plaintiff was considered an excellent and valued employee, as reflected in his performance evaluations.

20.     For example, in plaintiff's FY 2014 Annual Performance Appraisal, defendant Akram made note of Mr. Overby's "great customer service skills" and, in giving him high marks, described him as "responsible and reliable."

21.     From time to time, a Staples customer would request copy and print work that Staples either did not offer or could not complete on the required timeframe.

22.     In some such cases, Mr. Overby, a skilled graphic designer, offered to complete the customer's work from home on his own time.

23.     Such an arrangement is neither illegal nor violative of Staples' corporate policies.

24.     Mr. Overby accepted a variety of payment methods for his outside work, including Staples gift cards, which allowed Mr. Overby to purchase goods using his Staples employee discount.

25.     It was neither illegal nor improper for Mr. Overby to have accepted gift cards from customers or to have used those gift cards to purchase Staples products using his employee discount.

26.     Usually when Mr. Overby purchased Staples goods it was for his own use, but he also occasionally purchased products for resale.

27.     Again, there is no rule, statute, ordinance, etc. that prohibits a Staples employee from purchasing an item using an employee discount and then reselling it.

28.     Mr. Overby took a second job in September 2014 and notified defendant Akram that while he would still be available for his regularly scheduled hours of 7:00 a.m. to 1:00 p.m. Monday through Saturday, he would no longer be available to work

beyond those hours (as he had sometimes done during the busy season).

29. Mr. Overby was called to a meeting with defendant Akram and two other Staples supervisors where Akram told Mr. Overby that Akram was displeased that plaintiff's availability would be limited.

30. In the following weeks, plaintiff's schedule of working hours was drastically cut.

31. When Mr. Overby asked the supervisor responsible for setting employee schedules why his hours had been reduced, the supervisor told him that he had made no reduction to plaintiff's hours.

32. The supervisor explained to Mr. Overby that once the supervisor set the schedules, defendant Akram had intervened and specifically reduced Mr. Overby's hours.

33. Mr. Overby notified defendant Akram in writing that he believed Akram was improperly retaliating against him by reducing his hours.

34. Following that communication, Mr. Overby's schedule was returned to normal, but defendant Akram made his anger with plaintiff known, making comments over time such as telling Mr. Overby that he was "the only one of his employees that ever challenged him."

35. Less than a year later, on August 27, 2015, at approximately 12:45 p.m.,

Mr. Overby was called into defendant Akram's office, where he met defendant Wendell Eric Fabian, a Staples Field Loss Prevention Manager.

36.     In the presence of defendant Akram, defendant Fabian questioned Mr. Overby about two Staples purchases plaintiff had made earlier that month using Staples gift cards.

37.     Mr. Overby truthfully explained that he had made the purchases using gift cards given to him as payment by his graphic design customers and that there had been no fraud or violations of Staples corporate policies or the law in connection with either transaction.

38.     Defendant Fabian told Mr. Overby that Fabian was a former law enforcement officer and attempted to convince Mr. Overby of the false notion that plaintiff's conduct had amounted to a crime that had somehow caused a $5,390 loss to Staples.

39.     Defendant Fabian's statements to Mr. Overby were false and unfounded.

40.     During an ensuing interrogation process in which Fabian made repeated reference to plaintiff's unrelated prior felony conviction, Fabian threatened Mr. Overby with dire professional and legal consequences if plaintiff did not provide a written "confession" to the alleged "crime."

41.     Scared and intimidated, although still certain he had committed no

wrongdoing, plaintiff reluctantly agreed to provide a written statement.[1]

42.     As Fabian began dictating the statement to plaintiff, it became clear that Fabian was attempting to have plaintiff admit to a crime that had never occurred.

43.     Despite Fabian and Akram's efforts to frame Mr. Overby for the non-existent crime, plaintiff included language in the statement that clearly indicated that the transactions at issue were lawful and authorized by the customers involved.

44.     Unbeknownst to plaintiff, employees of the Elmsford Police Department had conspired with defendants Akram and Fabian to falsely accuse plaintiff of fraud.

45.     In furtherance of the conspiracy, four Elmsford Police Department officers were stationed outside the office ready to arrest plaintiff as soon as the statement was completed.

46.     Once the statement was prepared and signed by plaintiff and defendants Fabian and Akram, defendant Elmsford police officers entered the office and placed Mr. Overby under arrest.

47.      Mr. Overby was subjected to a humiliating false arrest in the presence of his co-workers and then booked on fabricated felony grand larceny charges.

48.     Defendant Fabian executed a supporting deposition, sworn to under

---

[1] Plaintiff hereby incorporates by reference all documents mentioned in this complaint.

penalty of perjury, that was then forwarded to Westchester County prosecutors in support of the felony charge.

49.     In his sworn deposition, defendant Fabian claimed that Mr. Overby had admitted to fraudulent use of customer credit cards and provided a written confession to that crime, material statements neither of which are true.

50.     Defendant Fabian included the additional material false statement that he had interviewed Mr. Overby in response to a "complaint of grand larceny."

51.     In reality, as all of the individual defendants knew at all relevant times, no one had ever reported that Mr. Overby had wrongfully used or charged any credit card or committed any other crime, or even violated any of Staples' corporate policies.

52.     Mr. Overby had never admitted to any such conduct, nor does his statement confess or amount to such conduct.

53.     In fact, by all accounts Mr. Overby's off-duty work for Staples' customers was highly regarded and conducted honorably.

54.     Without Mr. Overby's knowledge or consent, defendants Fabian and Akram, acting in concert with the Elmsford Police Department and its officers, altered and "white redacted" Mr. Overby's written statement to omit a line on the second page containing exculpatory language.

55.     The individual defendants then forwarded the altered evidence to

prosecutors in an effort to sustain the false larceny charges they had knowingly initiated.

56.     Relying on the perjured supporting deposition of defendant Fabian and the altered written statement of Mr. Overby, along with his own material false statement that plaintiff "did steal U.S. currency amount of (sic) $5,390" defendant Montesano of the Elmsford Police Department then filed a felony complaint in Elmsford Village Criminal Court against Mr. Oveby.

57.     No reasonable officer in Montesano's position would have sworn as he did on personal knowledge that plaintiff had stolen $5,390 without any evidence that even a single fraudulent or unauthorized transaction of any kind had taken place.

58.     Montesano's decision to knowingly initiate a criminal prosecution for larceny despite the absence of probable cause was consistent with and in fact pursuant to the policies and practices of the Elmsford Police Department.

59.     Neither the felony complaint nor the supporting deposition it cites, nor Mr. Overby's statement, contain any date certain on which any alleged fraudulent or wrongful conduct occurred, nor does it identify any victim.

60.     Mr. Overby was arraigned and bail was imposed.

61.     Unable to immediately post bail, Mr. Overby remained incarcerated for approximately nine days.

62.     As Mr. Overby sat in a jail cell on August 28, 2015, defendant Akram

prepared a "Staples Counseling Form" to document his "counseling" of Mr. Overby the day before in connection with plaintiff's "violation of company policies."

63. The counseling form recited the false fraud allegations and explained that Mr. Overby was terminated after having been arrested on grand larceny charges for having somehow stolen $5,390 from Staples and fictitious customers.

64. Mr. Overby was ultimately released on bond and forced to retain private counsel to defend the charges at significant expense.

65. The prosecution spanned 532 days.

66. Over that time, the government was unable to obtain a grand jury indictment and Mr. Overby was forced to return to Court repeatedly.

67. Still lacking any evidence and in the continuing absence of probable cause, defendant Dilisio signed a false Superseding Misdemeanor Information, reducing the felony charge to petit larceny, and filed it in Village Court on June 22, 2016.

68. As with the prior accusatory instruments, the Misdemeanor Information sworn to by Dilisio was defective in all respects.

69. All charges against Mr. Overby were dismissed – a favorable termination – on February 8, 2017.

70. This ordeal has profoundly impacted Mr. Overby's life.

71. Prior to Mr. Overby's arrest, in 2014, Mr. Overby and his wife had begun

in vitro fertilization treatments and Mr. Overby's sperm was surgically obtained and cryogenically frozen allowing for a five-year window of treatment.

72.     Following his arrest, Mr. Overby, newly unemployed, devoted his time and funds to defending his legal case and the couple was unable to continue fertility treatments.

73.     The window of time for treatments was thus materially diminished.

74.     Additionally, Mr. Overby not only lost his job at Staples for no reason, but the years-long pendency of the larceny prosecution prevented him from getting other jobs, including higher-paying jobs.

75.     Even though the charges were dismissed and entirely unfounded, the fact that felony larceny allegations were made against Mr. Overby will follow him for the rest of his life.

76.     When Mr. Overby reported the conduct of defendants Akram and Fabian through Staples' online ethics complaint system (called "EthicsPoint") in May 2016, a corporate agent responded:

> Thank you for speaking up. Your report has been investigated and appropriate action has been taken where necessary. After reviewing, the decision maker acted appropriately and we will be upholding the termination.

77.     Within ninety days after the claims alleged in this Complaint arose, a

written notice of claim was served upon the Elmsford Village Clerk via certified mail at 15 South Stone Avenue, Elmsford, New York 10523.

78. At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

79. This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

80. Mr. Overby suffered damage as a result of defendants' actions. Plaintiff was caused to expend attorneys' fees, deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, loss of employment, lost income, lost job opportunities, lost procreational opportunities, and damage to his reputation.

### FIRST CLAIM
#### Unlawful Stop and Search

81. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

82. The individual defendants, acting concert, violated the Fourth and Fourteenth Amendments because they stopped plaintiff without reasonable suspicion and caused him to undergo unnecessary and invasive searches, including searches while Mr. Overby was in jail.

83. As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

84. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages herein before alleged.

## SECOND CLAIM
### False Arrest

85. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

86. The individual defendants, acting in concert, violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

87. As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

88. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### Federal Malicious Prosecution

89. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

90.     By their conduct, as described herein, and acting under color of state law and in concert, the individual defendants are liable to plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

91.     Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive plaintiff of his constitutional rights. The prosecution by defendants of plaintiff constituted malicious prosecution in that there was no basis for the plaintiff's arrest, yet defendants continued with the prosecution, which was resolved in plaintiff's favor.

92.     As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

93.     As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FOURTH CLAIM
### State Law Malicious Prosecution

94.     Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

95. By their conduct, as described herein, defendants, acting in concert, are liable to plaintiff for having committed malicious prosecution under the laws of the State of New York.

96. Defendants maliciously commenced criminal proceedings against plaintiff, charging him with larceny. Defendants falsely and without probable cause charged plaintiff with violations of the laws of the State of New York.

97. The commencement and continuation of the criminal proceedings against plaintiff was malicious and without probable cause.

98. All charges were terminated in plaintiff's favor.

99. The individual defendants, acting in concert, were responsible for the malicious prosecution of plaintiff.

100. Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their wrongdoing under the doctrine of *respondeat superior*.

101. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## FIFTH CLAIM
### Denial of Constitutional Right to Fair Trial

102.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

103.   As outlined above, the individual defendants, acting in concert, created false evidence against plaintiff.

104.   The individual defendants forwarded false evidence to prosecutors in the Westchester County District Attorney's office.

105.   In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

106.   As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

107.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
## Malicious Abuse of Process

108. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

109. The individual defendants issued legal process to place plaintiff under arrest.

110. The individual defendants arrested plaintiff in order to obtain collateral objectives outside the legitimate ends of the legal process, to wit, *inter alia*, for defendant Fabian to improve his productivity as a loss prevention employee and for defendant Akram to punish Mr. Overby for the perceived challenge to his authority on the job.

111. The individual defendants acted with intent to do harm to plaintiff without excuse or justification.

112. As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

113. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Negligence; Negligent Hiring/Training/Retention/Supervision

114.    Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

115.    Defendants Village of Elmsford, Elmsford Police Department and Staples owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

116.    Upon information and belief, the individual defendants were unfit and incompetent for their positions.

117.    Upon information and belief, the Village of Elmsford and its police department, and Staples knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

118.    Upon information and belief, the Village of Elmsford and its police department and Staples's negligence in screening, hiring, training, disciplining, supervising and retaining these defendants proximately caused each of plaintiff's injuries.

119.   Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their negligent conduct under the doctrine of *respondeat superior*.

120.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Intentional Infliction of Emotional Distress

121.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

122.   By reason of the foregoing, the individual defendants, acting in concert, and within the scope of their employment, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon plaintiff.

123.   The intentional infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties.

124.   Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon plaintiff.

125.   Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their conduct under the doctrine of *respondeat superior*.

126. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## NINTH CLAIM
### Negligent Infliction of Emotional Distress

127. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

128. By reason of the foregoing, the defendants, acting in concert, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon plaintiff.

129. The negligent infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties.

130. Defendants, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon plaintiff.

131. Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their conduct under the doctrine of *respondeat superior*.

132. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH CLAIM
### Failure to Intervene

133.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

134.   Those Elmsford Police Department defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

135.   Accordingly, the officer defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

136.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH  CLAIM
### *Monell*

137.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

138.   A moving force behind the injuries plaintiff suffered were policies, practices and customs of the Elmsford Police Department ("EPD").

139. As a matter of policy and practice, the EPD does not independently investigate larceny complaints presented by loss prevention officers at Elmsford's retail stores.

140. As a matter of policy and practice, the EPD does not require that retailers identify specific victims or transactions when presenting larceny complaints, and accepts broad, generalized and legally insufficient allegations despite the absence of probable cause.

141. As a matter of policy and practice, the EPD routinely rubber-stamps or, as here, actively abets the false arrest, malicious prosecution and fabrication of evidence against law-abiding employees and customers, in circumstances where, as here, a facially valid complaint cannot be prepared on the existing facts.

142. As a matter of policy and practice, the EPD's training with respect to the investigation of larceny complaints from retailers is constitutionally deficient.

143. As a matter of policy and practice, the EPD hires officers who are unable to maintain constitutional standards with respect to their investigations.

144. As a matter of policy and practice, the EPD retains officers who are unable to maintain constitutional standards with respect to their investigations.

145. The unconstitutional policies and practices described herein were promulgated, tolerated and ratified by the highest policy-making officials at the EPD.

146. As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TWELFTH CLAIM
### Conspiracy

147. Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

148. The Elmsford Police Department employee defendants and the Staples employee defendants agreed to violate provisions of the state and federal constitution, to arrest and prosecute Mr. Overby in the absence of arguable probable cause and to fabricate evidence against.

149. The individual defendants took several overt acts in furtherance of their agreement, including the fabrication of evidence and the making of false statements to prosecutors.

150. These acts resulted in a violation of plaintiff's rights to due process and to be free from unlawful search and seizure.

151.   Mr. Overby was, *inter alia*, deprived of his liberty and forced to defend against false criminal charges while facing the prospect of incarceration if he were convicted.

152.   Accordingly, defendants violated the Fourth, Fifth, Sixth and Fourteenth Amendment because they conspired to deprive Mr. Overby of his rights.

153.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants and Staples, jointly and severally;

(c) A declaration that plaintiff's rights were violated by the defendants;

(d) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(e) Such other and further relief as this Court deems just and proper.

Dated:      May 5, 2017
             New York, New York

                                     HARVIS & FETT LLP

                                     _____

                                     Gabriel P. Harvis
                                     305 Broadway, 14th Floor
                                     New York, New York 10007
                                     (212) 323-6880
                                     gharvis@civilrights.nyc

                                     *Attorneys for plaintiff*