UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
MICAH OVERBY,

                           Plaintiff,

                -against-

WENDELL ERIC FABIAN; TARIQ AKRAM;
STAPLES THE OFFICE SUPERSTORE EAST,
INC.; Detective GIANPAOLO DILISIO #36;
Police Officer MONTESANO #42; Elmsford
Police Chief STEPHEN FOSTER; VILLAGE OF
ELMSFORD; ELMSFORD POLICE
DEPARTMENT; and JOHN and JANE DOE 1
through 10,

                        Defendants.

----------------------------------------------------------------x

**FIRST AMENDED COMPLAINT**

Jury Trial Demanded

17 CV 3377 (CS)

## NATURE OF THE ACTION

1.    This is an action to recover money damages and declaratory relief arising out of the violation of plaintiff's rights under the Constitution.

## JURISDICTION AND VENUE

2.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States and the laws of the State of New York.

3.    The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343 and 1367(a).

4.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391 (b) and (c).

5.      This Court has supplemental jurisdiction over the New York State claims pursuant to 28 U.S.C. § 1367.

## JURY DEMAND

6.      Plaintiff demands a trial by jury in this action.

## PARTIES

7.      Plaintiff Micah Overby is a resident of Westchester County in the State of New York.

8.      Defendant Staples the Office Superstore East, Inc. is a corporate subsidiary of Staples, Inc. ("Staples"), a corporation with a principal place of business in Framingham, Massachusetts. Staples operates over 1,500 retail stores in North America, including a location at 339 Tarrytown Road, Elmsford, New York (the "Tarrytown Road Staples"), where plaintiff and defendants Fabian and Akram were employed at the time of plaintiff's arrest. Staples is responsible for hiring, training, supervising, disciplining and retaining defendants Fabian and Akram.

9.      Defendant Wendell Eric Fabian, at the time of plaintiff's arrest, was employed by Staples as a Field Loss Prevention Manager. Upon information and belief, defendant Fabian was subsequently terminated.

10.     Defendant Tariq Akram, at all relevant times, was employed by Staples as a General Manager at the Tarrytown Road Staples.

11.     The Village of Elmsford, located in Westchester County, is a public corporation organized under the laws of the State of New York. It operates the defendant Elmsford Police Department, an agency of defendant Village of Elmsford responsible for the appointment, training, supervision, promotion and discipline of police officers and supervisory police officers, including the individually named defendants herein.

12.     Defendant Detective Police Officer Gianpaolo Dilisio #36 ("Dilisio"), at all times relevant herein, was an officer, employee and agent of the Elmsford Police Department. Defendant Dilisio is sued in his individual and official capacities.

13.     Defendant Police Officer Montesano #42 ("Montesano"), at all times relevant herein, was an officer, employee and agent of the Elmsford Police Department. Defendant Montesano is sued in his individual and official capacities. Plaintiff does not know the real first name of defendant Montesano.

14.     Defendant Police Chief Stephen Foster ("Foster"), at all times relevant herein, was an officer, employee and agent of the Elmsford Police Department. Defendant Foster is sued in his individual and official capacities.

15.    At all times relevant defendants John and Jane Doe 1 through 10 were police officers, detectives or supervisors employed by the Elmsford Police Department or employees of Staples. Plaintiff does not know the real names or, if applicable, shield numbers of defendants John and Jane Doe 1 through 10.

16.    At all times relevant herein, defendants John and Jane Doe 1 through 10 were acting as agents, servants and employees of the Village of Elmsford and the Elmsford Police Department or Staples. Defendants John and Jane Doe 1 through 10 are sued in their individual and official capacities.

17.    At all times relevant herein, the Elmsford Police defendants were acting under color of state law.

18.    Defendant Fabian and Akram's conduct inside the interrogation room on August 25, 2017 also constituted action under color of state law, as they functioned as arms of the State, working hand in glove with friendly police officers to circumvent *Miranda* protections, coerce Mr. Overby and prosecute him on false charges.

## STATEMENT OF FACTS

19.    In October 2013, plaintiff Micah Overby took a job as a Copy and Print Associate at the Tarrytown Road Staples.

20.    Mr. Overby was supervised by defendant Akram, the store's General

Manager.

21.    Plaintiff was considered an excellent and valued employee, as reflected in his performance evaluations.

22.    For example, in plaintiff's FY 2014 Annual Performance Appraisal, defendant Akram made note of Mr. Overby's "great customer service skills" and described him as "responsible and reliable." *See* Performance FY 2014 Annual Performance Appraisal, annexed hereto as Exhibit 1, p. 6.

23.    From time to time, a Staples customer would request copy and print work that Staples either did not offer or could not complete on the required timeframe.

24.    In some such cases, Mr. Overby, a skilled graphic designer, offered to complete the customer's work from home on his own time.

25.    At no time did Mr. Overby ever cause Staples to lose any customer sales as a result of his outside graphic design work.

26.    There is nothing illegal in such an arrangement.

27.    Nor is it violative of Staples' corporate policies. *See* Staples Code of Conduct, annexed hereto as Exhibit 2 (no prohibition on good faith business dealings with customers); Staples EthicsPoint FAQ, annexed hereto as Exhibit 3 (same); Staples Code of Ethics, annexed hereto as Exhibit 4 (hortatory discouragement of business dealings with customers at p. 8, but no bright-line prohibition) (collectively "Staples Ethics

Guidance").

28.    Mr. Overby accepted a variety of payment methods for his outside work, including Staples gift cards, which allowed Mr. Overby to purchase goods using his Staples employee discount. *See* Statement of Micah Overby dated August 27, 2015, annexed hereto as Exhibit 5 ("Overby Statement"), p. 1; *see also* Letter dated February 25, 2016 by Mrs. Carol Blakney, annexed hereto as Exhibit 6 ("Blakney Letter").

29.    It was neither illegal nor improper for Mr. Overby to have accepted gift cards from customers in exchange for his graphic design services, or to have used those gift cards to purchase Staples products using his employee discount. *See* Staples Ethics Guidance, Exhibits 2-4.

30.    Plaintiff respectfully submits that his outside work, conducted honorably, was in fact of material benefit to Staples in its positive reflection of the store and corporation, and that no reasonable person evaluating the circumstances could conclude otherwise. *See* Letter dated July 20, 2015 by Deborah V. Tesler, M.D. ("Tesler Letter"), annexed as Exhibit 10.

31.    Usually when Mr. Overby purchased Staples goods it was for his own use, but he also occasionally purchased products for resale. Overby Statement, Exhibit 5.

32.    Again, there is no rule, statute, ordinance, etc. that prohibits a Staples employee from purchasing an item using a valid employee discount and then reselling it.

*See* Staples Ethics Guidance, Exhibits 2-4.

33.     Mr. Overby took a second job in September 2014 and notified defendant Akram that while he would still be available for his regularly scheduled hours of 7:00 a.m. to 1:00 p.m. Monday through Saturday, he would no longer be available to work beyond those hours (as he had sometimes done during the busy season). *See* E-mail from M. Overby to A. Akram dated September 4, 2014, annexed hereto as Exhibit 7.

*34.*     The next day, Mr. Overby was summoned to a meeting with defendant Akram and two other Staples supervisors, Ousseynou Gaye and Harry Torres, where Akram "made it very clear" to Overby that Akram disapproved of plaintiff's scheduling requests, deeming them impertinent. *See* E-Mail from T. Akram to M. Overby dated September 6, 2014, annexed hereto as Exhibit 8.

35.     From then on, Akram engaged in a persistent pattern of retaliatory conduct, including arbitrarily and punitively limiting plaintiff's working hours. *See* E-mail from M. Overby to T. Akram dated September 13, 2014, annexed hereto as Exhibit 9.

36.     Following Mr. Overby's September 13th communication, defendant Akram made his anger with plaintiff known, commenting over time that Mr. Overby was "the only one of his employees that ever challenged him."

37.     During this period, on at least one occasion, defendant Akram, in his

capacity as General Manager of the Tarrytown Road Staples, violated Staples' corporate policies and instructed Mr. Overby to provide free print services to defendant Akram's personal friend, an off-duty detective in the Elmsford Police Department who was later personally involved in plaintiff's arrest. *See* Staples Ethical Guidance, Exhibits 2-4.

38.     As directed by Akram, Mr. Overby complied and provided Staples services to the detective without payment.

39.     On August 27, 2015, at approximately 12:45 p.m., Mr. Overby was called into defendant Akram's office, where he met defendant Wendell Eric Fabian, a Staples Field Loss Prevention Manager.

40.     Had Staples conducted even a cursory examination of defendant Fabian's background, and looked only at publicly-available information, it would have been obvious that he was a poor candidate for Field Loss Prevention Manager.

41.     Defendant Fabian was a detective in the City of Baltimore Police Department ("BPD") until November 2000, when he was arrested for an incident of alleged domestic violence. *See Fabian v. Baltimore Police Department*, No. 24-C-03-003975, Trial Motion, Memorandum and Affidavit of Deputy Legal Counsel Peter Saar, 2003 WL 25501752 (Md. Cir. Ct. 2003), annexed hereto as Exhibit 13.

42.     Following his arrest, Fabian was promptly suspended from the police force. *Id.*

-8-

43.     A BPD Internal Affairs investigation followed, resulting in sustained misconduct findings on multiple charges. *Id.*

44.     Seeking his termination, BPD Command Officials ultimately charged Fabian with several violations of BPD's Rules and Regulations. *See Fabian v. Baltimore Police Department*, No. 24-C-03-003975, Trial Motion, Memorandum and Affidavit of City Solicitor Ralph S. Tyler, 2003 WL 25501751 (Md. Cir. Ct. 2003), annexed hereto as Exhibit 14, p. 1.

45.     With the disciplinary trial scheduled, Fabian, through his lawyer, ultimately agreed to resign, effective June 18, 2002, in exchange for administrative termination of the disciplinary proceedings. *Id.*

46.     According to BPD, Fabian then waited for the disciplinary proceedings to be administratively closed and then reneged on his agreement to resign. *Id.*

47.     BPD then terminated Fabian. *Id.*

48.     Presumably disqualified from any future career in law enforcement, Fabian then began working in a series of loss prevention jobs with private companies. *See* Linkedin Résumé of Eric Fabian, annexed hereto as Exhibit 15.[1]

49.     A trail of fraud allegations dogged Fabian as he moved from job to job.

---

[1] Notably, despite his having been suspended by BPD on or about November 21, 2000, Fabian's resume lists him as a detective in the BPD through "June 2003." *Id.*

50.    Fabian worked as an Asset Protection Manager at Wal-Mart from November 2008 to August 2010. *Id.*

51.    Wal-Mart accused Fabian of filing "fraudulent cases" and fired him. *Fabian v. Wal-Mart Stores, Inc.*, 11 CV 3414 (AW) (D. Md.), Complaint, Docket Entry No. 1, annexed hereto as Exhibit 16, at ¶¶ 16-17.

52.    At CVS Health, where, according to his résumé, Fabian worked from February 2011 to September 2012, he was apparently fired after Store Manager Luis Acosta accused him of falsifying time and attendance records and allegedly, in July 2012, threatening to "snap the neck" of his supervisor. *See Fabian v. CVS LLC*, 15 CV 5182 (VB) (S.D.N.Y.), Complaint, Docket Entry No. 1, annexed hereto as Exhibit 17, at, *e.g.*, p. 14, ¶ 1 and p. 20, ¶ 18.

53.    In Fabian's various complaints, he describes work in the loss prevention industry as high-pressure, with supervisors demanding the delivery of theft cases at any cost. *See* Exhibit 16 at ¶ 9 and Exhibit 17 at, *e.g.*, p. 5.

54.    Inside the interrogation room with Micah Overby on August 27, 2015, Fabian and Akram, with their police officer friends waiting outside to arrest plaintiff, functioned as agents of the State, aggressively questioning Mr. Overby using confrontational, guilt-presumptive law enforcement tactics, including utter lies, to extract a statement they could use to initiate charges against plaintiff, without

administering *Miranda* warnings.

55.     As Akram looked on, Fabian, knowing there was no evidence of his allegations, vehemently insisted that Mr. Overby was guilty of criminal conduct in connection with two Staples purchases he had made earlier that month using valid Staples gift cards.

56.     Mr. Overby truthfully explained that he had made the purchases using gift cards given to him as payment by his graphic design clients and that there had been no fraud or violations of Staples corporate policies or the law in either transaction.

57.     Fabian and Akram told Mr. Overby that Fabian was a former law enforcement officer and attempted to convince Mr. Overby of the false notion that plaintiff's conduct had amounted to a crime that had somehow caused a $5,390 loss to Staples.

58.     Defendant Fabian and Akram's statements to Mr. Overby were false, unfounded and coercive.

59.     N.Y.C.P.L. § 60.45(2)(a) codifies the common law rule excluding involuntary confessions and applies to governmental and private actors alike. *See People v. Grillo,* 176 A.D.2d 346, 574 N.Y.S.2d 583 (2d Dept.1991).

60.     It provides:

A confession, admission or other statement is "involuntarily made" by a defendant when it is obtained from him:

(a) By any person by the use or threatened use of physical force upon the defendant or another person, or by means of any other improper conduct or undue pressure which impaired the defendant's physical or mental condition to the extent of undermining his ability to make a choice whether or not to make a statement ...

*People v. Padilla*, 154 Misc. 2d 585, 589, 587 N.Y.S.2d 500, 502 (Crim. Ct. 1992).

61.     During an interrogation process in which defendants Akram and Fabian made repeated reference to plaintiff's unrelated prior felony conviction, Fabian and Akram threatened Mr. Overby with dire professional and legal consequences if plaintiff did not provide a written "confession" to the alleged "crime."

62.     Scared and intimidated, although still certain he had committed no wrongdoing, plaintiff reluctantly agreed to provide a written statement. *Id.*

63.     As Fabian began dictating the statement to plaintiff, it became clear that Fabian was attempting to have plaintiff admit to a crime that had never occurred.

64.     Despite Fabian and Akram's efforts to frame Mr. Overby for the non-existent crime, plaintiff included language in the statement that clearly indicated that the transactions at issue were lawful and authorized by the customers involved. *See* Statement of Micah Overby dated August 27, 2015, annexed hereto as Exhibit 18, at

p. 1:

> As a copy and print associate, I used my expertise in graphic
> design to charge customers for design work by having them
> purchase gift cards for me in return for graphic design work
> that I would do on my free time.

65.    Fabian and Akram knew that plaintiff was completely innocent of criminal

wrongdoing, but nevertheless coerced Mr. Overby in the hope of initiating a criminal

prosecution against him with the help of the Elmsford Police Department.

66.    The Elmsford Police Department obliged by doing no investigation

whatsoever and adding its own affirmative false statements.

67.    The statement Fabian and Akram extracted from plaintiff did not satisfy

the elements of any crime under the Penal Law.

68.    Unbeknownst to plaintiff, employees of the Elmsford Police Department

including, upon information and belief, the detective who is personal friends with Tariq

Akram and for whom Akram had provided Staples services *gratis*, had conspired with

defendants Akram and Fabian to advance the false theft charges.

69.    In furtherance of the conspiracy, four Elmsford Police Department

officers were stationed outside the office ready to arrest plaintiff as soon as the

"statement" was completed.

70.    Once the statement was prepared and signed by plaintiff and defendants

Fabian and Akram, defendant Elmsford police officers entered the interrogation room and placed Mr. Overby under arrest.

71.     One of the officers involved was Akram's friend.

72.     Mr. Overby was subjected to a humiliating false arrest in the presence of his co-workers and then booked on fabricated felony grand larceny charges.

73.     Defendant Fabian executed a supporting deposition, sworn to under penalty of perjury, that was forwarded to Westchester County prosecutors in support of the felony charge.

74.     In his sworn deposition, defendant Fabian falsely stated that Mr. Overby had admitted to fraudulent use of customer credit cards and provided a written confession to that crime, material misstatements. The statement was witnessed by defendant Montesano. *See* Statement of Eric Fabian dated August 27, 2015, annexed hereto as Exhibit 11.

75.     Defendant Fabian included the additional material false statement that he had interviewed Mr. Overby in response to a "complaint of grand larceny." *Id.*

76.     In reality, as all of the individual defendants knew at all relevant times, no one had ever reported that Mr. Overby had wrongfully used or charged any credit card or committed any other crime, or even violated any of Staples' corporate policies. *See* Blakney Letter, Exhibit 6; Tesler Letter, Exhibits 10; Staples Ethics Guidance, Exhibits

2-4.

77.    Mr. Overby had never admitted to any such conduct, nor does his statement confess or amount to such conduct.

78.    In fact, by all accounts Mr. Overby's off-duty work for Staples' customers was highly regarded and conducted honorably. *See* Blakney Letter, Exhibit 6; Tesler Letter, Exhibit 10.

79.    Upon his arrest, plaintiff immediately and repeatedly notified police officers that the allegations were false, specifically explained what happened, and demanded an investigation.  *See* E-mail from M. Overby to Defendant Stephen Foster dated June 14, 2016, annexed hereto as Exhibit 19.

80.    Without Mr. Overby's knowledge or consent, defendants Fabian and Akram, acting in concert with the Elmsford Police Department and its officers, materially altered and "white redacted" Mr. Overby's written statement to omit a line on the second page. *See* Altered Statement, annexed hereto as Exhibit 18.

81.    In furtherance of the conspiracy to falsely accuse plaintiff, the Elmsford police defendants forwarded the altered and flawed evidence to prosecutors and caused charges to be filed, without conducting a reasonable investigation or possessing any knowledge of the predicate facts underlying the alleged transactions.

82.    Relying on the perjured supporting deposition of defendant Fabian and

the altered and coerced written statement of Mr. Overby, along with his own material false statements regarding an investigation that was allegedly conducted, but in fact did not occur, defendant Montesano of the Elmsford Police Department filed a felony complaint in Elmford Village Criminal Court claiming, on direct knowledge, that Mr. Overby "did steal U.S. currency amount of (sic) $5,390." *People of the State of New York v. Micah Overby*, Felony Complaint, annexed as Exhibit 12.



Be it known that the complainant herein P.O Montesano #42 of the Village of Elmsford Police Department, Westchester County, New York, accuses the defendant(s) named above of the following offenses committed at 339 Tarrytown Road, Elmsford New York between the month of April 2015 and August 27, 2015.

**COUNT ONE: § 155.35 Grand larceny in the third degree**.

A person is guilty of grand larceny in the third degree when he or she steals property and:
    1. when the value of the property exceeds three thousand dollars.

**Grand larceny in the third degree is a class D Felony**

**To wit:** The defendant(s) at the above date, time and place, did steal the U.S currency amount of $5,390 dollars from Staples Inc. through Staples cash cards. Defendant did admit to the above crime to Staples Inc. Loss Prevention Management, as well as provide a written statement.

The above allegations of fact are made by the complainant herein on direct knowledge (and upon information and belief), with the source(s) of complainant's information and the grounds for his belief being police investigation and witness statement.

**NOTICE: PURSUANT TO THE PENAL LAW, SECTION 210.45, IT IS A CRIME PUNISHABLE AS A CLASS A MISDEMEANOR TO KNOWINGLY MAKE A FALSE STATEMENT HEREIN.**

August 27, 2015

Signed,  *P.O Montesano #42*     RECEIVED
                                   AUG 2 0 2015

                P.O Montesano #42

*Figure 1* – Felony Complaint, Exhibit 12 (annotation by counsel).

83. No reasonable officer in Montesano's position would have sworn as he did on personal knowledge that plaintiff had stolen $5,390 without any evidence that even a single fraudulent or unauthorized transaction of any kind had taken place.

84. The law is well-settled that a police officer initiating a prosecution must have probable cause as to the specific charged offense, here N.Y.P.L. § 155.35. *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 536 (S.D.N.Y. 2015) (collecting cases).

85. Such probable cause must extend to every element of the relevant crime. N.Y.C.P.L. 200.50(7); *see People v. First Meridian Planning Corp.*, 201 A.D.2d 145, 154, 614 N.Y.S.2d 811, 817 (1994), *aff'd,* 86 N.Y.2d 608, 658 N.E.2d 1017 (1995).

86. Arguable probable cause to arrest for violation of Penal Law § 155.35 requires an officer, at the very least, to possess sufficient evidence to establish that the actual value of the stolen property exceeds $3,000 with specificity and without approximation. *People v. Christburg*, 46 Misc. 3d 941, 943, 999 N.Y.S.2d 888, 890 (Sup. Ct. 2014) (collecting cases). "Conclusory statements and rough estimates of value that are unsupported by a basis of knowledge are insufficient" as a matter of law. *People v. Sutherland*, 102 A.D.3d 897, 899, 961 N.Y.S.2d 198, 199 (2013) (collecting cases) (quotation marks and citations omitted).

87. Neither the felony complaint itself, nor the supporting deposition it cites, nor Mr. Overby's statement, contain any date certain on which any alleged theft

occurred, nor do they identify any victim, itemize the allegedly stolen sum or reasonably describe the mechanism by which it was taken. *See* Exhibits 11-12 and 18.

88.    This is because none of the defendants possessed such information.

89.    P.O. Montesano (and all defendants) thus lacked arguable probable cause as to any element of the charged felony offense as a matter of law. *See Schwartz v. Marcantonatos*, 567 F. App'x 20, 23 (2d Cir. 2014) (noting an absence of arguable probable where police officers "failed to consider the honest alternative") (citing *Provost v. City of Newburgh*, 262 F.3d 146, 158 (2d Cir. 2001)).

90.    Following his arrest, Mr. Overby was arraigned and bail was imposed.

91.    Unable to immediately post bail, Mr. Overby remained incarcerated for approximately nine days.

92.    As Mr. Overby sat in a jail cell on August 28, 2015, defendant Akram prepared a "Staples Counseling Form" to document his "counseling" of Mr. Overby the day before in connection with plaintiff's "violation of company policies." *See* Staples Counseling Form dated August 28, 2015, annexed hereto as Exhibit 20.

93.     The counseling form describes the alleged conduct in wholly conclusory terms as both "fraud" and "grand larceny" when there are no facts whatsoever to support either allegation. *Id.*

94.    Akram's preparation of the counseling form was in furtherance of the

conspiracy.

95.   Mr. Overby was ultimately released on bond and forced to retain private counsel to defend the charges at significant expense.

96.   The prosecution spanned 532 days.

97.   Mr. Overby diligently and vigorously brought his innocence, the lack of evidence, and the coercive and unlawful circumstances of his arrest and prosecution to the attention of the Staples Corporation, the Village of Elmsford Police Department, the Westchester District Attorney and the New York State Attorney General. *See* Complaints, annexed hereto as Exhibits 18 and 26.

98.   On May 22, 2016, Mr. Overby provided a detailed account of the misconduct perpetrated by Staples employees Akram and Fabian through Staples' online ethics complaint system (called "EthicsPoint"). *See* EthicsPoint Complaint, annexed hereto as Exhibit 24.

99.   On June 17, 2016, with the unfounded criminal charges still pending and, upon information and belief, Fabian having been terminated, Staples posted the following response:

> Thank you for speaking up. Your report has been investigated and appropriate action has been taken where necessary. After reviewing, the decision maker *acted appropriately* and we will be upholding the termination. *Id.* (emphasis added).

-19-

100.   Mr. Overby described the issues in detail in a letter he sent to defendant Stephen Foster, Chief of the Elmsford Police Department, by Certified Mail on June 2, 2016. *See* Letter from M. Overby to S. Foster dated June 2, 2016, annexed hereto as Exhibit 23.

101.   Mr. Overby followed by sending Foster an email on June 14, 2016. *See* Exhibit 19.

102.   The details provided by Mr. Overby were more than sufficient to put Staples and defendant Foster on notice of their employees' ongoing unlawful conduct.

103.   Upon information and belief, neither Staples nor defendant Foster took any steps to investigate Mr. Overby's allegations or to remedy the situation.

104.   The government was unable to obtain a grand jury indictment and Mr. Overby was forced to return to Court repeatedly, as the prosecution dragged on.

105.   Still lacking any evidence and in the continuing absence of probable cause, and without continuing any investigation whatsoever in spite of plaintiff's clear notice, defendant Dilisio signed a false Superseding Misdemeanor Information, reducing the felony charge to petit larceny, and filed it in Village Court on June 22, 2016.

106.   As with the prior accusatory instruments, the Misdemeanor Information sworn to by Dilisio was defective in all respects.

107.   All charges against Mr. Overby were dismissed – a favorable termination

– on February 8, 2017. *See* Letter from J. Kahn to M. Overby dated February 9, 2017, annexed as Exhibit 21; Certificate of Disposition, annexed hereto as Exhibit 22.

108.    This ordeal has profoundly impacted Mr. Overby's life.

109.    Prior to Mr. Overby's arrest, in 2014, Mr. Overby and his wife had begun in vitro fertilization treatments and Mr. Overby's sperm was surgically obtained and cryogenically frozen allowing for a five-year window of treatment.

110.    Following his arrest, Mr. Overby, newly unemployed, devoted his time and funds to defending his legal case and the couple was unable to continue fertility treatments.

111.    The window of time for treatments was thus materially diminished.

112.    Additionally, Mr. Overby not only lost his job at Staples for no reason, but the years-long pendency of the larceny prosecution prevented him from getting other jobs, including higher-paying jobs.

113.    Even though the charges were dismissed and entirely unfounded, the fact that felony larceny allegations were made against Mr. Overby will follow him for the rest of his life.

114.    On March 16, 2017, Mr. Overby and his wife went to the Tarrytown Road Staples to print a photo.

115.    A manager with a cell phone in her hand approached the couple, and told

Mr. Overby, in sum and substance, "the boss," referring to defendant Akram, "wants him out of the store."

116.   Defendant Akram's voice could be heard shouting through the manager's cell phone.

117.   Mr. Overby and his wife left the store humiliated and reported the incident to Staples.

118.   Mr. Overby later received a voicemail:

> I am calling to speak with Micah Overby. My name is Laurie and I work for Staples. I wanted to get in touch with you regarding a issue that you reported at one of the stores. I have completed an investigation and wanted to reach out to you and to your wife to let you know that you are *not* banned from Staples. I apologize for any inappropriate behavior that's been shown towards you and you should be expecting a phone call from the GM and/or the District Manager, apologizing for having been asked to leave the store.

> Voicemail, available at http://tinyurl.com/overbyvm.

119.   Upon information and belief, neither the GM nor the District Manager ever contacted Mr. Overby to apologize.

120.   Within ninety days after the claims alleged in this Complaint arose, a written notice of claim was served upon the Elmsford Village Clerk via certified mail at 15 South Stone Avenue, Elmsford, New York 10523.

121.   At least thirty days have elapsed since the service of the notice of claim, and adjustment or payment of the claim has been neglected or refused.

122.   This action has been commenced within one year and ninety days after the happening of the events upon which the claims are based.

123.   Mr. Overby suffered damage as a result of defendants' actions. Plaintiff was caused to expend attorneys' fees, deprived of his liberty, suffered emotional distress, mental anguish, fear, pain, anxiety, embarrassment, humiliation, loss of employment, lost income, lost job opportunities, lost procreational opportunities, and damage to his reputation.

## FIRST CLAIM
### False Arrest
(Against Fabian, Akram and Montesano and the three unidentified Elmsford Police Officers)

124.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

125.   The individual defendants, acting in concert, violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause.

126.   As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

127.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SECOND CLAIM
### Federal Malicious Prosecution
(Against Fabian, Montesano and Delision)

128.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

129.   By their conduct, as described herein, and acting under color of state law and in concert, the individual defendants are liable to plaintiff under 42 U.S.C. § 1983 for the violation of his constitutional right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution.

130.   Defendants' unlawful actions were done willfully, knowingly, with malice and with the specific intent to deprive plaintiff of his constitutional rights. The prosecution by defendants of plaintiff constituted malicious prosecution in that there was no basis for the plaintiff's arrest, yet defendants continued with the prosecution, which was resolved in plaintiff's favor.

131.   As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior.*

-24-

132.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## THIRD CLAIM
### State Law Malicious Prosecution
(Against Fabian, Montesano and Delision)

133.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

134.   By their conduct, as described herein, defendants, acting in concert, are liable to plaintiff for having committed malicious prosecution under the laws of the State of New York.

135.   Defendants maliciously commenced criminal proceedings against plaintiff, charging him with larceny. Defendants falsely and without probable cause charged plaintiff with violations of the laws of the State of New York.

136.   The commencement and continuation of the criminal proceedings against plaintiff was malicious and without probable cause.

137.   All charges were terminated in plaintiff's favor.

138.   The individual defendants, acting in concert, were responsible for the malicious prosecution of plaintiff.

139.   Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their wrongdoing under the doctrine of *respondeat superior*.

140.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<u>FOURTH CLAIM</u>
**Denial of Constitutional Right to Fair Trial**
(Against Fabian and Montesano)

141.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

142.   As outlined above, the individual defendants, acting in concert, created false evidence against plaintiff.

143.   The individual defendants forwarded false evidence to prosecutors in the Westchester County District Attorney's office.

144.   In creating false evidence against plaintiff, and in forwarding false information to prosecutors, the individual defendants violated plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution.

145.   As the employer of defendants Fabian and Akram, defendant Staples is responsible for their conduct under the theory of *respondeat superior*.

146.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

### FIFTH CLAIM
**Negligence; Negligent Hiring/Training/Retention/Supervision**
**(Against All Defendants)**

147.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

148.   Defendants Village of Elmsford, Elmsford Police Department and Staples owed a duty of care to plaintiff to prevent the conduct alleged, because under the same or similar circumstances a reasonable, prudent, and careful person should have anticipated that injury to plaintiff or to those in a like situation would probably result from the foregoing conduct.

149.   Upon information and belief, the individual defendants were unfit and incompetent for their positions.

150.   Upon information and belief, the Village of Elmsford and its police department, and Staples knew or should have known through the exercise of reasonable diligence that the individual defendants were potentially dangerous.

151.   Upon information and belief, the Village of Elmsford and its police department and Staples's negligence in screening, hiring, training, disciplining, supervising and retaining these defendants proximately caused each of plaintiff's injuries.

152.   Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their negligent conduct under the doctrine of *respondeat superior*.

153.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SIXTH CLAIM
### Intentional Infliction of Emotional Distress
### (Against Fabian and Akram)

154.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

155.   By reason of the foregoing, the individual defendants, acting in concert, and within the scope of their employment, each committed conduct so extreme and outrageous as to constitute the intentional infliction of emotional distress upon plaintiff.

156.   The intentional infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties.

157.   Defendants, their officers, agents, servants, and employees were responsible for the intentional infliction of emotional distress upon plaintiff.

158.   Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their conduct under the doctrine of *respondeat superior*.

159.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## SEVENTH CLAIM
### Negligent Infliction of Emotional Distress
### (Against Fabian and Akram)

160.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

161.   By reason of the foregoing, the defendants, acting in concert, and within the scope of their employment, each were negligent in committing conduct that inflicted emotional distress upon plaintiff.

162.   The negligent infliction of emotional distress by these defendants was unnecessary and unwarranted in the performance of their duties.

163.   Defendants, their officers, agents, servants, and employees were responsible for the negligent infliction of emotional distress upon plaintiff.

164.    Defendants Village of Elmsford and Staples, as employers of the individual defendants, are responsible for their conduct under the doctrine of *respondeat superior*.

165.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## EIGHTH CLAIM
### Failure to Intervene
(Against the Individual Elmsford Police Defendants)

166.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

167.    Those Elmsford Police Department defendants that were present but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene.

168.    Accordingly, the officer defendants who failed to intervene violated the Fourth, Fifth, Sixth and Fourteenth Amendments.

169.    As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## NINTH  CLAIM
### Conspiracy
(Against Fabian, Akram and Montesano and the three unidentified Elmsford Police Officers)

170.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

171.   The Elmsford Police Department employee defendants and the Staples employee defendants agreed to violate provisions of the state and federal constitution, to arrest and prosecute Mr. Overby in the absence of arguable probable cause and to fabricate evidence against.

172.   The individual defendants took several overt acts in furtherance of their agreement, including the fabrication of evidence and the making of false statements to prosecutors.

173.   These acts resulted in a violation of plaintiff's rights to due process and to be free from unlawful search and seizure.

174.   Mr. Overby was, *inter alia*, deprived of his liberty and forced to defend against false criminal charges while facing the prospect of incarceration if he were convicted.

175.   Accordingly, defendants violated the Fourth, Fifth, Sixth and Fourteenth Amendment because they conspired to deprive Mr. Overby of his rights.

176.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## TENTH  CLAIM
### Supervisory Liability under *Colon*
(Against Foster)

177.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

178.   Defendant Stephen Foster is liable as a supervisor.

179.   After being informed of the unlawful conduct of his subordinates, Foster failed to take reasonable remedial measures, or to conduct a reasonable investigation.

180.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

## ELEVENTH  CLAIM
### Coercion
(Against Akram and Fabian)

181.   Plaintiff repeats and realleges each and every allegation as if fully set forth herein.

182.   Coercion was applied to obtain a waiver of the plaintiff's rights against self-incrimination and/or to obtain inculpatory statements.

183.   The statements thereby obtained were used against the plaintiff in a criminal proceeding.

184.   The circumstances indicate that plaintiff could not make a knowing and voluntary decision during the interrogation.

185.   As a direct and proximate result of this unlawful conduct, plaintiff sustained the damages hereinbefore alleged.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, plaintiff respectfully requests judgment against defendants as follows:

(a) Compensatory damages against all defendants, jointly and severally;

(b) Punitive damages against the individual defendants and Staples, jointly and severally;

(c) A declaration that plaintiff's rights were violated by the defendants;

(d) Reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 1988; and

(e) Such other and further relief as this Court deems just and proper.

Dated:       October 13, 2017
             New York, New York

HARVIS & FETT LLP

_____
Gabriel P. Harvis
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880
gharvis@civilrights.nyc

*Attorneys for plaintiff*