UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

MICAH OVERBY,                                                    **17 CIV 3377 (CS)**

                                          Plaintiff,

              -against-

WENDELL ERIC FABIAN; TARIQ AKRAM;
STAPLES THE OFFICE SUPERSTORE EAST INC.;
DETECTIVE GIANPAOLO DILISIO #36;
POLICE OFFICER MONTESANO #42; Elmsford
Police Chief STEPHEN FOSTER; VILLAGE OF
ELMSFORD; ELMSFORD POLICE DEPARTMENT;
and JOHN AND JANE DOE 1 through 10,

                                          Defendants.
------------------------------------------------------------------------X

---

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

---

Burke, Miele, Golden & Naughton, LLP
*Attorneys for Defendants Village of
Elmsford, Elmsford Police Department,
Police Chief Stephen Foster, Det. Gianpaolo
Dilisio #36 and P.O. Montesano #42*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

ALLEGATIONS OF FACT .....................................................................................3

POINT I ..........................................................................................................5

PLAINTIFF FAILS TO STATE A CONSPIRACY CLAIM UNDER §1983

POINT II ..........................................................................................................7

PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE ARREST
UNDER §1983

POINT III ..........................................................................................................12

PLAINTIFF FAILS TO ALLEGE A FEDERAL OR STATE CLAIM
FOR MALICIOUS PROSECUTION

POINT IV ..........................................................................................................15

PLAINTIFF FAILS TO STATE A CLAIM FOR DENIAL OF
CONSTITUTIONAL RIGHT TO FAIR TRIAL UNDER §1983

POINT V ..........................................................................................................17

PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE;
NEGLIGENT HIRING/TRAINING/RETENTION/
SUPERVISION UNDER §1983

POINT VI ..........................................................................................................18

PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE
TO INTERVENE UNDER §1983

POINT VII ............................................................................................19

PLAINTIFF FAILS TO STATE A CLAIM FOR SUPERVISOR
LIABILITY UNDER *COLON*


POINT VIII ...........................................................................................22

PLAINTIFF MUST NOT BE GIVEN LEAVE TO AMEND FURTHER


CONCLUSION.........................................................................................22

# TABLE OF CASES

*Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010)..............................................................11, 12

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)....................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...............................................................1, 2, 20, 21

*Baker v. McCollan*, 443 U.S. 137 (1979) ...............................................................................9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)....................................................1, 2, 5

*Bernard v. U.S.*, 25 F.3d 98 (2d Cir. 1994)............................................................................18

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014).................................................................8, 15

*Bleiwas v. City of New York*, 2017 WL 3524679 (S.D.N.Y. Aug. 15, 2017)....................18

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999)..................................................................20

*Boddie v. Schnieder*, 105 F.3d 857 (2d Cir. 1997) ................................................................7

*Bonide Prods., Inc. v. Cahill*, 223 F.3d 141 (2d Cir. 2000)................................................15

*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002)......................................................8, 11

*Carpenter v. Apple*, 2017 WL 3887908 (N.D.N.Y. Sept. 5, 2017) ..............................20, 21

*Chamberlain v. City of White Plains*, 986 F.Supp.2d 363 (S.D.N.Y. 2013) .......................5

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002)...............................................2

*Ciambriello v. Cty. of Nassau*, 292 F.3d 307 (2d Cir. 2002)................................................5

*Coleman v. brokersXpress, LLC*, 373 F.App'x 136 (2d Cir. 2010)....................................22

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)...............................................19, 20, 21, 22

*Cooper v. Parsky*, 140 F.3d 433 (2d Cir. 1998)....................................................................2

*Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) ....................................................................12

*Costello v. Milano*, 20 F.Supp.3d 406 (S.D.N.Y. 2014)..............................8, 10, 13, 14

*Denton v. Hernandez*, 504 U.S. 25 (1992)............................................................................2

iii

*Douglas v. City of New York*, 595 F.Supp.2d 333 (S.D.N.Y. 2009)...................................16

*Drummond v. Castro*, 522 F.Supp.2d 667 (S.D.N.Y. 2007).............................................13

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..............................................................................1

*Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004) ...............................................................7, 11

*Fanelli v. Town of Harrison*, 46 F.Supp.2d 254 (S.D.N.Y. 1999).......................................1

*Farrell v. Burke*, 449 F.3d 470 (2d Cir. 2006)...................................................................20

*Fisk v. Letterman*, 401 F.Supp.2d 362 (S.D.N.Y. 2005) .................................................5, 6

*Fulton v. Robinson*, 289 F.3d 188 (2d Cir. 2002) ........................................................10, 12

*Gagnon v. Ball*, 696 F.2d 17 (2d Cir. 1982) ....................................................................19

*Gallop v. Cheney*, 642 F.3d 364 (2d Cir. 2011)..................................................................6

*Golino v. City of New Haven*, 950 F.2d 864 (2d Cir. 1991) ..............................................11

*Hall v. City of White Plains*, 185 F.Supp.2d 293 (S.D.N.Y. 2002) .....................................1

*Hershey v. Goldstein*, 938 F.Supp.2d 491 (S.D.N.Y. 2013)..............................................18

*In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006)....................2

*Johnson v. Constantellis*, 221 Fed.Appx. 48 (2d Cir. 2007)..............................................13

*Jovanovic v. City of N.Y.*, 486 Fed.Appx. 149 (2d Cir. 2012) ...........................................16

*Kinzer v. Jackson*, 316 F.3d 139 (2d Cir. 2003) ...............................................................13

*Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183 (2d Cir. 2012) ...........................7

*Krause v. Bennett*, 887 F.2d 362 (2d Cir. 1989).................................................................8

*Lowth v. Town of Cheektowaga*, 82 F.3d 563 (2d Cir. 1996)..............................................8

*Manganiello v. City of New York*, 612 F.3d 149 (2d Cir. 2010)...........................12, 13, 15

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006)....................................................2

*Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989) ....................................................20

*Miloslavsky v. AES Engineering Soc., Inc.*, 808 F.Supp. 351 (S.D.N.Y. 1992) ............8, 11

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ....................................13

*O'Neil v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988)................................19

*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006)............................8, 9

*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999)..........................5

*Perez v. Duran*, 962 F.Supp.2d 533 (S.D.N.Y. 2013) ..........................16

*Pinsky v. Duncan*, 79 F.3d 306 (2d Cir. 1996) ..................................15

*Poe v. Leonard*, 282 F.3d 123 (2d Cir. 2002)...................................20

*Rahman v. Fisher*, 607 F.Supp.2d 580 (S.D.N.Y. 2009)......................20

*Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997) ............16

*Roe v. City of Waterbury*, 542 F.3d 31 (2d Cir. 2008)........................18

*Romer v. Morgenthau*, 119 F.Supp.2d 346 (S.D.N.Y. 2000) .................5

*Rounseville v. Zahl*, 13 F.3d 625 (2d Cir. 1994)..............................13

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003) ....................13

*Schoolcraft v. City of New York*, 103 F.Supp.3d 465 (S.D.N.Y. 2015)............18

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ...............10, 11

*Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P.*,
380 F.3d 126 (2d Cir. 2004)...............................................2

*Torraco v. Port Auth.*, 539 F.Supp.2d 632 (E.D.N.Y. 2008).................11

*Torres v. Jones*, 26 N.Y.3d 742 (2016).........................................13

*United States v. Manley*, 632 F.2d 978 (2d Cir. 1980) ........................9

*Watson v. United States*, 865 F.3d 123 (2d Cir. 2017) ....................13, 15

*Waxman v. Cliffs Natural Resources Inc.*, 222 F.Supp.3d 281 (S.D.N.Y. 2016)..........6

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ...............................7, 8

*Williams v. Calderoni,* 2012 WL 691832 (S.D.N.Y. Mar. 1, 2012)....................................6

# PRELIMINARY STATEMENT

Defendants Village of Elmsford, Elmsford Police Department, Police Chief Stephen Foster, Det. Gianpaolo Dilisio #36 and P.O. Montesano #42 ("Defendants") submit this Memorandum of Law in support of their motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for an order dismissing the Plaintiff Micha Overby's ("Plaintiff") First Amended Complaint.[1]

Under the "notice pleading" standard of Fed. R. Civ. P. 8(a)(2), a plaintiff is not required to advance every particular fact underlying his complaint to state a viable cause of action, so long as his pleading affords the defendants fair notice of the claims being made against them. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation omitted); *see* Fed. R. Civ. P. 8(a)(2) (a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief"). Although this is an admittedly liberal standard, it is not without limits. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

The Supreme Court has made clear, for a complaint to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the plaintiff must do more than offer "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"; rather, he must advance sufficient factual allegations that, taken as true, are "enough to raise a right to relief above the speculative level."

---

[1] The Elmsford Police Department is not a proper party to this suit. *See, e.g., Hall V. City of White Plains*, 185 F.Supp.2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."). Any claims against the Police Department must therefore be dismissed with prejudice and without leave to replead. *Fanelli v. Town of Harrison*, 46 F.Supp.2d 254, 257 (S.D.N.Y. 1999). To the extent Police Chief Stephen Foster is not a party to this action because he has not been properly served, we nevertheless are moving to dismiss all claims against all the named Village of Elmsford defendants as contained herein.

*Twombly*, 550 U.S. at 555. "Nor does a compliant suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). "Only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citations omitted).

In passing on a motion to dismiss under Rule 12(b)(6), the inquiry is generally limited to testing the allegations of the complaint. *See, e.g.*, *Societe Des Hotels Meridien v. LaSalle Hotel Operating Partnership, L.P.*, 380 F.3d 126, 132 (2d Cir. 2004). That is, the court must generally assume the truth of plaintiff's factual allegations, but the court is not required to accept as true allegations that are "fanciful," "fantastic," or "delusional," *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (internal quotation marks and citation omitted), nor does the court need accept legal conclusions couched as factual assertions. *See Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998).

The court may also consider those documents either incorporated by reference or relied upon by the plaintiff, *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006), as well as "matters of which judicial notice may be taken" in determining whether plaintiff has a valid cause of action. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (internal quotes and citation omitted). In this regard, "[t]he Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint, or materials amenable to judicial notice." *In re Yukos Oil Co. Sec. Litig.*, 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006) (citations omitted).

With these principles in mind, as is detailed below, it is clear that Plaintiff has failed to sufficiently allege a plausible claim for relief against the Defendants. And because Plaintiff was

already provided ample opportunity to plead a claim against the Defendants and has failed to do so, the First Amended Complaint must be dismissed without leave to amend further.

## ALLEGATIONS OF FACT

By his complaint, Plaintiff seeks to recover for alleged violations of Plaintiff's Constitutional rights arising from his arrest on August 27, 2015 at the Tarrytown Road Staples [Dkt. No. 49] ("FAC"). More specifically, Plaintiff alleges that he was called into Defendant Akram's office, where he met Defendant Fabian, and while their police officer friends were waiting outside to arrest Plaintiff, Fabian and Akram aggressively questioned him to extract a statement they could use to initiate charges against him. *Id.* at ¶¶ 39, 54. Plaintiff further alleges that Fabian and Akram attempted to convince Plaintiff that his conduct had amounted to a crime that had caused a $5,390 loss to Staples and Plaintiff, who was scared and intimidated but still certain he had committed no wrongdoing, reluctantly agreed to provide a written statement. *Id.* at ¶¶ 57, 62.

Plaintiff alleges that Fabian dictated the statement to Plaintiff and attempted to have him admit to a crime that had never occurred and that Fabian and Akram coerced the Plaintiff in the hope of initiating a criminal prosecution against him with the help of the Elmsford Police Department. *Id.* at ¶¶ 63, 65. Plaintiff alleges that the Police Department "obliged by doing no investigation whatsoever and adding its own affirmative false statements." *Id.* at ¶ 66. Plaintiff alleges that employees of the Police Department "including, upon information and belief,[2] the detective who is personal friends with Tariq Akram and for whom Akram had provided Staples services *gratis*, had conspired with defendants Akram and Fabian to advance the false theft charges." *Id.* at ¶ 68. Then "[i]n furtherance of the conspiracy, four Elmsford Police Department

---

[2] *See,* Point I.

officers were stationed outside the office ready to arrest plaintiff as soon as the 'statement' was completed" and "[o]nce the statement was prepared and signed by plaintiff and defendants Fabian and Akram, defendant Elmsford police officers entered the interrogation room and placed Mr. Overby under arrest." *Id.* at ¶¶ 69, 70. He alleges, "One of the officers involved was Akram's friend." *Id.* at ¶ 71.

Plaintiff further puts forth as purported evidence of the conspiracy that the sworn deposition/statement completed by Defendant Fabian was witnessed by defendant Montesano (¶ 74, *see* FAC Exhibit 11), that upon his arrest "plaintiff immediately and repeatedly notified police officers that the allegations were false, specifically explained what happened, and demanded an investigation" (¶ 79), and that "defendants Fabian and Akram, acting in concert with the Elmsford Police Department and its officers, materially altered and 'white redacted' Mr. Overby's written statement to omit a line on the second page" (¶ 80). As well, that "[i]n furtherance of the conspiracy to falsely accuse plaintiff, the Elmsford police defendants forwarded the altered and flawed evidence to prosecutors and caused charges to be filed, without conducing a reasonable investigation or possessing any knowledge of the predicate facts underlying the alleged transactions." *Id.* at ¶ 81. Defendant Montesano of the Elmsford Police Department then filed a felony compliant "in Elmsford Village Criminal Court claiming, on direct knowledge, that Mr. Overby 'did steal U.S. currency amount of (sic) $5,390.'" *Id.* at ¶ 82.

Next Plaintiff alleges that the Defendants lacked probable cause for making the arrest and bringing charges against Plaintiff. *Id.* at pp. 17-18. Plaintiff also alleges that subsequent to his arrest, actually ten months later, while being prosecuted by the Westchester County District Attorney, "Mr. Overby described the issues in detail in a letter he sent to defendant Stephen Foster," which was followed up by with email to Defendant Foster, and that the details provided

"were more than sufficient . . . to put defendant Foster on notice of [his] employees' ongoing unlawful conduct" and he took no steps to investigate Plaintiffs allegations. *Id.* at ¶¶ 100-103.

POINT I

PLAINTIFF FAILS TO STATE A CONSPIRACY CLAIM UNDER §1983

In order to survive a motion to dismiss, a §1983 conspiracy claim must allege: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). Additionally, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (citation omitted). "The complaint must contain 'enough factual matter (taken as true) to suggest that an agreement was made.'" *Chamberlain v. City of White Plains*, 986 F.Supp.2d 363, 388 (S.D.N.Y. 2013) (citing *Twombly*, 550 U.S. at 556).

"Specifically, plaintiff must provide some factual basis supporting a 'meeting of the minds', such as the defendants 'entered into an agreement, express or tacit, to achieve the unlawful end'; plaintiff must also provide 'some details of time and place and the alleged effects of the conspiracy.'" *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000) (internal citations omitted). While the plaintiff "is not required to list the place and date of defendants meetings and the summary of their conversations when he pleads conspiracy," the pleadings must nevertheless "present facts tending to show agreement and concerted action . . . [w]ithout a meeting of the minds, the independent acts of two or more wrongdoers do not amount to a conspiracy." *Fisk v.*

*Letterman*, 401 F.Supp.2d 362, 376 (S.D.N.Y. 2005) (internal citations and quotation marks omitted).

Plaintiff has not satisfied the first element of a §1983 conspiracy claim, that is, Plaintiff has not demonstrated that an agreement was made between a private entity and a state actor.. Plaintiff has provided no factual basis to support a meeting of the minds, nor presented facts tending to show agreement and concerted action. Plaintiff's attempt at evidencing some form of an agreement is contained in the allegations that one of the employees of the Police Department was "friends" with Defendant Akram. Merely alleging that "upon information and belief, the detective who is personal friends with Tariq Akram . . . had conspired with defendants Akram and Fabian to advance the false theft charges," and that "[o]ne of the officers involved was Akram's friend," such does not rise to the level of providing a factual basis for a tacit agreement. *See* FAC at ¶¶ 68, 71. Even taken as true, the allegations contained in the FAC do not contain enough factual matter to suggest that any agreement was made. *See Waxman v. Cliffs Natural Resources Inc.*, 222 F.Supp.3d 281, 287 (S.D.N.Y. 2016) (a plaintiff may plead facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible, however, such allegation must be accompanied by a statement of the facts upon which the belief is founded) (citations omitted); *see also Williams v. Calderoni*, 2012 WL 691832 at *7 (S.D.N.Y. Mar. 1, 2012) (pleadings based upon information and belief were insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions).

Significantly, "[i]t is well settled that claims of conspiracy 'containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.'" *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011). *See also*

*Kiryas Joel All. v. Vill. of Kiryas Joel*, 495 F. App'x 183, 190 (2d Cir. 2012) ("vague and conclusory allegations that defendants entered into an unlawful agreement" are insufficient); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (conspiracy claim that was "unsupported, speculative, and conclusory" properly dismissed on the pleadings). It is beyond reproach that it is conclusory to simply allege "employees of the Elmsford Police Department . . . had conspired with defendants Akram and Fabian to advance the false theft charges" and that "[i]n furtherance of the conspiracy, four Elmsford Police Department officers were stationed outside the office ready to arrest plaintiff as soon as the 'statement' was completed." *See* FAC at ¶¶ 68, 69. It is equally conclusory to attempt to establish a meeting of the minds by alleging that one of the employees of the Police Department may have been friends with one of the Staples employees. The Plaintiff's complaint is completely devoid of any other allegation, which even remotely supports his conspiracy theory. Accordingly, Plaintiff's purported §1983 conspiracy claim must be dismissed.

## POINT II
## PLAINTIFF FAILS TO STATE A CLAIM FOR FALSE ARREST UNDER §1983

Plaintiff asserts that Officer Montesano and the three unidentified Elmsford Police Officers "violated the Fourth and Fourteenth Amendments because they arrested plaintiff without probable cause." *See* FAC at ¶ 125.

"To establish a claim for false arrest under 42 U.S.C. § 1983, a plaintiff must show that 'the defendant intentionally confined him without his consent and without justification.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Because probable cause to arrest constitutes justification, there can be no claim for false arrest where the arresting officer had probable cause to arrest the plaintiff." *Id.* "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information or facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief

that the person to be arrested has committed or is committing a crime.'" *Id.* (citing *Weyant*, 101 F.3d at 852). "Once a law enforcement officer 'has a reasonable basis for believing there is probable cause' to arrest a suspect, 'he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest,'. . . and 'the validity of an arrest is not contingent upon an ultimate finding of guilt or innocence.'" *Costello v. Milano*, 20 F.Supp.3d 406, 414 (S.D.N.Y. 2014) (citations omitted).

"When determining whether probable cause exists courts 'must consider those facts available to the officer at the time of the arrest and immediately before it.'" *Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002) (citing *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568 (2d Cir. 1996)). "A district court must look at the 'totality of the circumstances' in deciding whether probable cause exists to effect and arrest." *Id.* (citations omitted). See also, *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014). Furthermore, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." *Miloslavsky v. AES Engineering Soc., Inc.* 808 F.Supp. 351, 355 (S.D.N.Y. 1992), *aff'd* 993 F.2d 1534 (2d Cir. 1993) (citation omitted); *see also Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("[I]nformation gleaned from informants can be sufficient to justify the existence of probable cause . . . unless the circumstances raise doubt as to the person's veracity."). The Second Circuit has further "endorsed the proposition that 'an identified citizen informant is presumed to be reliable.'" *Panetta*, 460 F.3d at 395 (citing *Caldarola*, 298 F.3d at 165).

Plaintiff's claim that a more thorough investigation of the Staples employees accusations may have yielded a different result has consistently been rejected by the Second Circuit, In *Krause v. Bennett*, 887 F.2d 362, 371 (2d Cir. 1989) the Court stated: "It bears repeating that probable cause

does not require an officer to be certain that subsequent prosecution of the arrestee will be successful. 'It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon' the situation." (*citing, United States v. Manley,* 632 F.2d 978, 984 (2d Cir.1980), *cert. denied,* 449 U.S. 1112 (1981)). And further that; "It is up to the fact finder to determine whether a defendant's story holds water, not the arresting officer." *Id.* at 372. *See also Baker v. McCollan,* 443 U.S. 137 (1979) (arresting officers not required to investigate claim of mistaken identity or lack of requisite intent).

Based on the foregoing, nothing in the FAC denotes that the Defendant arresting officers did not have probable cause for making the arrest. Based on the allegation that the police officers were waiting outside the interrogation room it is apparent that they had been informed by Defendants Akram and Fabian of the alleged crime, and there is no indication that the circumstances should have raised any doubt as to Akram and Fabian's veracity. In any case, "an identified citizen informant is presumed to be reliable." *Panetta,* 460 F.3d at 395. Moreover, Defendant Fabian was employed by Staples as a Field Loss Prevention Manager. Despite any allegations to the contrary with regard to Fabian's integrity contained in the FAC, in considering the facts available to the officers at the time, it was entirely reasonable for the officers to believe that Plaintiff had committed a crime when such was reported to them by a person employed at Staples as a Field Loss Prevention Manager.

Significant here as well is the fact that the Plaintiff had just signed a statement wherein he wrote that "the loss that I cause to the company by committing what was explained to me as fraud is $5,390." *See* FAC Exhibit 5 at p. 2. By his own allegations, the Elmsford Police were not individually involved in taking the plaintiff's confession. As noted above, the officers were not required to explore and eliminate every theoretically plausible claim of innocence before making

the arrest. *See Costello*, 20 F.Supp.3d at 414. Despite the Plaintiff's claims of innocence, the arresting officers here had a reasonable basis for believing there was probable cause and they were not required to explore and eliminate every theoretically plausible claim of innocence before arresting Mr. Overby.

More importantly, the arresting officers are entitled to qualified immunity. In this context, an arrest is lawful and probable cause exists if the arresting officer to has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Singer v. Fulton County Sheriff*, 63 F.3d 110, 119 (2d Cir.1995) (internal quotation marks omitted). In *Singer*, the plaintiff had been accused of theft. The arresting officer arrived at the location of the alleged crime, a Stewarts Shop, in response to a call from an unknown person reporting the alleged theft. *Id.* at 113. The officer proceeded to interview the complaining witness Shuler, a store clerk, and the store manager Nicollela. *Id.* The officer then had Shuler fill out and sign an information setting forth his allegation that the plaintiff Singer had stolen packaged sandwich meats. *Id.* "Shuler also completed and signed a supporting deposition to back up the information." *Id.* On the basis of these documents, plus whatever additional information the witnesses provided, the officer then went to Singer's home and confronted him. *Id.* The officer informed Singer of the accusations against him, elicited Singer's version of the incident (his claimed innocence), and then arrested him on the charge of petit larceny. *Id.*

The District Court found "[the officer], upon his arrival at the Stewart's Shop, 'was advised by Shuler as a clerk ... and his supervisor, Nicollela, that plaintiff had taken items with a value of $11.55 from the store without paying for same.'" *Id.* at 119. "In addition, Shuler signed criminal information and a supporting deposition reciting his version of the incident. [The officer] needed

nothing further to lawfully arrest Singer." *Id.* The Second Circuit concluded, despite questioning the motivations of the witnesses and the officer, that "[u]nder these circumstances, the officer had probable cause to arrest Singer for the crime of petit larceny." *Id.* Similarly, here, the arresting officers were notified by Staples employees of the alleged crime, that the amount of that alleged crime was $5,390, and Plaintiff had just signed a confession admitting to the crime, regardless of any allegations of his claimed innocence. As is the case with regard to Mr. Overby's arrest, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." *Miloslavsky,* 808 F.Supp. at 355.

"Even if probable cause to arrest is ultimately found not to have existed, an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Escalera,* 361 F.3d at 743. "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Id.* (citing *Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir. 1991) and also *Amore v. Novarro,* 624 F. 3d 522, 536 (2d Cir. 2010)). Arguable probable cause "focus[es] attention on the word 'clearly' established law" and shields officers from liability where "reasonable officers could disagree as to what the law is." *See Torraco v. Port Auth.,* 539 F.Supp.2d 632, 651 (E.D.N.Y 2008), *aff'd* 615 F.3d 129 (2d Cir 2010)). "In situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity." *Caldarola,* 298 F.3d at 162 (citations omitted).

As explained above, it was objectively reasonable for the officers to believe that probable cause existed. At the very minimum that officers of reasonable competence could disagree on

whether the probable cause test was met, where they were informed by Staples employees that the alleged crime had occurred, one of whom was a Field Loss Prevention Manager, and the accused had just signed a confession admitting that he caused a loss of $5,390 to Staples for what was explained to him as fraud. See, *Amore* 624 F.3d at 536. Plaintiff's purported §1983 false arrest claim must therefore be dismissed.

**POINT III**
**PLAINTIFF FAILS TO ALLEGE A FEDERAL OR STATE CLAIM FOR MALICIOUS PROSECUTION**

Plaintiff asserts that Defendants Montesano and Dilisio violated Plaintiff's right to be free from malicious prosecution under the Fourth and Fourteenth Amendments to the United States Constitution in that there was no basis for plaintiff's arrest, yet defendants continued with the prosecution. *See* FAC at ¶¶ 129, 130. Plaintiff also asserts that Defendants Montesano and Dilisio committed malicious prosecution under the laws of the State of New York and that the commencement and continuation of the criminal proceedings against plaintiff was malicious and without probable cause. *See* FAC at ¶¶ 134,136.

"In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." *Manganiello v. City of New York*, 612 F.3d 149, 160-161 (2d Cir. 2010) (internal citations omitted); *see Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002); *see also Cornejo v. Bell*, 592 F.3d 121, 129 (2d Cir. 2010) ("And § 1983, in recognizing a malicious prosecution claim when the prosecution depends on a violation of federal rights, adopts the law of the forum state so far as the elements of the claim for malicious prosecution are concerned."). "To establish a malicious prosecution claim under New York law, a plaintiff must prove '(1) the initiation and continuation of a criminal proceeding against plaintiff;

(2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions.'" *Manganiello*, 612 F.3d at 161 (citing *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997)). That is, in New York, "the tort of malicious prosecution requires proof of both malice and a lack of probable cause, which are 'independent and indispensable elements.'" *Watson v. United States*, 865 F.3d 123, 134 (2d Cir. 2017) (citing *Torres v. Jones*, 26 N.Y.3d 742, 761 (2016)).

Plaintiff has failed both to allege malice and a lack of probable cause. Beginning with probable cause, it is well settled that "the presence of probable cause is complete defense to an action for malicious prosecution under § 1983 or state law." *Drummond v. Castro*, 522 F.Supp.2d 667, 677 (S.D.N.Y. 2007); *see Manganiello*, 612 F.3d at 161-162; *Costello,* 20 F.Supp.3d at 415; *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003). Probable cause for malicious prosecution purposes "is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Costello*, 20 F.Supp.3d at 415 (citing *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994). "[T]he determination of probable cause is assessed in light of facts known or reasonably believed at the time the prosecution was initiated, as opposed to at the time of arrest." *Drummond*, 522 F.Supp.2d at 677 (citations omitted).

Significantly here, "[i]f probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis,* 221 Fed.Appx. 48, 50 (2d Cir. 2007) (citing *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir. 2003)); *see Drummond,* 522 F.Supp.2d at 678 ("[A] malicious prosecution claim will be defeated by a finding of probable cause to arrest, unless the plaintiff can demonstrate mitigating facts to vitiate probable cause which were first uncovered after the arrest."). As discussed in Point

II, *supra*, the arresting officers had probable cause for making the arrest at the time of arrest, and Plaintiff has not alleged the discovery of some intervening fact to impair that finding of probable cause after the arrest other than his claims of innocence. Any allegations that Plaintiff immediately and repeatedly notified police officers that the allegations against him were false, or that Plaintiff brought his innocence and the unlawful circumstances of his arrest to the attention of, among others, the Police Department, are of no effect. If proclaiming your innocence and asserting a lack of evidence were all it took to defeat probable cause for commencing the proceeding, our justice system would be rendered completely ineffectual.

Here, the Defendant Fabian gave a sworn statement to the police department wherein he provided that he responded to a complaint of grand larceny at the Tarrytown Road Staples and during the interview of Plaintiff "Mr. Overby admitted to fraudulently using customers credit cards, and loading funds on staples gift cards, then purchasing items from staples and selling the same on EBay for cash. Mr. Overby gave a written statement confessing to this violation." FAC Exhibit 11. Considering that it would be objectively reasonable for the officers to believe that probable cause existed when they were informed by Staples employees that the alleged crime had occurred, one of whom was a Field Loss Prevention Manager, and the accused had just signed a statement admitting that he caused a loss to Staples in the amount of $5,390 for what was explained to him as fraud, which was corroborated by the sworn statement signed by Defendant Fabian, it is clear there were adequate "facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Costello*, 20 F.Supp.3d at 415. The Defendant Police Officers therefore had probable cause.

Further, as previously discussed herein, an officer is entitled to qualified immunity against a claim of malicious prosecution if the officer had arguable probable cause to arrest the Plaintiff.

14

*See Betts* 751 F.3d 78 at 83. When there is arguable probable cause "because the focus of the qualified immunity inquiry is on the objective reasonableness of the defendant's actions, motivation does not come [into] play." *Bonide Prods., Inc. v. Cahill*. 223 F.3d 141, 146 (2d Cir. 2000) (per curiam) (citation omitted). As the officers here, who were objectively reasonable in believing probable cause to arrest existed would be entitled to qualified immunity of allegations of malicious motivation.

Although probable cause is dispositive of the issue, the Plaintiff similarly failed to provide sufficient factual allegations with regard to malice. "[M]alice may be shown by proving that the prosecution complained of was undertaken from improper or wrongful motives, or in reckless disregard to the rights of the plaintiff." *Manganiello*, 612 F.3d. at 163 (citing *Pinsky v. Duncan*, 79 F.3d 306, 312 (2d Cir. 1996)). Plaintiff alleges that there was malicious prosecution "in that there was no basis for the plaintiff's arrest, yet defendants continued with the prosecution" and "[t]he commencement and continuation of the criminal proceedings against plaintiff was malicious and without probable cause." *See* FAC at ¶¶ 130, 136.

Moreover, the FAC is completely devoid of any other factual allegations remotely suggesting that the arresting officers were motivated by malice. Plaintiff has not shown that the Defendants acted in bad faith or on the basis of "something other than a desire to see the ends of justice served." *Watson v. United States*, 865 F.3d at 134. Since malice is an "indispensable element" of a malicious prosecution claim (*Id.*), Plaintiff's federal and state law malicious prosecution claims must be dismissed.

### POINT IV
### PLAINTIFF FAILS TO STATE A CLAIM FOR DENIAL OF CONSTITUTIONAL RIGHT TO FAIR TRIAL UNDER §1983

Plaintiff alleges that Officer Montesano created false evidence against the plaintiff and

forwarded false evidence to prosecutors, thus violating Plaintiff's right to a fair trial under the Due Process Clause of the Fifth, Sixth and Fourteenth Amendments of the United States Constitution. *See* FAC at ¶ 144.

The Second Circuit established in *Ricciuti v. N.Y.C. Transit Authority* that "[w]hen a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutor, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir. 1997). This rule of law is applicable even where no trial took place. *Douglas v. City of New York*, 595 F.Supp.2d 333, 346 (S.D.N.Y. 2009) ("[I]n *Ricciuti*, no trial ever took place; the charges against the plaintiff had been dismissed prior to the trial."). Since *Ricciuti*, it has been found that "[a] person suffers the denial of the right to a fair trial if: (1) [an] investigating official (2) fabricate[d] evidence (3) that is likely to influence the jury's decision, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of liberty as a result." *Perez v. Duran*, 962 F.Supp.2d 533, 543 (S.D.N.Y. 2013) (citing *Jovanovic v. City of N.Y.*, 486 Fed.Appx. 149, 152 (2d Cir. 2012) (summary order)).

To this point, Plaintiff alleges that "defendants Fabian and Akram, acting in concert with the Elmsford Police Department and its officers, materially altered and 'white redacted' Mr. Overby's written statement to omit a line on the second page" and "the Elmsford police defendants forwarded the altered and flawed evidence to prosecutors and caused charges to be filed." FAC at ¶¶ 80, 81. Plaintiff further alleges that "[r]elying on the perjured supporting deposition of defendant Fabian and the altered and coerced written statement of Mr. Overby, along with his own material false statements regarding an investigation that was allegedly conducted, but in fact did

not occur, defendant Montesano of the Elmsford Police Department filed a felony complaint." *Id.* at ¶ 82. Based on these allegations, Plaintiff's claim that he was denied a fair trial fails for a number of reasons. For one, there is no allegation that Defendant Montesano himself fabricated the sworn statement signed by Defendant Fabian or altered Plaintiff's written statement. In fact, the Plaintiff alleges he wrote the statement, albeit upon the dictation of Fabian, and that Fabian or Akram then gave the statement, or a copy thereof, that he had written for them to Officer Montesano. Officer Montesano had nothing whatsoever to do with taking the statement from the Plaintiff. But most importantly, even if the Court were to assume that the Plaintiff's written statement was altered as alleged, nothing within the FAC indicates that Officer Montesano redacted it or that the redacted line was exculpatory and was likely to influence the jury's decision. In fact, Plaintiff amended the complaint removing the allegation that the redacted like was exculpatory [Dkt. No. 1 at ¶ 54]. Similarly, there are no factual allegations that the Plaintiff suffered a deprivation of liberty as a result of this alleged redaction. Therefore, Plaintiff's purported §1983 constitutional right to a fair trial claim must be dismissed.

### POINT V
### PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE; NEGLIGENT HIRING/TRAINING/RETENTION/SUPERVISION UNDER §1983

Plaintiff alleges his fifth claim against all Defendants, alleging Defendants owed a duty of care to plaintiff to prevent the conduct alleged, the individual defendants were unfit and incompetent for their positions, the Defendants knew or should have known through the exercise of reasonable diligence that the individual Defendants were potentially dangerous, they were negligent in screening, hiring, training, disciplining, supervising and retaining these defendants which proximately caused each of Plaintiff's injuries, and Defendants, as employers of the individual Defendants, are responsible for their negligent conduct under the doctrine of *respondeat*

*superior. See* FAR at ¶¶ 148-152.

"Under New York Law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994). *See Bleiwas v. City of New York*, 2017 WL 3524679 at *10 (S.D.N.Y. Aug. 15, 2017) ("New York does not, as a matter of public policy, recognize a claim for negligence arising out of an arrest or prosecution.") (citing *Hershey v. Goldstein*, 938 F.Supp.2d 491, 519-520 (S.D.N.Y. 2013). Similarly, "New York law does not permit a claim for negligent hiring, training, retention or supervision where the defendants act in the scope of their employment." *Schoolcraft v. City of New York*, 103 F.Supp.3d 465, 521 (S.D.N.Y. 2015) (collecting cases). Since Plaintiff does not allege that the individual police officer Defendants were not acting within the scope of their employment, Plaintiffs claim for negligent screening, hiring, retention, training, and supervision fails as a matter of law. Likewise, because Plaintiff may not recover under general principles of negligence against law enforcement officers, his negligence claim fails as a matter of law as well.

It is equally well settled that "a municipality cannot be made liable under § 1983 for acts of its employees by application of the doctrine of *respondeat superior.*" *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008) (internal quotation marks and citations omitted). Plaintiff's attempt to allege that Defendant Village of Elmsford, as employer of some the individual defendants, is responsible for their negligence under the doctrine of *respondeat superior,* similarly fails as a matter of law. Plaintiff's fifth claim must therefore be dismissed.

## POINT VI
## PLAINTIFF FAILS TO STATE A CLAIM FOR FAILURE TO INTERVENE UNDER §1983

Plaintiff alleges that "[t]hose Elmsford Police Department defendants that were present

but did not actively participate in the aforementioned unlawful conduct observed such conduct, had an opportunity to prevent such conduct, had a duty to intervene and prevent such conduct and failed to intervene" violating the Fourth, Fifth, Sixth and Fourteenth Amendments. *See* FAC at ¶¶ 167, 168.

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994) (collecting cases). Whether that be in the typical excessive force context, or in the context of a false arrest (*see Gagnon v. Ball*, 696 F.2d 17, 21 (2d Cir. 1982)), the core of the failure to intervene claim remains the same, that is, an officer has such a duty when a citizen's constitutional rights are being violated in the officer's presence. *See O'Neil v. Krzeminski,* 839 F.2d 9, 11 (2d Cir. 1988). Here, the only constitutional violation the Plaintiff has alleged with regards to the arrest is that the officers lacked probable cause. However, as discussed at length above for both the false arrest and malicious prosecution claims, the officers did in fact have probable cause. Plaintiff therefore, has not alleged a constitutional right that was violated in the presence of the officers that did not actively participate in the arrest. Consequently, there was no unlawful conduct for the other officers to intervene in. Plaintiff's purported §1983 failure to intervene claim must therefore be dismissed.

**POINT VII**
**PLAINTIFF FAILS TO STATE A CLAIM FOR SUPERVISOR LIABILITY UNDER**
***COLON***

Plaintiff alleges that Defendant Stephen Foster is liable as a supervisor, and "[a]fter being informed of the unlawful conduct of his subordinates, Foster failed to take reasonable remedial measures, or to conduct a reasonable investigation." *See* FAC at ¶¶ 178, 179.

Generally, "[a] supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Poe v. Leonard*, 282 F.3d 123, 140 (2d Cir. 2002). "Thus, it is 'well settled' that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Rahman v. Fisher*, 607 F.Supp.2d 580, 585 (S.D.N.Y. 2009) (citing *Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006)). "The personal involvement and liability of supervisory personnel is established when the supervisory official has 'actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act.'" *Id.* (citing *Meriwether v. Coughlin*, 879 F.2d 1037, 1048 (2d Cir. 1989); *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999)). In 1995, the Second Circuit held that

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [others] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995); *see Rahman*, 607 F.Supp.2d at 585 (citing same five elements).

The applicability of the five *Colon* factors has come into question following the Supreme Court's decision in *Ashcroft v. Iqbal*, 556 U.S. 662, 667 (2009). This is "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through his own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore "[s]ome district courts have interpreted *Iqbal* to mean that the second, fourth, fifth, and part of the third *Colon* factors are no longer viable basis for liability in any context." *Carpenter*

*v. Apple,* 2017 WL 3887908 at *9 (N.D.N.Y. Sept. 5, 2017) (collecting cases). The Second Circuit has, however, "expressly declined to determine whether *Iqbal* eliminated any of the *Colon* bases for liability." *Id.* at * 9 (collecting cases). It appears however, that a majority of district courts have continued to apply all the *Colon* factors post-*Iqbal. Id.* Accordingly, out an abundance of caution, we will address this claim under the presumption that the Court will follow the majority.

Plaintiff seemingly alleges supervisory liability by asserting "Mr. Overby described the issues in detail in a letter he sent to defendant Stephen Foster," which was followed up by an email, and that the details provided "were more than sufficient . . . to put defendant Foster on notice of [his] employees' ongoing unlawful conduct" and he took no steps to investigate Plaintiffs allegations. *See* FAC at ¶¶ 100-103. Presumably, Plaintiff is attempting to provide factual allegations for Defendant Foster's personal involvement under either the second *Colon* factor (the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong), or the fifth *Colon* factor (the defendant exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring).

Plaintiff's attempt to do so fails. This is because supervisory liability applies to unconstitutional practices and constitutional violations. Nowhere in ¶¶ 100-103, or ¶¶ 177-180, of the FAC does Plaintiff allege that he notified Defendant Foster of unconstitutional practices or constitutional violations. Plaintiff only apprised Defendant Foster of "unlawful conduct." *See* FAC at ¶¶ 102, 179. What is more, annexed as Exhibits 19 and 23 to the FAC are the letter and email the Plaintiff sent to Defendant Foster, wherein he claimed he was the victim of extortion in violation of New York Penal Law 155.05(2)(E). Specifically providing in the email that it "was perpetrated by Eric Fabian." *See* FAC Exhibit 19. Plaintiff did not raise any constitutional violations to Defendant Foster in the email or letter. And in the email, Plaintiff clarified that he

was claiming that the violation was perpetrated by a person Defendant Foster has no supervisory control over. Moreover, the FAC does not contain any allegations of extortion and the Plaintiff is not seeking to redress any wrongs on that ground. Therefore, Plaintiff has not alleged any facts to show that Defendant Foster was either informed of a constitutional violation through a report or appeal and failed to remedy the wrong, or that he exhibited deliberate indifference to the rights of others by failing to act on information indicating that unconstitutional acts were occurring. Plaintiff's supervisory liability claim under *Colon* must be dismissed.

## POINT VIII
## PLAINTIFF MUST NOT BE GIVEN LEAVE TO AMEND FURTHER

Plaintiff has already had an opportunity to plead cognizable claims. This, his second pleading, attempts to overcome the shortcomings of his prior pleading, which were pointed out by the Defendants and the Court; however, it is still insufficient. The Court was clear as to what facts were necessary for each claim to be sufficiently plead. (Miele Aff. Exhibit "A"). Moreover, this is not a *pro se* plaintiff. Accordingly, the same leave to amend that is typically afforded those plaintiffs should not apply in this instance.

As stated above, the FAC fails on multiple grounds and must be dismissed. Given the history of the pleadings to date, Plaintiff must not be given leave to amend yet again. *Coleman v. brokersXpress, LLC*, 375 F. App'x 136, 137 (2d Cir. 2010) (denying leave to amend was not an abuse of discretion where plaintiff already had one opportunity to amend and "made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend.").

## CONCLUSION

For the reasons set forth herein, Plaintiff's FAC must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Dated: November 13, 2017
Goshen, New York

*Michael K Burke* (signature)

Michael K. Burke, Esq. (MKB 7554)
Burke, Miele, Golden & Naughton, LLP
*Attorneys for Defendants Village of*
*Elmsford, Elmsford Police Department,*
*Police Chief Stephen Foster, Det. Gianpaolo*
*Dilisio #36 and P.O. Montesano #42*
40 Matthews Street, Suite 209
Post Office Box 216
Goshen, New York 10924
(845) 294-4080