UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

MICAH OVERBY,

                            Plaintiff,

               -against-

WENDELL ERIC FABIAN; TARIQ AKRAM; STAPLES
THE OFFICE SUPERSTORE EAST, INC.; Detective
GIANPAOLO DILISIO #36; Police Officer
MONTESANO #42; Elmsford Police Chief STEPHEN
FOSTER; VILLAGE OF ELMSFORD; ELMSFORD
POLICE DEPARTMENT; and JOHN and JANE DOE 1
through 10,

                          Defendants.

------------------------------------------------------------------------x

17 CV 3377 (CS)

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

HARVIS & FETT LLP
Gabriel P. Harvis, Esq.
305 Broadway, 14th Floor
New York, New York 10007

*Attorneys for plaintiff*

December 13, 2017

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................. i

PRELIMINARY STATEMENT................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 2

STANDARD FOR DISMISSAL ............................................................................ 5

ARGUMENT

    POINT I

        PLAINTIFF STATES CLAIMS
        FOR FALSE ARREST AND MALICIOUS PROSECUTION ..............................6

      A.  The Word of an Unreliable Complaining Witness Does Not Provide Probable Cause,
         Reasonable Inquiry is Required and Malice Can be Inferred ....................................9

      B.  Knowingly Filing False Charges Constitutes Initiation and Subjects a Civilian to
         Liability for Malicious Prosecution, and the Record Supports a Favorable Termination
         Finding ............................................................................................15

    POINT II

        PLAINTIFF STATES A CLAIM FOR § 1983 CONSPIRACY ...........................19

    POINT III

        QUALIFIED IMMUNITY DOES NOT APPLY ...................................................21

    POINT IV

        PLAINTIFF STATES A CLAIM FOR FAILURE
        TO INTERVENE, COERCION, NEGLIGENCE, SUPERVISORY LIABILITY
        AND THE DENIAL OF A FAIR TRIAL ................................................................23

    POINT V

        PLAINTIFF WITHDRAWS CERTAIN CLAIMS .............................................26

CONCLUSION......................................................................................................26

<span style="text-align:center; display:block">C<small>ASES</small></span>

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012) ............................................... 8

*Alhovsky v. Ryan*, 658 F. Supp. 2d 526 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F.
  App'x 535 (2d Cir. 2011)................................................................................................ 4, 7

*Alhovsky v. Ryan*, 658 F. Supp. 2d 526 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F.
  App'x 535 (2d Cir. 2011)..................................................................................................... 6

*Allaire Corp. v. Okumus*, 433 F.3d 248 (2d Cir. 2006) ............................................................. 5

*Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010) ..................................................................... 13

Anderson v. Branen, 17 F.3d 552 (2d Cir. 1994) .................................................................... 23

Arum v. Miller, 273 F. Supp. 2d 229 (E.D.N.Y. 2003)........................................................... 18

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................................... 5

*Babi-Ali v. City of New York*, 979 F. Supp. 268 (S.D.N.Y. 1997)........................................... 22

*Bail v. Ramirez*, 04 CV 5084 (WHP), 2007 WL 959045 (S.D.N.Y. Mar. 29, 2007) ..................... 10

*Baker v. McCollan*, 443 U.S. 137 (1979) ................................................................................ 13

*Bang v. Utopia Restaurant*, 923 F. Supp. 46 (S.D.N.Y. 1996)................................................. 19

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................... 5

*Berry v. Marchinkowski*, 137 F. Supp. 3d 495 (S.D.N.Y. 2015)................................................ 7

*Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014) ................................................................. 14, 19

*BeVier v. Hucal*, 806 F.2d 123 (7th Cir. 1986) ...................................................................... 12

*Biswas v. City of New York*, 973 F. Supp. 2d 504 (S.D.N.Y. 2013) *appeal dismissed sub nom. Biswas v.
  Kwait*, 576 F. App'x 58 (2d Cir. 2014), *as amended* (Aug. 28, 2014) ........................................ 20

Blazina v. Port Auth. of New York & New Jersey, 06 CV 481 (KNF), 2008 WL 919671, (S.D.N.Y.
  Apr. 1, 2008)................................................................................................................... 18

*Bonide Prods., Inc. v. Cahill*, 223 F.3d 141 (2d Cir. 2000) ..................................................... 14

*Boyd v. City of New York*, 336 F.3d 72 (2d Cir. 2003)......................................................... 4, 7

*Brooks v. City of Winston-Salem*, 85 F.3d 178 (4th Cir. 1996) ............................................... 15

*Brown v. Sears Roebuck & Co.*, 297 A.D.2d 205 (1st Dept 2002) ........................................... 16

*Bullard v. City of New York*, 240 F. Supp. 2d 292 (S.D.N.Y. 2003) ........................................ 11

*Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002) ....................................................... 13, 14

*Capanelli v. NYP Holdings, Inc.*, 06 CV 15397 (SHS), 2009 WL 249358 (S.D.N.Y. Jan. 30, 2009)
  ....................................................................................................................................... 16

*Carlton v. Nassau County Police Dept.*, 305 A.D.2d 365, 761 N.Y.S.2d 98 (2d Dept 2003) ......... 12

*Carminucci v. Alagno*, 10 CV 228 (VB), 2012 WL 4053801 (S.D.N.Y. Aug. 9, 2012) ................ 10

*Carter v. Port Auth. of N.Y. & N.J.*, 03 CV 8751 (DLC), 2004 WL 2978282 (S.D.N.Y. Dec. 20,
  2004) .............................................................................................................................. 15

*Castro v. United States*, 34 F.3d 106 (2d Cir. 1994)................................................................ 22

*Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337 (S.D.N.Y. 1999) ........................................... 25

*Cook v. Sheldon*, 41 F.3d 73 (2d Cir. 1994).................................................................... 15, 22

*Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010)......................................................................... 14

*Cornell v. Kapral*, 09 CV 387 (GTS), 2011 WL 94063 (N.D.N.Y. Jan. 11, 2011), *aff'd*, 483 Fed.
  Appx. 590 (2d Cir. 2012) ................................................................................................. 10

*Cornett v. Brown*, 04 CV 0754 (DGT), 2006 WL 845568 (E.D.N.Y. Mar. 30, 2006).................. 11

*Costello v. Milano*, 20 F. Supp. 3d 406 (S.D.N.Y. 2014) ....................................................... 13

*Cox v. County of Suffolk,* 827 F. Supp. 935 (E.D.N.Y. 1993) ........................................ 15

*Curley v. Village of Suffern,* 268 F.3d 65 (2d Cir. 2001) .............................................. 9

*Curry v. City of Syracuse,* 316 F.3d 324 (2d Cir. 2003) .......................................... 6, 22

*Drummond v. Castro,* 522 F. Supp. 2d 667 (S.D.N.Y. 2007) ...................................... 13

*Du Chateau v. Metro-North Commuter R. Co.,* 688 N.Y.S.2d 12 (N.Y. App. Div. 1999) ............... 25

*Escalera v. Lunn,* 361 F.3d 737 (2d Cir. 2004) ........................................................ 13

*Fausto v. City of New York,* 17 A.D.3d 520, 793 N.Y.S.2d 165 (2d Dept 2005) .................... 12

*Fisk v. Letterman,* 401 F. Supp. 2d 362 (S.D.N.Y. 2005) .......................................... 19

*Fulton v. Robinson,* 289 F.3d 188 (2d Cir. 2002) ...................................................... 14

*Gadsden v. City of New York,* 14 CV 6687 (RJD) (RER), 2017 WL 5178439 (E.D.N.Y. Sept. 15, 2017) ........................................................................................................ 24

*Garnett v. Undercover Officer C0039,* 838 F.3d 265 (2d Cir. 2016) ............................. 24

Gerstein v. Pugh, 420 U.S. 103 (1975) ...................................................................... 6

*Global Network Commc'ns, Inc. v. City of New York,* 458 F.3d 150 (2d Cir. 2006) .............. 6, 18

*Golden v. City of New York,* 418 F. Supp. 2d 226 (E.D.N.Y. 2006) ............................. 10

*Gonzalez v.* Caballaro, 572 F. Supp. 2d 463 (S.D.N.Y. 2008) ...................................... 5

*Gordon v. City of New York,* 15 CV 2439 (CBA), Slip Op. (E.D.N.Y. July 22, 2016) ........... 20

*Guntlow v. Barbera,* 76 A.D.3d 760 (3d Dept 2010) .................................................. 12

*Hershey v. Goldstein,* 938 F. Supp. 2d 491 (S.D.N.Y. 2013) ...................................... 21

*Hines v. City of Yonkers,* 08 CV 3126 (CM), 2011 WL 3055369 (S.D.N.Y. July 20, 2011) ......... 24

*Jean-Laurent v. Wilkinson,* 540 F. Supp. 2d 501 (S.D.N.Y. 2008) ............................... 23

*Johnson v. Constantellis,* 221 Fed. Appx. 48 (2d Cir 2007) ........................................ 14

*Johnson v. Town of Colonie,* 477 N.Y.S.2d 513 (N.Y. App. Div. 1984) ......................... 25

*Jovanovic v. City of New York,* 04 CV 8437 (PAC), 2006 WL 2411541  (S.D.N.Y. Aug. 17, 2006) ........................................................................................................ 10, 18

*Jovanovic v. City of New York,* 2006 WL 2411541 (S.D.N.Y. Aug. 17, 2006) ................... 10

*Kanciper v. Lato,* 989 F. Supp. 2d 216 (E.D.N.Y. 2013) ............................................ 21

*Komlosi v. Fudenberg,* 88 CV 1792 (HBP), 2000 WL 351414 (S.D.N.Y Mar. 31, 2000) .............. 17

*Krause v. Bennett,* 887 F.2d 362 (2d Cir. 1989) ...................................................... 13

*Landon v. Cty. of Orange,* 08 CV 8048 (CS), 2009, WL 2191335 (S.D.N.Y. July 23, 2009) ... 14, 15

*Lopez v. City of New York,* 105 F. Supp. 3d 242 (E.D.N.Y. 2015) ............................... 24

*Mack v. Town of Wallkill,* 253 F. Supp. 2d 552 (S.D.N.Y. 2003) ................................. 22

*Maloney v. Cty. of Nassau,* 03 CV 4178 (SLT) (MLO), 2010 WL 3940456 (E.D.N.Y. Sept. 30, 2010), *aff'd,* 500 F. App'x 30 (2d Cir. 2012) .......................................................... 25

*Manganiello v. City of N.Y.,* 612 F.3d 149 (2d Cir. 2010) ......................................... 13

*Manganiello v. City of New York,* 612 F.3d 149 (2d Cir. 2010) ................................... 11

*Manuel v. City of Joliet,* 137 S. Ct. 911 (2017) ...................................................... 15

*Marin v. Viggiani,* 92 CV 3836 (LMM), 1993 WL 404098 (S.D.N.Y. Oct. 5, 1993) ................ 10

*Marshall v. Sullivan,* 105 F. 3d 47 (2d Cir. 1996) .................................................... 22

*McKelvie v. Cooper,* 190 F.3d 58 (2d Cir. 1999) ...................................................... 22

*Miloslavsky v. AES Eng'g Soc., Inc.,* 808 F. Supp. 351 (S.D.N.Y. 1992) ...................... 11, 13

*Mistretta v. Prokesch,* 5 F. Supp. 2d 128 (E.D.N.Y. 1998) ...................................... 10, 13

*Morris v. City of Oneonta,* 97 CV 1269 (DNH), 1999 WL 727436 (N.D.N.Y Sept. 16, 1999) ..... 14

*Murphy v. Lynn,* 118 F.3d 938 (2d Cir. 1997) .................................................. 9, 14, 19

*Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152 (E.D.N.Y. 2014) ............................ 18

*O'Brien v. City of Yonkers*, 07 CV 3974 (KMK), 2013 WL 1234966 (S.D.N.Y. Mar. 22, 2013).... 19

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) .................................................... 23

*Oliveira v. Mayer*, 23 F.3d 642 (2d Cir 1994) ...................................................... 10

*Oxman v. Downs*, 999 F. Supp. 2d 404 (E.D.N.Y. 2014)........................................... 6

*Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006) ............................................. 10, 13

*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999) ............................................. 19

*Pena v. DePrisco*, 432 F.3d 98 (2d Cir. 2005) ..................................................... 20

*People v. Christburg*, 46 Misc. 3d 941 (Supp. Ct. 2014) .......................................... 7

*People v. First Meridian Planning Corp.*, 201 A.D.2d 145 (1994), *aff'd*, 86 N.Y.2d 608, 658 N.E.2d 1017 (1995)................................................................................... 7

*People v. McRay*, 51 N.Y.2d 594 (1980) ........................................................... 14

*People v. Sutherland*, 102 A.D.3d 897 (2013) ...................................................... 7

*Phelps v. City of New York*, 04 CV 8570 (DLC), 2006 WL 1749528 (S.D.N.Y. June 27, 2006) .... 15

*Present v. Avon Prods.*, 253 A.D.2d 183 (1st Dept 1999)....................................... 14, 17

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001)......................................... 7

*Ramos v. City of New York*, 05 CV 3155 (GEL), 2006 WL 2871969 (S.D.N.Y. Oct. 5, 2006) *vacated on other grounds*, 298 Fed. App'x 84 (2d Cir. 2008) ................................... 15

Raysor v. Port Auth. of New York & New Jersey, 768 F.2d 34 (2d Cir. 1985) ...................... 6, 25

*Ricciuti v. New York City Transit Auth.,* 124 F.3d 123 (2d Cir. 1997)........................... 22, 24

*Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 07 CV 5441 (DGT), 2009 WL 817852 (E.D.N.Y. Mar. 27, 2009).............................................................................. 16, 18

*Rodick v. City of Schenectady,* 1 F.3d 1341 (2d Cir. 1993) ...................................... 25

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007) .................................................... 5

*Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004) .............................................. 16

*Russo v. City of Bridgeport*, 479 F.3d 196 (2d Cir. 2007) ....................................... 10

*Savino v. City of N.Y.*, 331 F.3d 63 (2d Cir. 2003)............................................... 13

*Savino v. City of New York*, 331 F.3d 63 (2d Cir. 2003)........................................... 8

*Schwartz v. Marcantonatos*, 567 F. App'x 20 (2d Cir. 2014) ..................................... 7, 9

*Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) ................................................ 15

*Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS)(AYS), 2017 WL 2729084 (E.D.N.Y. June 23, 2017). 24

*Taylor v. City of New York*, 03 CV 6477 (RLC), 2006 WL 1699606 (S.D.N.Y. June 21, 2006) .... 15

*Tchatat v. City of New York*, 14 CV 2385 (LGS), 2015 WL 5091197 (S.D.N.Y. Aug. 28, 2015)... 20

*Torraco v. Port. Auth.*, 539 F. Supp. 2d 632 (E.D.N.Y 2008)..................................... 13

*Torres v. Jones*, 26 N.Y.3d 742 (2016) ........................................................... 14

*Tretola v. Cty. of Nassau*, 14 F. Supp. 3d 58 (E.D.N.Y. 2014) ................................... 11

*Vanderwoude v. City of New York,* 12 CV 9046 (KPF), 2014 WL 2592457 (S.D.N.Y. June 10, 2014)..................................................................................... 8

*Vasquez v. McPherson*, 285 F. Supp. 2d 334 (S.D.N.Y. 2003) ................................... 6, 7

*Ward v. City of New York*, 08 CV 7380 (RJH), 2010 WL 3629536 (S.D.N.Y. Sept. 17, 2010) 10, 19

*Watson v. United States*, 865 F. 3d 123 (2d Cir. 2017) ........................................... 14

*Weaver v. Brenner*, 40 F.3d 527 (2d Cir. 1994)................................................... 24

*Weaver v. City of New York*, 13 CV 20 (CBA), 2014 WL 950041 (E.D.N.Y. March 10, 2014) .... 13, 19, 22, 23

*Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003) ............................................................. 20

*Weintraub v. Bd. of Educ.*, 423 F. Supp. 2d 38 (E.D.N.Y. 2006).............................. 14

*Wong v. Yoo*, 649 F. Supp. 2d 34 (E.D.N.Y. 2009) ............................................ 13, 16

Wu v. City of New York, 934 F. Supp. 581 (1996) ........................................... 6, 10, 25

Zellner v. Summerlin, 494 F.3d 344 (2d Cir. 2007) ..................................................... 4

S<small>TATUTES</small>

42 U.S.C. §1983 ............................................................................................................. 1

42 U.S.C. §1988 ............................................................................................................. 1

N.Y.C.P.L. § 170.40 ................................................................................................. 19, 20

R<small>ULES</small>

Fed. R. Civ. P. 12(b)(6) ......................................................................................... 1, 5, 24

## PRELIMINARY STATEMENT

Plaintiff brings this action for compensatory damages, punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of his civil rights by employees of Staples and the Elmsford Police Department. Despite ample opportunity to conduct a sufficient investigation and actual knowledge of plaintiff's innocence, the Staples and Elmsford employees jointly arrested Mr. Overby for Grand Larceny in the Third Degree, forwarded fabricated evidence to prosecutors and caused plaintiff to be wrongfully prosecuted for approximately eighteen months.

Plaintiff's First Amended Complaint ("FAC") asserts claims against the Elmsford Police defendants (Officers Montesano, Dilisio and three John Does) for false arrest, malicious prosecution, denial of a fair trial, conspiracy, *Colon* supervisory liability (as to defendant Foster) and failure to intervene, as well as associated state law claims and claims for negligence and (as to defendant Village of Elmsford) negligent hiring, training, retention and supervision. Plaintiff asserts claims against the Staples defendants (Fabian and Akram) for false arrest, malicious prosecution, denial of fair trial, negligence, negligent and intentional infliction of emotional distress and (as to defendant Staples the Superstore East, Inc.) negligent hiring, training, retention and supervision. Defendants now move to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

As detailed herein, defendants have broadly ignored the standards governing motions to dismiss by ignoring plaintiff's well-pled allegations, drawing inferences in their own favor and introducing (and improperly interpreting) extrinsic evidence. Once those defective aspects of defendants' motions are discarded as required under Rule 12(b)(6), plaintiff respectfully submits that governing law warrants denial of defendants' motions.

<u>STATEMENT OF FACTS</u>

The facts are taken from the FAC (and attached exhibits) and are summarized as follows. Plaintiff is a talented graphic designer and hardscrabble entrepreneur, who in 2015 was balancing his well-reviewed work as a Copy & Print Associate at the Tarrytown Road Staples in Elmsford, New York, with his proprietorship of Copy & Print Associates of Westchester, a technical services firm he had founded that year. FAC at ¶¶ 21-30.

Where the Staples Copy & Print Center was unable to perform design or print work to a customer's specifications, Mr. Overby's firm would occasionally step in and complete the work. *Id.* at ¶¶ 23-24. Although the situation was not without the potential for ethical conflict, Mr. Overby conducted his dealings honorably in each instance to the customers' satisfaction and to the benefit of Staples' reputation. *Id.* at ¶¶ 23-27. Critically, Mr. Overby never made, nor was there any evidence he had ever made, even a single fraudulent or unauthorized transaction, let alone any act of theft. *Id.* at ¶¶ 23-32.

Despite plaintiff's good work, he found himself on the wrong side of his direct supervisor, store manager Tariq Akram, who deemed plaintiff's scheduling requests impertinent and made clear that he resented plaintiff. *Id.* at ¶¶ 23-32. Notably, defendant Akram is connected to the Elmsford Police Department, having contravened Staples' corporate policies to provide free services to its police officers.[1] *Id.* at ¶¶ 33-37.

In March 2015, Staples hired defendant Wendell Eric Fabian as a Loss Prevention Manager. At the time of his hiring by Staples, Fabian was a disgraced former Baltimore police officer and alleged domestic abuser with a history of repeated terminations from retail loss prevention positions

---

[1] While this fact alone does not establish joint action, plaintiff respectfully submits that it is probative of that issue when coupled with other available facts in the record.

amidst fraud and misconduct allegations. *Id.* at ¶¶ 40-53. According to Fabian's own account, loss prevention agents are aggressively pressured by corporate managers to bring in employee theft cases. *Id.* at ¶ 53.

While the details of what happened next are largely unknowable without discovery, plaintiff's well-pled factual allegations plausibly support the inference that Fabian, with some degree of assistance from Akram, enlisted the Elmsford police as knowing and willing partners in an unjustified effort to frame Micah Overby.

On August 27, 2015, without any customer having ever complained and with no evidence that Mr. Overby had violated any law, Fabian and Akram arranged with Elmsford police officers for the officers to wait outside while Fabian and Akram brought Mr. Overby into an office. There, seizing upon two lawful transactions plaintiff had made using his own Staples gift cards and his valid employee discount on the Staples website, Fabian and Akram circumvented *Miranda* and coerced Mr. Overby into taking down a statement dictated by Fabian intended to manufacture evidence of a crime. The effort was largely unsuccessful, as plaintiff managed to include exculpatory language, consistent with his denials of wrongdoing during the interrogation process. Fabian used his knowledge of plaintiff's unrelated prior felony conviction and Fabian's own law enforcement background to intimidate Mr. Overby. Once the statement was obtained, the Elmsford police officers rushed in, as if on signal and placed Mr. Overby in handcuffs without discussion. *Id.* at ¶¶ 39, 54-70.[2]

As defendants concede in their motions (by failing to identify any Penal Law section for which probable cause allegedly existed), the statement defendants dictated to Mr. Overby does not

---

[2] Plaintiff respectfully submits that the officers' immediate entry and seizure of plaintiff, without any discussion, suggests that police had prior knowledge of what would transpire and makes plausible the inference that the effort had been coordinated amongst the defendants.

satisfy the elements of any criminal statute. Given the absence of any other evidence of criminality in the record, this is fatal for defendants. *Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 532 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F. App'x 535 (2d Cir. 2011) ("Probable cause must extend to every element of the crime for which a person is arrested. When an arrest is made, the police officer must have reasonably believed that each element of the criminal offense for which the arrest was made was committed.") (citing *Zellner v. Summerlin,* 494 F.3d 344, 372–77 (2d Cir. 2007)); *see Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003)  (requiring, in the malicious prosecution context, that defendants prove they were in possession of "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty").

Without conducting any investigation, defendant Montesano marched Mr. Overby, handcuffed, through the store and past his coworkers on his way to the police precinct. FAC at ¶ 72. Montesano then swore under penalty of perjury to possessing "direct knowledge" following a "police investigation" that, "between the month of April 2015 and August 27, 2015" plaintiff "did steal the U.S. currency amount (sic) of $5,390 from Staples Inc. through Staples cash cards."[3] *Id.* at ¶¶ 82-89. Following his arrest, Mr. Overby was arraigned and remained incarcerated for approximately nine days until he could post bond. *Id.* at ¶¶ 90-91. Mr. Overby was ultimately released on bond and forced to retain private counsel to defend the charges in a prosecution that spanned 532 days. *Id.* at ¶ 96.

As described in the FAC, plaintiff made numerous complaints, including several directly to defendant Chief Foster of the Elmsford Police and the Staples Corporation, explaining that he had been wrongfully arrested and requesting an investigation of his claim, even offering evidence. *Id.* at

---

[3] Plaintiff respectfully urges the Court to scrutinize the felony complaint, annexed to the FAC as Exhibit 12, as well as the statements from plaintiff and defendant Fabian (Exhibits 5 and 11, respectively).

¶¶ 97-103. On this record, Foster and Staples ignored Mr. Overby entirely. *Id.* The government, meanwhile, was never able to obtain a grand jury indictment and Mr. Overby was forced to return to court repeatedly as the prosecution dragged on. *Id.* at ¶ 104. In the continuing absence of any evidence and with probable cause having dissipated by virtue of plaintiff's communications, defendant Dilisio nevertheless submitted a false Superseding Misdemeanor Information to the Village Court on June 22, 2016. *Id.* at ¶ 105. As with the prior accusatory instrument, the record offers no support for the factual averments contained in the superseding information. *Id.* at ¶ 106. On February 8, 2017, the charge was dismissed with prejudice and favorably disposed. *Id. at* 107.

## STANDARD FOR DISMISSAL

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court must accept as true the well-pled factual allegations contained in a complaint and draw all inferences in plaintiff's favor. *See Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006); *see also Gonzalez v. Caballaro*, 572 F. Supp. 2d 463 (S.D.N.Y. 2008). A complaint may be dismissed pursuant to Rule 12(b)(6) only where it appears that there are not "enough facts to state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged wrongdoing]." *Id.* at 556.

The Staples defendants offer extrinsic evidence, attached to the Declaration of Christine Hogan as Exhibit 2, in support of their motion to dismiss. However, the Court should not consider this exhibit. In deciding a Rule 12(b)(6) motion, a court is generally required to "look only to the allegations on the face of the complaint." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007);

*Oxman v. Downs*, 999 F. Supp. 2d 404, 406 (E.D.N.Y. 2014) ("…evidence outside of the Complaint may not be considered by the Court when deciding a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6)"). Additionally, the extrinsic document proffered by the defendants is not the type typically associated with the "integral to the complaint" exception. *See Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150 (2d Cir. 2006) (where the exception is recognized, the extrinsic document is usually a "contract or other legal document containing allegations upon which the plaintiff's complaint stands or falls").

Plaintiff did not rely on the exhibit in bringing the instant lawsuit; neither the Complaint nor the FAC contain any reference to this extrinsic document and its contents are not integral to the pleadings. Defendants' treatment of the document and its legal consequence is also improper, in that defendants describe the document inaccurately as reflecting an interest of justice dismissal per N.Y.C.P.L. § 170.40, when the document reflects that prosecutors withdrew and abandoned the charge, and the court then dismissed with prejudice on plaintiff's motion. This distinction is so material as to be determinative on the key issue of favorable termination.

## I: PLAINTIFF STATES CLAIMS FOR FALSE ARREST AND MALICIOUS PROSECUTION

In the Second Circuit, the warrantless arrest of an individual is presumptively unlawful. *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003). "[D]efendant has the burden to establish that he had probable cause." *Vasquez v. McPherson*, 285 F. Supp. 2d 334, 340-41 (S.D.N.Y. 2003) (citing *Raysor v. Port Auth. of New York & New Jersey,* 768 F.2d 34, 40 (2d Cir. 1985) and *Wu v. City of New York,* 934 F. Supp. 581, 586 (1996)); *see Alhovsky v. Ryan*, 658 F. Supp. 2d 526, 532 (S.D.N.Y. 2009), *aff'd sub nom. Alhovsky v. Paul*, 406 F. App'x 535 (2d Cir. 2011) ("It is axiomatic that the police cannot arrest a person unless they have probable cause to believe that he has committed a crime.") (citing *Gerstein v. Pugh,* 420 U.S. 103, 111–112 (1975)).

"To meet his burden, defendant must show, by admissible evidence, that he had a quantum of evidence more than rumor, suspicion, or even a strong reason to suspect." *Id.* (quotation marks and citations omitted). In the malicious prosecution context, probable cause is the totality of "facts and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd*, 336 F.3d at 76.

In the *Vasquez* case, the Hon. Colleen McMahon explained that "arrests cannot be based on mere suspicion" and, as a result, "the facts relied upon by an arresting officer must not be susceptible of an innocent or ambiguous explanation." *Vasquez*, 285 F. Supp. 2d at 341. (citations omitted); *see Schwartz v. Marcantonatos*, 567 F. App'x 20, 23 (2d Cir. 2014) (finding an absence of arguable probable cause where police officers "failed to consider the honest alternative") (citing *Provost v. City of Newburgh*, 262 F.3d 146, 158 (2d Cir. 2001)).

Indeed, the law is well settled that a police officer initiating a prosecution must have probable cause as to the specific charged offense, here N.Y.P.L. § 155.35. *Berry v. Marchinkowski*, 137 F. Supp. 3d 495, 536 (S.D.N.Y. 2015) (collecting cases). Probable cause must extend to "every element of the offense charged." N.Y.C.P.L. § 200.50(7); *see People v. First Meridian Planning Corp.*, 201 A.D.2d 145, 154 (1994), *aff'd*, 86 N.Y.2d 608, 658 N.E.2d 1017 (1995). Arguable probable cause for violation of Penal Law § 155.35 thus requires an officer, at the very least, to possess sufficient evidence to establish that the actual value of the stolen property exceeds $3,000 with specificity and without approximation. *People v. Christburg*, 46 Misc. 3d 941, 943 (Supp. Ct. 2014) (collecting cases). "Conclusory statements and rough estimates of value that are unsupported by a basis of knowledge are insufficient" as a matter of law. *People v. Sutherland*, 102 A.D.3d 897, 899 (2013) (collecting cases) (quotation marks and citations omitted).

The FAC contains sufficient factual allegations, accepted as true, to satisfy the four elements of a claim for false arrest.[4] The defendants do not contest that plaintiff has sufficiently pled the first three elements of false arrest. They argue that plaintiff has not properly pled the fourth element because Fabian and Akram had probable cause to make unspecified criminal allegations against Mr. Overby and, *ipso facto*, the statements of Fabian, Akram and Overby amounted to probable cause (for an unspecified crime) such as to privilege the arrest made by the Elmsford Police defendants. Such arguments are without merit.

The FAC plausibly alleges that: (i) during his interrogation plaintiff maintained his innocence and made no inculpatory statements; (ii) Fabian, in the presence of Akram, coerced plaintiff into writing and signing a statement that was (iii) dictated to Mr. Overby by Fabian and (iv) contradictory of Fabian's own affidavit (on the critical issue of customer authorization); (v) plaintiff's statement contains truthful exculpatory language and does not admit to any crime or plausibly satisfy the elements of any crime ("I used my expertise in graphic design to charge customers for design work by having them purchase gift cards for me in return for graphic design work that I would do on my free time."); and (vi) no further evidence was ever developed or adduced in support of the criminal prosecution.

Such allegations, when credited, support the conclusion that plaintiff had not committed any larceny, let alone somehow stolen over $5,000 in cash cards, and that no reasonable person could

---

[4] The elements of a § 1983 false arrest claim are "substantially the same" as the elements for false imprisonment under New York law. *Vanderwoude v. City of New York*, 12 CV 9046 (KPF), 2014 WL 2592457 (S.D.N.Y. June 10, 2014) (citing *Weyant*, 101 F.3d 845). To state a false arrest claim, the plaintiff must plausibly allege that: (i) he was intentionally confined; (ii) he was conscious of the confinement; (iii) he did not consent to the confinement; and (iv) the confinement was not privileged. *See Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012); *see also Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003).

conclude that he had. Indeed, the favorable inference to be drawn from his statement is the truth: that plaintiff never made any unauthorized transactions or stole from anyone. *See Schwartz v. Marcantonatos*, 567 F. App'x at 23.

Despite these facts – each of which is plausibly alleged to have been known to the individual defendants – plaintiff was arrested. For the foregoing reasons, plaintiff has pled viable claims for false arrest and malicious prosecution.[5] In an abundance of caution, plaintiff will address the substantive arguments raised by defendants regarding his false arrest and malicious prosecution claims.

## A. The Word of an Unreliable Complaining Witness Does Not Provide Probable Cause, Reasonable Inquiry is Required and Malice can be Inferred.

Defendants, relying on *Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995), *cert. denied*, 517 U.S. 1189 (1996) (and, as discussed below, on decisions rendered at the summary judgment phase, or later, which is telling), argue that probable cause privileged plaintiff's arrest (and prosecution). However, the Court in *Singer* included the following caveat to this rule, conveniently omitted from the defendants' brief: "*absent circumstances that raise doubts as to the victim's veracity.*" *Id.* at 119 (emphasis added). Courts of this circuit have held – including in the cases cited by the defendants – that probable cause may be established based upon a citizen's complaint *absent circumstances that raise doubts as to the victim's veracity. Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (holding that arrest of person may be proper "[w]hen information is received from a putative victim… unless circumstances raise doubts as to the person's veracity"); *Weaver*, 2014 U.S.

---

[5] To state a claim for the tort of malicious prosecution under New York State law, a plaintiff must allege "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997). When malicious prosecution is brought pursuant to 42 U.S.C. § 1983, plaintiff must also allege a post-arraignment deprivation of liberty. *Id.* at 944-46.

Dist. LEXIS 32036 at *14; *Carminucci v. Alagno*, 10 CV 228 (VB), 2012 WL 4053801, *3 (S.D.N.Y. Aug. 9, 2012); *Cornell v. Kapral*, 09 CV 387 (GTS), 2011 WL 94063, *6 (N.D.N.Y. Jan. 11, 2011), *aff'd*, 483 Fed. Appx. 590 (2d Cir. 2012); *Ward v. City of New York*, 08 CV 7380 (RJH), 2010 WL 3629536 (S.D.N.Y. Sept. 17, 2010); *Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998).

Indeed, in the context of an arrest and prosecution, the uncorroborated statements of a civilian simply do not provide probable cause. *See Wu v. City of New York*, 934 F. Supp. 581, 587 (S.D.N.Y. 1996) ("Second Circuit case law stresses the importance of investigation and corroboration."); *Golden v. City of New York*, 418 F. Supp. 2d 226, 232-33 (E.D.N.Y. 2006); *Oliveira v. Mayer*, 23 F.3d 642, 647 (2d Cir. 1994) (information provided by witness must be "sufficiently reliable and corroborated"); *Marin v. Viggiani*, 92 CV 3836 (LMM), 1993 WL 404098, *8 (S.D.N.Y. Oct. 5, 1993) (victim's complaint must be accompanied by "independent corroborative evidence to support at least some of the victim's assertions"); *Jovanovic v. City of New York*, 04 CV 8437 (PAC), 2006 WL 2411541, *7 (S.D.N.Y. Aug. 17, 2006) ("The fact that a victim provides the police with information of an alleged crime does not, without more, establish probable cause. Rather, the officer has a duty to assess the reliability of the victim and, if circumstances call into doubt the victim's veracity, to investigate the allegations and corroborate them."). "[T]he failure to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause." *Id.; see also Russo v. City of Bridgeport*, 479 F.3d 196, 209 (2d Cir. 2007); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (requiring "reliability or veracity" on the part of the complainant); *Bail v. Ramirez*, 04 CV 5084 (WHP), 2007 WL 959045, *7 (S.D.N.Y. Mar. 29, 2007) ("Where there are doubts as to a witness' truthfulness . . . the police must gather additional

information to buttress them."); *Cornett v. Brown*, 04 CV 0754 (DGT), 2006 WL 845568, *4 (E.D.N.Y. Mar. 30, 2006) (requiring investigation where truthfulness "called into question"); *Bullard v. City of New York*, 240 F. Supp. 2d 292, 298 (S.D.N.Y. 2003) (refusing to dismiss complaint where "there were sufficient indications that the complainants were not reliable sources of probable cause and the defendants did nothing to investigate the allegations, corroborate them, or pursue [plaintiff's] claims that he was innocent."); *Miloslavsky v. AES Eng'g Soc., Inc.,* 808 F. Supp. 351, 355 (S.D.N.Y. 1992).

The well-pled allegations in the FAC, accepted as true, plausibly set forth circumstances raising doubts about the veracity of the information provided by defendants Fabian and Akram and triggering the need for corroboration by Montesano and other police defendants. Fabian's scandalous history as catalogued by the defendant's own admissions in the FAC, including his description of management as unreasonably demanding theft cases from loss prevention, is appropriately before the Court on the issue of Fabian's credibility on the date in question. Second, the contents of plaintiff's statement, and his description of the interrogation, contradict Fabian's claim that Mr. Overby ever admitted to unauthorized use of customer credit cards or any other criminal wrongdoing.

Indeed, courts of this circuit have held that the failure of a police officer to make a further inquiry when a reasonable person would have done so may be evidence of a lack of probable cause. *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010); *see also Tretola v. Cty. of Nassau,* 14 F. Supp. 3d 58, 73 (E.D.N.Y. 2014) ("[A] police officer may not close his or her eyes to facts that would help clarify the circumstances of an arrest. Reasonable avenues of investigation must be

pursued especially when, as here, it is unclear whether a crime had even taken place.") (quoting *BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir. 1986)).

Similarly, New York State courts recognize that a failure to make further inquiry may be evidence of a lack of probable cause. *See Guntlow v. Barbera*, 76 A.D.3d 760 (3d Dept 2010); *Fausto v. City of New York*, 17 A.D.3d 520, 793 N.Y.S.2d 165 (2d Dept 2005) ("Contrary to the defendant's contentions, there is an issue of fact as to whether the officer's reliance on the statement of the plaintiff's ex-wife was justified where the evidence and testimony indicated that a reasonable person would have made further inquiry."); *Carlton v. Nassau County Police Dept.*, 305 A.D.2d 365, 761 N.Y.S.2d 98 (2d Dept. 2003). In *Carlton*, the plaintiff had been arrested in his home, without a warrant, for theft of services after he had left a restaurant without paying disputed portions of a bill. The arresting officers knew that the bill had been disputed and that the plaintiff had provided his business card to the restaurant owner. *Carlton*, 306 A.D.2d at 366. The court, in denying the defendants' motion for summary judgment, held that "…issues of fact exist as to whether the police officers had probable cause to arrest … notwithstanding the existence of an affidavit by the restaurant owner that the plaintiff left without paying the bill." *Id.* at 365.

The facts in the instant matter are like those in *Carlton*. In each case, officers were faced with vague and conflicting evidence concerning unsupported, disputed allegations of criminal conduct and the arresting officers were credibly alleged to have made insufficient further inquiry. The Elmsford defendants' reliance, in turn, on the dubious information received from Fabian (and Akram) was objectively unreasonable and did not provide them with arguable probable cause.

The Elmsford defendants' only legal argument is that probable cause to arrest for an unspecified crime existed based on the word of complainant Fabian. Elmsford Brief at pp. 7-12.

However, it is well-settled that "officers are not absolutely privileged to arrest upon a charge by any private individual who claims to be a victim." *Mistretta*, 5 F. Supp. 2d at 133.

On the facts plausibly alleged here – which must be accepted as true for purposes of this motion, and which defendants' memoranda have completely failed to address – there undoubtedly *were* "circumstances that raise[d] doubts as to the victim's veracity." *Singer,* 63 F.3d at 119; *see Weaver v. City of New York*, 13 CV 20 (CBA), 2014 WL 950041, *5 (E.D.N.Y. March 10, 2014) ("Weaver's complaint permits the inference that the defendant officers had reason to doubt Moultrie's accusations and should have investigated further before arresting Weaver.").

This is especially true at the motion to dismiss stage, where so little of the record has been developed and the obligation to confer reasonable inferences is at its height. *See Wong v. Yoo*, 649 F. Supp. 2d 34, 60 (E.D.N.Y. 2009).

The cases cited by the defendants do not support dismissal here. First, the purported authority is almost entirely drawn from summary judgment decisions, or appeals after trial, where the plaintiff had the opportunity to conduct discovery and develop a full record. *See Costello v. Milano*, 20 F. Supp. 3d 406 (S.D.N.Y. 2014) (summary judgment); *Miloslavsky*, 808 F. Supp. at 351 (same); *Panetta v. Crowley*, 460 F.3d 388 (2d Cir. 2006) (post-trial); *Krause v. Bennett*, 887 F.2d 362 (2d Cir. 1989) (same); *Baker v. McCollan*, 443 U.S. 137 (1979) (same); *Singer*, 63 F. 3d 110 (same); *Escalera v. Lunn*, 361 F.3d 737 (2d Cir. 2004) (same); *Torraco v. Port. Auth.*, 539 F. Supp. 2d 632 (E.D.N.Y 2008) (summary judgment); *Caldarola v. Calabrese*, 298 F.3d 156 (2d Cir. 2002) (same); *Amore v. Novarro*, 624 F.3d 522 (2d Cir. 2010) (same); *Manganiello v. City of N.Y.*, 612 F.3d 149 (2d Cir. 2010) (post-trial); *Drummond v. Castro*, 522 F. Supp. 2d 667 (S.D.N.Y. 2007) (summary judgment); *Savino v. City of N.Y.*, 331 F.3d 63 (2d Cir. 2003) (same); *Fulton v.*

-13-

*Robinson*, 289 F.3d 188 (2d Cir. 2002) (same); *Cornejo v. Bell*, 592 F.3d 121 (2d Cir. 2010) (same);

*Watson v. United States*, 865 F. 3d 123 (2d Cir. 2017) (post-trial); *Johnson v. Constantellis*, 221 Fed.

Appx. 48 (2d Cir 2007) (summary judgment); *Bonide Prods., Inc. v. Cahill*, 223 F.3d 141 (2d Cir.

2000) (same); *Murphy*, 118 F.3d 938 (post-trial); *Morris v. City of Oneonta*, 97 CV 1269 (DNH),

1999 WL 727436 (N.D.N.Y Sept. 16, 1999) (summary judgment); *People v. McRay*, 51 N.Y.2d 594

(1980) (criminal case on appeal after trial); *Weintraub v. Bd. of Educ.*, 423 F. Supp. 2d 38 (E.D.N.Y.

2006) (summary judgment); *Present v. Avon Prods.*, 253 A.D.2d 183 (1st Dept 1999) (same); *Torres*

*v. Jones*, 26 N.Y.3d 742 (2016) (same).

The sole exception is *Betts v. Shearman*, 751 F.3d 78 (2d Cir. 2014), cited by the Elmsford

defendants at p. 15 of their brief. *Betts* does involve a motion to dismiss. However, the facts in that

case involve the thorough, apparently good faith investigation of credible domestic violence

allegations brought by an injured spouse, with no indicia of unreliability. Here, unlike in *Betts*, there

appears to have been no investigation or evidence, and discovery is thus warranted on the issue of

probable cause.

Second, these cases broadly involve, like *Betts*, objective evidence of criminality and rigorous

police investigations, in stark contrast to the facts as presented by Mr. Overby. *See, e.g., Caldarola*,

298 F.3d at 167 (2d Cir. 2002) (prior to arrest, complaining witness employee provided

investigating police officer with extensive investigative file, including documentary evidence,

videotape footage, summaries of multiple witness interviews and reports from two outside security

firms).

Plaintiff has also sufficiently alleged an absence of probable cause to support the inference of

malice at this early stage. As this Court recognized in *Landon v. Cty. of Orange*, "In most cases, the

-14-

lack of probable cause—while not dispositive—tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause." 08 CV 8048 (CS), 2009, WL 2191335, *9 (S.D.N.Y. July 23, 2009) (citing *Lowth*, 82 F.3d at 573). Plaintiff respectfully submits that an officer who believed Mr. Overby had stolen over $5,000 in cash cards would reasonably want to know, at least, when, where and how the cards had been taken.[6,7]

## B. Knowingly Filing False Charges Constitutes Initiation and Subjects a Civilian to Liability for Malicious Prosecution, and the Record Supports a Favorable Termination Finding.

---

[6] Based upon the Supreme Court's recent decision in *Manuel v. City of Joliet*, 137 S. Ct. 911 (2017), federal malicious prosecution claims may be more accurately referred to as post-arrest, pre-trial wrongful seizure claims. In *Manuel*, the Supreme Court effectively eliminated the need to demonstrate subjective malice for the claim, in deference to the general objective reasonableness standard governing claims under the Fourth Amendment. *Id.* at 917 *et seq.*; *see also id.* at 925 (Alito, J., dissenting) ("it is firmly established that the Fourth Amendment standard of reasonableness is fundamentally objective"). Justice Alito, in his dissent, makes this explicit, noting that "while subjective bad faith, *i.e.*, malice, is the core element of a malicious prosecution claim, it is firmly established that the Fourth Amendment standard of reasonableness is fundamentally objective" and "cannot co-exist" with a subjective "malice requirement." *Id.* Although not discussed explicitly in the opinion because it was limited to deciding the question of whether the Fourth Amendment or the Due Process clause should govern such claims, *Manuel* of necessity stands for the proposition that there is no place in the analysis of a federal "malicious prosecution" claim for consideration of subjective malice. The majority, in remanding the case for consideration of the accrual date of the claim, took care to caution that common-law categories may not be imported into constitutional analyses as if they were prefabricated components. *Id.* at 921. Additionally, the Fourth and Sixth Circuits had, even prior to *Manuel*, correctly held that a showing of subjective malice is not required for a federal malicious prosecution claim. *See Sykes v. Anderson*, 625 F.3d 294, 309-10 (6th Cir. 2010); *Brooks v. City of Winston-Salem*, 85 F.3d 178, 184 n.5 (4th Cir. 1996).

[7] The Elmsford defendants do not and cannot contest initiation. It is black-letter law that by making or participating in an arrest, a police officer "initiates" a prosecution. *See, e.g., Cook v. Sheldon,* 41 F.3d 73, 79 (2d Cir. 1994); *Ramos v. City of New York*, 05 CV 3155 (GEL), 2006 WL 2871969, *4 (S.D.N.Y. Oct. 5, 2006) *vacated on other grounds*, 298 Fed. App'x 84 (2d Cir. 2008); *Phelps v. City of New York*, 04 CV 8570 (DLC), 2006 WL 1749528, *4 (S.D.N.Y. June 27, 2006); *Taylor v. City of New York*, 03 CV 6477 (RLC), 2006 WL 1699606, *4 (S.D.N.Y. June 21, 2006) (arresting officers "clearly" initiated prosecution); *Carter v. Port Auth. of N.Y. & N.J.*, 03 CV 8751 (DLC), 2004 WL 2978282, *8 (S.D.N.Y. Dec. 20, 2004); *Cox v. County of Suffolk,* 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (officer initiated prosecution by swearing to felony complaint).

In opposition to plaintiff's state law malicious prosecution claim, the Staples defendants misstate the controlling precedent to argue that providing false information to police officers and prosecutors cannot give rise to liability for malicious prosecution. Staples Brief at pp. 9-10. While this may be the case where the information provided by a complainant is true (or accidentally incorrect), that is not the situation in the instant matter, where Fabian, with the assistance of Akram, is alleged to have deliberately falsely implicated plaintiff. FAC at ¶¶ 39-88. Indeed, when the officers arrived, it was Fabian's false statements, inserted by the officers in the felony complaint they prepared, that convinced prosecutors to file and pursue formal charges against Mr. Overby. *Id.*

The case law is unequivocal that such actions by a civilian give rise to liability for malicious prosecution. *See, e.g., Rothstein v. Carriere*, 373 F.3d 275, 294 (2d Cir. 2004) ("a jury may rely upon false statements to law enforcement in determining that a person initiated a prosecution."); *Wong*, 649 F. Supp. 2d at 65 ("[W]here a party is responsible for providing false information or manufactured evidence that influences a decision whether to prosecute, he may be held liable for malicious prosecution."); *Rivers v. Towers, Perrin, Forster & Crosby Inc.*, 07 CV 5441 (DGT), 2009 WL 817852, *3 (E.D.N.Y. Mar. 27, 2009) ("Giving information to the police that is known to be false qualifies as the commencement of a prosecution."); *Capanelli v. NYP Holdings, Inc.*, 06 CV 15397 (SHS), 2009 WL 249358, *6 (S.D.N.Y. Jan. 30, 2009) ("[A] malicious prosecution claim may arise if a defendant knowingly provides false information to the police and the police rely directly on that information in prosecuting."); *Brown v. Sears Roebuck & Co.*, 297 A.D.2d 205, 210 (1st Dept 2002) ("[A] defendant may be said to have initiated a criminal proceeding by providing false evidence to the police or withholding evidence that might affect the determination by the police to make an arrest.") (citation omitted); *Komlosi v. Fudenberg*, 88 CV 1792 (HBP), 2000 WL

351414, *10 (S.D.N.Y Mar. 31, 2000) ("Where…a defendant willfully and maliciously causes false information to be presented to prosecuting officials, the prosecutor's decision, based on the false information, will not shield the source from liability for malicious prosecution.").

The sole case cited by the Staples defendants, *Present*, 253 A.D.2d 183, is easily distinguishable. First, the decision was rendered at the summary phase, and lacked the gaping holes in the factual record found here. *See id.* at 187. Second, the plaintiff in *Present* could, after full discovery, offer "no evidentiary support" for his allegation that the defendants in that case were "willfully ignorant of exculpatory information or withheld same from the police." Here, plaintiff's allegations, which must be accepted at this early stage, support the conclusion that Fabian and Akram withheld from the government the basic fact that the statement was coerced and failed to communicate plaintiff's plausible and truthful explanation of his innocence and denial of wrongdoing.

Plaintiff respectfully notes that, in the context of arguing this point, the Staples defendants inaccurately characterize Fabian's statement as merely "summarize[ing] the admissions that Plaintiff had made in his own sworn statement." Staples Brief at p. 9. But a comparison of the documents reveals that the statements broadly differ, including in the most material respects. Fabian represents in his statement that plaintiff admitted to fraudulently using customer credit cards when plaintiff specifically and truthfully avers in his statement (and the FAC) that the gift cards were a form of payment in legitimate business transactions. *Compare* FAC at Exhibit 11 (Fabian statement) *with* Exhibit 1 (Overby statement); *see* FAC at Exhibits 6 (Blakney Letter) and 10 (Tesler Letter).

The Staples defendants, improperly relying on extrinsic evidence, also advance the mistaken argument that plaintiff did not sufficiently allege favorable termination. *See* Staples Brief at p. 10;

*but see* FAC at ¶ 107; *see also Rivers*, 2009 WL 817852 at *4 (holding a malicious prosecution plaintiff's allegation of dismissal with prejudice sufficient on a motion to dismiss).

The Court should disregard the transcript improperly submitted by the Staples defendants as extrinsic evidence that was not integral to or relied upon in drafting the FAC, in accordance with the weight of Second Circuit authority. *See*, e.g., *Global Network,* 458 F.3d at 150. Further, even if the Court reaches the merits and considers the transcript, defendants' argument on the issue nevertheless fails. The Staples defendants have misstated the contents of the transcript and the thrust of the controlling law. The transcript – rather than reflecting an interest of justice dismissal by a court pursuant to N.Y.C.P.L. § 170.40, as argued by the Staples defendants at p. 10 of their brief – reflects the voluntary withdrawal of the charge by the prosecutor, an oral motion by plaintiff's counsel for dismissal with prejudice following the discontinuance, and the granting of that motion by the presiding court. This is a legal distinction so material as to be determinative on this record. *See Norton v. Town of Brookhaven*, 47 F. Supp. 3d 152, 157–61 (E.D.N.Y. 2014) (collecting cases).

Indeed, even if the dismissal had in fact been without prejudice pursuant to N.Y.C.P.L. § 170.40 and not a more favorable abandonment with prejudice, such would still be considered favorable under controlling law. *See Blazina v. Port Auth. of New York & New Jersey,* 06 CV 481 (KNF), 2008 WL 919671, *5 (S.D.N.Y. Apr. 1, 2008) ("[w]hether a dismissal in the interest of justice ... constitutes a favorable termination is a question which requires a case-by-case analysis"); *Jovanovic,* 2010 WL 8500283 at *6 ("a dismissal by the prosecution 'in the interest of justice ... may properly be considered a 'favorable' termination'"); *Arum v. Miller,* 273 F. Supp. 2d 229 (E.D.N.Y. 2003) (holding interest of justice dismissal to be a favorable termination for purposes of a malicious prosecution claim).

Thus, plaintiff has met his burden at the pleading stage and he should be afforded discovery on his federal and state false arrest and malicious prosecution claims. Accordingly, defendants' motions to dismiss these claims should be denied. *See Ward*, 2010 WL 3629536 at *2 ("The Court cannot answer [the question of whether probable cause existed] now, as a matter of law, before the completion of discovery. The existence of probable cause depends on the totality of the circumstances, and the full circumstances of [plaintiff's] arrest are not in the record yet."); *Weaver*, 2014 WL 950041; *O'Brien v. City of Yonkers*, 07 CV 3974 (KMK), 2013 WL 1234966, *4 (S.D.N.Y. Mar. 22, 2013) ("[w]here the question of whether an arresting officer had probable cause is predominantly factual in nature, as when there is a dispute as to the pertinent events, the existence… of probable cause is to be decided by the jury.") (*quoting Murphy*, 118 F.3d at 947).

## II: PLAINTIFF STATES A CLAIM FOR § 1983 CONSPIRACY

To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) [an] act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson,* 200 F.3d 65, 72 (2d Cir. 1999); *accord Betts,* 751 F.3d at 84-85. It is well settled that "a plaintiff is not required to list the place and date of defendants['] meetings and the summary of their conversations when he pleads conspiracy" so long as the pleadings present "facts tending to show agreement and concerted action." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005) (internal quotations marks and citation omitted).

Cases in the Second Circuit have affirmed § 1983 conspiracy allegations in situations identical to those presented here, where police and private actors jointly participated in the arrest and prosecution of the plaintiff under circumstances arguably lacking probable cause. *See Bang v. Utopia Restaurant*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) (sustaining § 1983 conspiracy allegations

on motion to dismiss where restaurant owner and unknown responding police officers were claimed to have arrested plaintiff without probable cause); *Tchatat v. City of New York*, 14 CV 2385 (LGS), 2015 WL 5091197, *5 (S.D.N.Y. Aug. 28, 2015) ("The co-conspirators include the Police Officer Defendants who allegedly acted to further the conspiracy by helping to hide and manipulate the evidence of the private parties' misconduct.") (citing *Pena v. DePrisco*, 432 F.3d 98, 111 (2d Cir. 2005)); *Biswas v. City of New York*, 973 F. Supp. 2d 504, 534 (S.D.N.Y. 2013) *appeal dismissed sub nom. Biswas v. Kwait*, 576 F. App'x 58 (2d Cir. 2014), *as amended* (Aug. 28, 2014) (denying motion to dismiss § 1983 conspiracy allegations between public school officials and unknown responding police officers in arrest allegedly without probable cause); *Gordon v. City of New York*, 15 CV 2439 (CBA), Slip Op. (E.D.N.Y. July 22, 2016), annexed to the Declaration of Gabriel P. Harvis dated December 13, 2017 ("Harvis Decl.") as Exhibit 1 ("Gordon's allegations that he was arrested immediately after [the police and private defendants'] discussion and that the police made false statements "at the behest" of defendants, are sufficient to withstand a motion to dismiss…") (collecting cases).

In their motion, the Staples defendants base their conspiracy argument solely on *Webb v. Goord*, 340 F.3d 105 (2d Cir. 2003), a case that could hardly be more dissimilar from the instant matter. Staples Brief at p. 12-13. In *Webb*, the Second Circuit was presented with a sparse complaint in which twenty-nine inmate-plaintiffs made single-sentence allegations about forty discrete alleged acts of brutality over a nine-year period across fourteen different jail facilities by correction officers unknown to one another. *Id.* at 107-108. Here, to the contrary, we have strong circumstantial evidence of a joint effort in which Staples employees conducted a coercive, custodial interrogation functioning effectively as arms of the State (but without *Miranda*), while the police officers waited

outside for the act to conclude. They then entered the room and arrested Mr. Overby without discussion. With each proceeding in the alleged manifest absence of probable cause, the police officers and the Staples defendants jointly (on this record) prepared and submitted false sworn documents that contained obvious inconsistencies, apparent lies and no evidence to support them. As a result, plaintiff was jailed for nine days and criminally prosecuted for eighteen months. Plaintiff respectfully submits that such conduct plausibly implies coordination and agreement.

Accordingly, defendants' motions to dismiss plaintiff's conspiracy claim should be denied.

### III: QUALIFIED IMMUNITY DOES NOT APPLY

"A defendant asserting a qualified immunity defense at the 12(b)(6) stage…faces a formidable hurdle. Because the evidence supporting a finding of qualified immunity is normally adduced during the discovery process and at trial, the defense of qualified immunity [usually] cannot support the grant of a Fed. R. Civ. P. 12(b)(6) motion for failure to state a claim upon which relief can be granted." *Kanciper v. Lato*, 989 F. Supp. 2d 216, 231-32 (E.D.N.Y. 2013) (citation omitted); *see also Hershey v. Goldstein*, 938 F. Supp. 2d 491, 521 (S.D.N.Y. 2013) (Engelmayer, J.) ("[A] defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route. Therefore, although possible, [u]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted. Such is true here. At this early stage, it is premature to resolve defendants' qualified immunity defense, because Hershey's allegations, on which defendants here must rely, do not sufficiently support[] the defense . on the face of the complaint.") (internal quotations and citations omitted).

In their perfunctory argument, the Elmsford defendants ignore facts alleged by plaintiff and supported by documentary evidence as outlined above. *Compare* Elmsford Brief at pp. 10-11, 14-15

with FAC at ¶¶ 39-88. Such facts, individually and in the aggregate, when credited, could lead a reasonable jury to return a verdict against the police officers.

"Where, as here, there are facts in dispute that are material to a determination of reasonableness…qualified immunity…is not appropriate." *See Annan*, 2015 WL 5552271 at *7 (citing *McKelvie v. Cooper,* 190 F.3d 58, 63 (2d Cir. 1999)); *accord Curry*, 316 F.3d at 334-35; *see also Weaver*, 2014 WL 950041 at *6 (quoting *Mack v. Town of Wallkill,* 253 F. Supp. 2d 552, 560 (S.D.N.Y. 2003)) ("The problem here is that the factual record is in serious dispute, which precludes the Court from making the ultimate legal determination of whether a reasonable police officer would have believed he had probable cause to arrest [the plaintiff].") (quotation marks omitted).

Initially, the rights not to be arrested or prosecuted without probable cause were clearly established on August 27, 2015. *See Ricciuti*, 124 F.3d at 127 ("The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right."); *Cook*, 41 F.3d at 77-78 (same). Additionally, the law is clear that "qualified immunity does not protect those who knowingly violate the law." *Marshall v. Sullivan*, 105 F. 3d 47, 53 (2d Cir. 1996); *accord Weyant*, 101 F.3d at 854; *Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994).

Under plaintiff's version of the facts, which must be accepted as true for purposes of the instant motion, the Elmsford defendants engaged in knowing misconduct by, *inter alia*, committing perjury and fabricating evidence. *See* FAC at ¶¶ 65-83. These allegations are sufficient to preclude dismissal based on qualified immunity. *See Ricciuti*, 124 F.3d at 129-30 ("No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee."); *Babi-Ali v. City of New York*, 979 F. Supp. 268, 275 (S.D.N.Y. 1997) ("[T]he right of qualified immunity does not protect those who knowingly

violate the law. Plaintiff has alleged knowing falsification and perjury. Accepting such allegations as true requires this Court to find that the defense of qualified immunity will not protect [defendant] from liability.") (internal citations omitted). Accordingly, Elmsford defendants are not entitled to dismissal based on qualified immunity.

## IV: PLAINTIFF STATES A CLAIM FOR FAILURE TO INTERVENE, COERCION, NEGLIGENCE, SUPERVISORY LIABILITY AND THE DENIAL OF A FAIR TRIAL

"A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *Weaver*, 2014 WL 950041 at *7 (quoting *O'Neill*, 839 F.2d at 11 (collecting cases)) (internal quotation marks omitted). Plaintiff must allege that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." *Jean-Laurent v. Wilkinson,* 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing *O'Neill*, 839 F.2d at 11-12). Here, defeating defendants' motion, plaintiff plausibly alleges the denial of a constitutional right. *See Weaver*, 2014 WL 950041 at *7 ("Because Weaver's complaint alleges facts from which this Court could reasonably infer that at least one of the defendants had reason to know that Weaver was being unjustifiably arrested, her claim may proceed…Although Weaver's complaint does not make clear which officers failed to intervene, she has properly alleged at least one constitutional violation and is entitled to discovery to determine which officers participated directly in the alleged constitutional violation and which officers were present and failed to intervene."); *Anderson v. Branen,* 17 F.3d 552, 557 (2d Cir. 1994).

Plaintiff's § 1983 coercion claim, premised on the detailed allegations that Staples defendants functionally engaged in state action inside the interrogation room, is plausible on this

record, and timely, as it was brought within three years of August 27, 2015. *See Tankleff v. Cty. of Suffolk*, 09 CV 1207 (JS) (AYS), 2017 WL 2729084, *16 (E.D.N.Y. June 23, 2017) (denying motion to dismiss, ordering discovery and collecting cases); *see Weaver v. Brenner*, 40 F.3d 527, 537 (2d Cir. 1994)*; Thomsen*, 2016 WL 590235, at *9.

Plaintiff also states a claim for the denial of a fair trial. "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Gadsden v. City of New York*, 14 CV 6687 (RJD) (RER), 2017 WL 5178439, *4 (E.D.N.Y. Sept. 15, 2017) (citing *Ricciuti*, 124 F.3d at 130 and *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 277 (2d Cir. 2016)); *see Lopez v. City of New York*, 105 F. Supp. 3d 242, 246-47 (E.D.N.Y. 2015) (citation omitted). Probable cause is not a defense to a fair trial claim. *Id.* at *4; *cf. Hines v. City of Yonkers*, 08 CV 3126 (CM), 2011 WL 3055369, *4 (S.D.N.Y. July 20, 2011) ("Any reasonable police officer knows that it violates a subject's constitutional rights to lie about a fact in order to create the illusion of probable cause."). Plaintiff respectfully submits that the Elmsford defendants' argument on this issue, at pp. 15-16 of their brief, misses the point. Plaintiff is not alleging that the white-redacted line in his coerced statement amounts to evidence fabrication. Rather, plaintiff alleges, consistent with the Second Circuit's recent holding in *Garnett*, that the felony complaint containing false averments (as plausibly alleged in the FAC) violated plaintiff's fair trial rights. Such allegations should survive a motion to dismiss on this claim. *See* FAC at ¶¶ 65-83; *Garnett*, 838 F.3d at 277.

The Elmsford defendants are also simply wrong when they argue at pp. 17-18 of their brief that plaintiff cannot recover against the Village for the state law torts of its employees under

*respondeat superior. See, e.g., Rodick v. City of Schenectady,* 1 F.3d 1341, 1348 (2d Cir. 1993) (affirming municipality's liability for police officers' malicious prosecution, based on *respondeat superior*); *Raysor*, 768 F.2d at 38 (reversing dismissal of malicious prosecution claim against Port Authority on theory of *respondeat superior*); *Chimurenga v. City of N.Y.*, 45 F. Supp. 2d 337, 344 (S.D.N.Y. 1999) ("Under the common law, unlike § 1983, a municipality may be held liable for common law false arrest and malicious prosecution on a theory of *respondeat superior*."); *Wu*, 934 F. Supp. at 592 (recognizing municipal employer's liability under *respondeat superior* but denying summary judgment due to factual dispute); *Du Chateau v. Metro-North Commuter R. Co.*, 688 N.Y.S.2d 12, 14-15 (N.Y. App. Div. 1999) (reversing denial of summary judgment for defendant railroad on plaintiff's malicious prosecution claim under *respondeat* principles); *Johnson v. Town of Colonie*, 477 N.Y.S.2d 513, 514 (N.Y. App. Div. 1984) (allowing malicious prosecution action to proceed under theory of *respondeat superior*).

The Elmsford defendants have also violated motion to dismiss standards by unreasonably drawing inferences favorable to defendant Chief Foster, in an attempt to defeat plaintiff's well-pled and documented supervisory liability claim. A fair reading of the letter (FAC Exhibit 23) and email (FAC Exhibit 19) plaintiff sent to Chief Foster, along with plaintiff's visits to precinct (as described in the FAC at ¶¶ 79, 97-103) should be sufficient at the pleading stage to obtain discovery on what Chief Foster knew, when he knew it, and what, if anything, the defendant did regarding the ongoing violation of plaintiff's rights, which continued unabated for months after Foster was notified. *Maloney v. Cty. of Nassau*, 03 CV 4178 (SLT) (MLO), 2010 WL 3940456, *3 (E.D.N.Y. Sept. 30, 2010), *aff'd,* 500 F. App'x 30 (2d Cir. 2012) (denying summary judgment where facts regarding supervisor's knowledge were disputed).

## V: PLAINTIFF WITHDRAWS CERTAIN CLAIMS

Upon research by counsel in connection with the instant opposition, plaintiff has determined that the weight of the authority does not support certain claims pled in the FAC. Accordingly, plaintiff respectfully withdraws and does not oppose dismissal of the following claims: (1) all claims against defendant Village of Elmsford Police Department; (2) all claims against defendant Tariq Akram; (3) all negligence claims against defendants Staples the Superstore East, Inc. and Fabian; and (4) plaintiff's claims of negligent and intentional infliction of emotional distress. Plaintiff respectfully notes that he did not include a claim for *Monell* liability in the FAC, and that he names the Village of Elmsford only as vicariously liable under *respondeat superior* for the state law torts allegedly committed by the police officer defendants in the scope of their employment.

## CONCLUSION

For the foregoing reasons, plaintiff respectfully requests that the Court deny defendants' motions to dismiss, and grant such other and further relief as the Court deems just and proper.[8]

Dated:   New York, New York
         December 13, 2017

HARVIS & FETT LLP
*Attorneys for plaintiff Micah Overby*
305 Broadway, 14th Floor
New York, New York 10007
(212) 323-6880

_____

Gabriel P. Harvis

---

[8] Plaintiff respectfully apologizes for exceeding the Court's page limit for memoranda.