UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
MICAH OVERBY,

                                    Plaintiff,

            - against -

WENDELL ERIC FABIAN; TARIQ AKRAM; STAPLES
THE OFFICE SUPERSTORE EAST, INC.; Detective
GIANPAOLO DILISIO #36; Police Officer MONTESANO
#42; Elmsford Police Chief STEPHEN FOSTER; VILLAGE
OF ELMSFORD; ELMSFORD POLICE DEPARTMENT;
and JOHN AND JANE DOE 1 through 10,

                                    Defendants.
-----------------------------------------------------------------------x

**OPINION & ORDER**

No. 17-CV-3377 (CS)

<u>Appearances:</u>
Gabriel P. Harvis
Harvis & Fett LLP
New York, New York
*Counsel for Plaintiff*

Michael K. Burke
Burke, Miele, Golden & Naughton, LLP
Goshen, New York
*Counsel for the Elmsford Defendants*

Christine L. Hogan
Craig R. Benson
Jennifer L. Taiwo
Littler Mendelson, P.C.
New York, New York
*Counsel for the Staples Defendants*

<u>Seibel, J.</u>

        Before me are the motions to dismiss of:  (1) Defendants Village of Elmsford

("Elmsford"), the Elmsford Police Department (the "EPD"), Police Chief Stephen Foster,

Detective Gianpaolo Dilisio, and Police Officer Montesano (collectively, the "Elmsford

Defendants"), (Doc. 56); and (2) Defendants Staples the Office Superstore East, Inc. ("Staples"),

Wendell Eric Fabian, and Tariq Akram, (collectively, the "Staples Defendants," and together with the Elmsford Defendants, the "Defendants"), (Doc. 50).  For the following reasons, both motions are GRANTED.

## I.    BACKGROUND

I accept as true the facts, but not the conclusions, set forth in Plaintiff's First Amended Complaint.  (Doc. 49 ("FAC").)

### A.    The Parties

Plaintiff Micah Overby is a resident of Westchester County, New York.  (FAC ¶ 7.) Elmsford is a municipality that operates the EPD.  (*Id.* ¶ 11.)  Detective Dilisio, Officer Montesano, Chief Foster, and John and Jane Does 1-10, at all relevant times, worked for the EPD.  (*Id.* ¶¶ 12-15.)  Staples operates over 1,500 retail stores in North America, including a location at 339 Tarrytown Road, Elmsford, New York (the "Tarrytown Road Staples").  (*Id.* ¶ 8.) Akram, at all relevant times, worked at the Tarrytown Road Staples as general manager, and Fabian was a field loss prevention manager for Staples.  (*Id.* ¶¶ 9-10.)

Plaintiff worked as a copy and print associate at the Tarrytown Road Staples beginning in October 2013.  (*Id.* ¶ 19.)  He was considered an excellent and valued employee, as reflected in his performance evaluations.  (*Id.* ¶¶ 21-22.)  In his spare time, he performed copy and print work for customers if Staples either did not offer the serivce or could not complete the request in the required timeframe.  (*See id.* ¶¶ 23-24.)  In return, Plaintiff accepted, among other things, Staples gift cards which he used to purchase Staples products with his employee discount – usually for personal use, and occasionally to resell.  (*Id.* ¶¶ 28, 31.)

## B. Accusations of Larceny Against Plaintiff

On August 27, 2015, Plaintiff was called into Akram's office, where he met Akram and Fabian. (*Id.* ¶¶ 39, 54.) Police officers were waiting outside, but it is unclear who contacted the police, when they were contacted, and if they were waiting outside when Plaintiff arrived at Akram's office or if they arrived at some point while Plaintiff was in Akram's office. (*See id.* ¶¶ 54, 69-70.) On at least one occasion Akram had instructed Plaintiff to provide free print services to one of the officers who Plaintiff alleges on information and belief to have been a personal friend of Akram. (*Id.* ¶¶ 37, 68.) Plaintiff alleges that the officers conspired with Akram and Fabian to advance false charges against Plaintiff. (*Id.* ¶¶ 68, 80-81, 171.)

Fabian, in a manner that Plaintiff describes as "aggressive[]," "confrontational," and "guilt-presumptive," insisted that Plaintiff was guilty of criminal conduct in connection with two Staples purchases that he had made earlier that month using Staples gift cards, amounting to a purported $5390 loss to Staples. (*Id.* ¶¶ 54-55, 57.) Plaintiff explained to Fabian and Akram that he made those purchases using gift cards that he acquired from his personal clients and that neither purchase violated the law or Staples corporate policies. (*Id.* ¶ 56.) During the meeting, Fabian and Akram also "threatened" Plaintiff with professional and legal consequences if Plaintiff did not provide a written confession. (*Id.* ¶ 61.)

Scared and intimidated, although certain that he did nothing wrong, Plaintiff reluctantly agreed to provide a written statement. (*Id.* ¶ 62; Doc. 52 ("Hogan Decl.") Ex. 1.)[1] The statement said, "Beginning April 2015 to the present, I reloaded Staples cash cards on multiple transactions

---

[1] Exhibit 1 of the Hogan Declaration is Plaintiff's statement to Akram and Fabian. Although Plaintiff attached the same document to the FAC, (FAC Ex. 5), the Court cites to the version attached to the Hogan Declaration because a line is missing from the version attached to the FAC. Plaintiff alleges that "Fabian and Akram, acting in concert with the [EPD] and its officers, materially altered and 'white redacted' [Plaintiff's] written statement to omit a line on the second page." (*Id.* ¶ 80.) No factual basis for this allegation is presented. In any event, the missing line is innocuous and does not affect the meaning of the statement.

using customer credit cards or cash in the amount of $3,500, and additional $1891 in rewards

fraud." (Hogan Decl. Ex. 1 at 1.) It went on to state:

> As a copy [and] print associate, I used my expertise in graphic design to charge customers for design work by having them purchase gift cards for me in return for graphic design work that I would do on my free time. Furthermore, I used the funds that were accredited to the gift cards to make purchases on the Staples website. Some of the purchases that were made by me were used for items that I resold on eBay. The loss that I cause[d] . . . the company by committing what was explained to me as fraud [was] $5,390.

(*Id.* at 1-2.) Both pages of the statement were signed by Plaintiff under a pre-printed statement

that said:

> The preceding matter contained in this statement . . . is offered by me voluntarily, and each element is true, to the best of my knowledge. No threats, promises or acts of coercion or acts of inducement were made towards me by Eric Fabian, nor any other agent of Staples Incorporated, to compel me to submit this statement, and was done so, by me, under my own free will.

(*Id.*) Plaintiff alleges that Fabian "dictat[ed]" the statement, (FAC ¶ 63), but Plaintiff also

alleges that he "included language in the statement that clearly indicated that the transactions at

issue were lawful and authorized by the customers involved," (*id.* ¶ 64). Once the statement was

prepared and signed, the police entered the room and arrested Plaintiff. (*Id.* ¶ 70.)

In a sworn statement witnessed by Officer Montesano, Fabian said that he interviewed

Plaintiff in response to a complaint of grand larceny against Plaintiff. (*Id.* ¶¶ 74-75; *id.* Ex. 11.)

Fabian also stated that Plaintiff "admitted to fraudulently using customers['] credit cards, and

loading funds on Staple[s] [g]ift cards, then purchasing items from Staples and selling [the] same

[items] on eBay for cash" and "gave a written statement confessing" to the same. (*Id.* Ex. 11;

*see* ¶ 74.) Plaintiff contends that Fabian's statements – specifically, the allegations that Fabian

was responding to a "'complaint of grand larceny'" and that Plaintiff "admitted to [the]

fraudulent use of customer credit cards" – were false. (*Id.* ¶¶ 74, 75.)

On or about that same day, Officer Montesano filed a felony complaint against Plaintiff (the "Felony Complaint"), accusing him of grand larceny in the third degree, in violation of N.Y. Penal Law § 155.35. (*Id.* ¶ 82; *id.* Ex. 12.) Following his arrest, Plaintiff was arraigned and bail was set. (*Id.* ¶ 90.) Unable to immediately post bail, Plaintiff was detained for about nine days. (*Id.* ¶ 91.)

Staples terminated Plaintiff's employment but the FAC does not specify when this occurred. (*See id.* ¶ 112.)[2] On May 22, 2016, Plaintiff filed a complaint via Staples' online ethics complaint system, protesting his termination and Fabian's conduct. (*Id.* ¶ 98; *id.* Ex. 24.) On June 17, 2016, someone from Staples informed Plaintiff that his "report ha[d] been investigated . . . and [Staples would] uphold[] the termination." (*Id.* ¶ 99; *id.* Ex. 24.) By letter to Chief Foster dated June 2, 2016, (*id.* ¶ 100; *id.* Ex. 23), and in a follow-up email dated June 14, 2016, (*id.* ¶ 101; *id.* Ex. 19), Plaintiff stated that he had been a victim of extortion by Fabian, that Fabian had provided false information to EPD officers who thereafter arrested him, and that the Westchester District Attorney had thereafter declined to present his case to the grand jury for indictment.

On June 22, 2016, Detective Dilisio filed a superseding misdemeanor information that reduced the felony charge to petit larceny. (*Id.* ¶ 105.) On February 8, 2017, the charge was dismissed with prejudice. (*Id.* ¶ 107; *id.* Ex. 21.)

In addition to losing his job, Plaintiff alleges that the pendency of the larceny prosecution kept him from getting hired for other jobs, including higher-paying jobs. (*Id.* ¶ 112.) He also

---

[2] On August 28, 2015, while Plaintiff was in jail, Akram submitted a "Staples Counseling Form" recommending Plaintiff for termination due to violation of company policy. (*See id.* ¶ 92; *id.* Ex. 20.)

explains that following his arrest, he devoted so much time and money to defending his legal case that he and his wife were unable to continue fertility treatments. (*Id.* ¶¶ 109-10.)

## C. Procedural History

Within ninety days after the alleged claims arose, Plaintiff served a notice of claim upon the Elmsford Village Clerk. (*Id.* ¶ 120.) Plaintiff submitted his original complaint on May 5, 2017. (Doc. 1.) The Elmsford Defendants answered on June 28, 2017. (Doc. 33.) In a letter dated July 5, 2017, Staples and Akram requested a pre-motion conference concerning their proposed motion to dismiss. (Doc. 38.) Fabian answered on July 26, 2017. (Doc. 41.)

On September 13, 2017, this Court held a pre-motion conference to address the potential motion to dismiss. (Minute Entry dated Sept. 13, 2017.) On October 13, 2017, with leave from this Court, Plaintiff submitted the FAC, advancing the following claims:

(1) False arrest against Fabian, Akram, Staples, Officer Montesano, and the three unidentified EPD officers;[3]

(2) Federal malicious prosecution against Fabian, Officer Montesano, Staples, and Detective Dilisio;

(3) State malicious prosecution against Fabian, Officer Montesano, Staples, Detective Dilisio, and Elmsford;

(4) Denial of a right to a fair trial against Fabian, Staples, and Officer Montesano;

(5) Negligent hiring, training, retention, and supervision against all Defendants;

(6) Intentional infliction of emotional distress against Fabian, Akram, Staples, and Elmsford;

(7) Negligent infliction of emotional distress against Fabian, Akram, Staples, and Elmsford;

(8) Failure to intervene against the individual Elmsford Defendants;

---

[3] Plaintiff does not specify whether he intends this as a federal or state claim, but the Court will assume he meant to assert a federal claim, given his reference to the Fourth and Fourteenth Amendments to the Constitution. (FAC ¶ 125.)

(9) Conspiracy against Fabian, Akram, Montesano, and the three unidentified EPD officers;

(10) Supervisory liability against Chief Foster; and

(11) Coercion against Akram and Fabian.

(FAC ¶¶ 124-185.)  Defendants moved to dismiss the FAC on November 13, 2017, (Docs. 50, 56), Plaintiff opposed on December 13, 2017, (Doc. 60 ("P's Opp.")), and Defendants replied on January 5, 2018, (Doc. 62 ("Staples Ds' Reply"), Doc. 63 ("Elmsford Ds' Reply")).

Plaintiff has withdrawn the following claims:  (1) all claims against the EPD; (2) all claims against Akram; (3) all negligence claims against Staples and Fabian; and (4) the claims for negligent and intentional infliction of emotional distress.  (P's Opp. at 26.)  Plaintiff has also clarified that he does not allege municipal liability in connection with the federal claims and contends that Elmsford is vicariously liable under *respondeat superior* only for state law torts committed by EPD officers acting in the scope of their employment.  (*Id.*)

## II.   <u>LEGAL STANDARD</u>

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks omitted).  While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

When deciding a motion to dismiss, a court is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint . . . , and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Weiss v. Inc. Vill. of Sag Harbor*, 762 F. Supp. 2d 560, 567 (E.D.N.Y. 2011) (internal quotation marks omitted). To be incorporated by reference, the complaint must make "a clear, definite and substantial reference to the documents." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 60 (S.D.N.Y. 2010) (internal quotation marks omitted). "A document is integral to the complaint where the complaint relies heavily upon its terms and effect. Merely mentioning a document in the complaint will not satisfy this standard; indeed, even offering limited quotation[s] from the document is not enough." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir.

2016) (alteration in original) (citation and internal quotation marks omitted). I consider on these motions the documents attached to the FAC, as well as the complete statement of Plaintiff, (Hogan Decl. Ex. 1), to which Plaintiff does not object and which is integral to the FAC. Plaintiff does object to my consideration of the transcript of the state court proceedings. Although consideration of that document would be proper, *see Tiraco v. N.Y. State Bd. of Elections*, 963 F. Supp. 2d 184, 189 n.4 (E.D.N.Y. 2013); *Marczeski v. Handy*, 213 F. Supp. 2d 135, 138 n.4 (D. Conn. 2002), I need not consider it in light of my disposition below.

## III. <u>DISCUSSION</u>

### A. **Conspiracy**

Plaintiff alleges that Fabian, Officer Montesano, and three unidentified EPD officers agreed to violate Plaintiff's constitutional rights by arresting and prosecuting Plaintiff in the absence of probable cause. (FAC ¶¶ 170-76.) The FAC does not specify under which statute the conspiracy claim arises, but Plaintiff's opposition memorandum refers to it as a claim under 42 U.S.C. § 1983, (P's Opp. at 19-21), and the Defendants appear to have consented to that framing, (*see* Doc. 58 ("Elmsford Ds' Mem.") at 5-7; Staples Ds' Reply at 7-8). I will therefore treat Plaintiff's conspiracy claim as a § 1983 conspiracy claim.

To survive a motion to dismiss a § 1983 conspiracy claim, a plaintiff must plausibly allege: "(1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002). A "plaintiff must provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks omitted). "[C]laims of

conspiracy containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (internal quotation marks omitted). "'[D]iffuse and expansive allegations are [likewise] insufficient, unless amplified by specific instances of misconduct.'" *Ciambriello*, 292 F.3d at 325 (quoting *Dwares v. City of N.Y.*, 985 F.2d 94, 100 (2d Cir. 1993)). In addition, a plaintiff must plead some "'details of time and place and the alleged effect of the conspiracy,'" *Pollack v. Nash*, 58 F. Supp. 2d 294, 300 (S.D.N.Y. 1999) (quoting *Dwares*, 985 F.2d at 100), although not necessarily the place, date and content of meetings, *Fisk v. Letterman*, 401 F. Supp. 2d 362, 376 (S.D.N.Y. 2005). "[S]ince conspiracy by its very nature is a secretive operation, the elements of a conspiracy may be established through circumstantial evidence." *United States v. Rivera*, 971 F.2d 876, 890 (2d Cir. 1992) (internal quotation marks omitted).

In the context of a private party calling the police, "a private party's mere invocation of state legal procedures [does not] constitute[] . . . 'conspiracy' with state officials." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 951 (1982). This is true even if the private party "deliberately provided false information to police." *Rodriguez v. Winski*, 973 F. Supp. 2d 411, 429 (S.D.N.Y. 2013); *see Vazquez v. Combs*, No. 04-CV-4189, 2004 WL 2404224, at *4 (S.D.N.Y. Oct. 22, 2004) ("[M]erely filing a complaint with the police, reporting a crime, requesting criminal investigation of a person, or seeking a restraining order, even if the complaint or report is deliberately false, does not give rise to a claim against the complainant for a civil rights violation.").

The FAC's allegations pertaining to the § 1983 conspiracy claim are insufficient. While the FAC alleges that Akram and an unnamed detective involved in Plaintiff's arrest were friends, (FAC ¶¶ 37, 68, 71), it does not allege a similar relationship between Fabian and an EPD officer.

Moreover, "[m]ere association with a tortfeasor, . . . without more, is insufficient to support a civil conspiracy claim." *Garcia v. Hebert*, No. 08-CV-95, 2014 WL 1316096, at *2 (D. Conn. Mar. 28, 2014), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order). Further, Plaintiff provides no factual basis for the belief that Akram and the detective were friends. *See Lefkowitz v. John Wiley & Sons, Inc.*, No. 13-CV-6414, 2014 WL 2619815, at *10 (S.D.N.Y. June 2, 2014) (complaint must set forth facts showing basis for information and belief); *Johnson v. Univ. of Rochester Med. Ctr.*, 686 F. Supp. 2d 259, 266 (W.D.N.Y. 2010) (even where necessary evidence is in "exclusive control of the defendant, . . . plaintiff must still set forth the factual basis for that belief"). A store manager offering a "freebie" to a member of the local constabulary is a commonplace and understandable practice which, as a matter of "experience and common sense," *Iqbal*, 556 U.S. at 679, utterly fails to support the inference that the manager or another employee of the same company conspired with the officer to frame an innocent person. Likewise, that four EPD officers "were stationed outside the office ready to arrest [P]laintiff as soon as the 'statement' was completed" and did so, (FAC ¶ 69; *see id.* ¶ 70), may make it reasonable to infer that Akram, Fabian, or some other Staples employee called the police before questioning Plaintiff, but it is unreasonable to further infer that Fabian and the EPD officers concocted a plan to arrest Plaintiff on bogus charges. Retailers no doubt frequently have the police on stand-by when confronting a possibly larcenous employee or customer. None of these facts, individually or collectively, suffice to "nudge[] the[] [conspiracy] claim[] across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. And the FAC's allegations that parties "conspired," (FAC ¶ 68), or took action "[i]n furtherance of [a] conspiracy," (*id.* ¶¶ 69, 81), are insufficient to withstand a motion to dismiss because they are conclusory. *See Gallop*, 642 F.3d at 369.

Plaintiff attempts to draw a favorable comparison to four district court decisions "where police and private [parties] jointly participated in the arrest and prosecution of the plaintiff under circumstances arguably lacking probable cause." (P's Opp. at 19-20.) As a preliminary matter, a § "1983 conspiracy claim is distinct from one of joint action," *Betts v. Shearman*, 751 F.3d 78, 84 n.1 (2d Cir. 2014), but "[t]he concepts of acting 'jointly' or in 'conspiracy with' state actors are intertwined" as "both require the pleading of facts sufficient to show something more than conclusory allegations," *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 445 (E.D.N.Y. 2012). Thus, joint action decisions may be informative.

In two of the decisions, the plaintiffs alleged joint action in the form of a pre-arrest conversation between the arresting officers and the private parties. *See Gordon v. City of N.Y.*, No. 15-CV-2439, 2016 WL 10678073, at *6 (E.D.N.Y July 22, 2016) (observing that plaintiff's allegations – "that he was arrested immediately after [a] discussion [between the officers and the private parties] and that the officers made false statements 'at the behest' of the [private parties]" – were "sufficient to withstand a motion to dismiss"); *Bang v. Utopia Rest.*, 923 F. Supp. 46, 49 (S.D.N.Y. 1996) (reasonable to infer that during lengthy conversation, private party urged officers to arrest plaintiffs, who officers could see had done nothing wrong). The court in *Bang* explained the importance of a twenty-minute conversation between the arresting officers and the private party:

> During the [twenty]-minute conversation preceding the arrests, the police officers had the opportunity to observe that there was no probable cause to arrest either plaintiff. Under th[ose] circumstances, it would be reasonable to infer that during the conversation, [the private party] urged the officers to arrest both plaintiffs, without probable cause, in furtherance of what became the shared goal of depriving plaintiffs of federally guaranteed rights.

923 F. Supp. at 49. Without that conversation and observation – in other words, if the officers arrested the plaintiffs in reasonable reliance on the private party's report of events preceding the

officers' arrival – "it would be difficult to infer joint action because . . . it would not appear that the officers shared the unlawful goal of" the private party. *Id.* at 50. This analysis goes ignored in Plaintiff's opposition memorandum, which makes only a cursory reference to *Bang* and *Gordon* and does not explain how either case applies here. Plaintiff does not allege a similar conversation between the arresting officers and Fabian, nor does he allege that the officers concocted false statements of their own (as opposed to accepting Fabian's falsehoods). Thus, *Bang* and *Gordon* are distinguishable.

In Plaintiff's third case, employees of a retail store accused the plaintiff of shoplifting and then attacked the plaintiff after asking him to go to the store's security office to wait for the police. *See Tchatat v. City of N.Y.*, No. 14-CV-2385, 2015 WL 5091197 at *2 (S.D.N.Y. Aug. 28, 2015). The two responding officers were rude and dismissive towards the plaintiff even though he appeared to be the victim of a physical attack. *Id.* The plaintiff also alleged that the officers failed to review purportedly exculpatory surveillance footage before arresting him. *Id.* *Tchatat* therefore illustrates the principle that a conspiracy between a police officer and a private party may be inferred where the officer, despite the ready availability of reliable, potentially exculpatory evidence, fails to make a minimal inquiry that could confirm or disprove the accuracy of the private party's allegations. Put another way, it is reasonable to infer a conspiracy or joint action when the arresting officer was presented with a glaring reason to doubt the accusation of a private party yet looked the other way. *Cf. Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 119 (2d Cir. 1995) (officer may rely on victim's account absent reason to doubt victim's veracity).

Plaintiff inadequately explains why his case is akin to *Tchatat*. The Court assumes the argument that he intended to make is as follows: the four EPD officers, like the officers in

*Tchatat*, ignored obvious signs that Fabian's accusations were false, and therefore the Court should infer joint action between Fabian and the EPD officers. But this argument falls flat because, as discussed in more detail below, nothing at the time of arrest indicated that Fabian's accusations were false.[4] Further, unlike *Tchatat*, the EPD officers had an inculpatory statement from Plaintiff that corroborated Fabian's allegations. Moreover, Plaintiff here was accused of committing a crime that surveillance footage could not prove or disprove. Thus, *Tchatat* is unhelpful for Plaintiff.

Finally, in *Biswas v. City of New York*, the plaintiff, a high school student, was arrested and suspended for sending threatening emails to two teachers at her school. 973 F. Supp. 2d 504, 512 (S.D.N.Y. 2013). After the charge was dropped, the plaintiff sued school administrators and the arresting officers, asserting false arrest and § 1983 conspiracy claims. *Id.* at 514, 532-33. The plaintiff alleged that the evidence the school officials had against her was "transparently false," and "the police knew that there was no evidence against [her]." *Id.* at 534. The plaintiff also alleged that there was a policy requiring New York Police Department officers to consult with school administrators before arresting a student at school. *Id.* Thus, it was reasonable to infer that the officers consulted with the school administrators before arresting the plaintiff, and because the evidence against the plaintiff was plainly lacking, it was plausible that a conspiracy between the officers – who were physically and verbally abusive to the plaintiff, *see id.* at 512-13 – and the school administrators explained the arrest. Here, there is no similar policy, no similar dearth of evidence, and no similar abuse.

---

[4] Assuming Plaintiff protested his innocence at the time of his arrest, (*see* FAC ¶ 79), that would not suffice as reason to doubt the civilian complainant, as discussed below. Such protestations – a routine feature of police work – cannot rationally support an inference that an officer entered into an agreement to make a false arrest.

In sum, Plaintiff has not alleged sufficient facts plausibly showing an agreement to inflict an unconstitutional injury between Fabian and the four EPD officers that arrested Plaintiff. Accordingly, Plaintiff's conspiracy claim must be dismissed.

**B.      Federal Claims Against the Elmsford Defendants**

1.      <u>False Arrest</u>

Plaintiff alleges that Officer Montesano and the three unidentified EPD officers violated his Fourth Amendment rights by arresting him without probable cause.  (*See* FAC ¶ 125.) Claims for false arrest under § 1983 must be analyzed under the law of the state in which the arrest occurred.  *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004).  Under New York law, to prevail on a false arrest claim, Plaintiff must plausibly allege that:  "(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement[,] and (4) the confinement was not otherwise privileged."  *Jocks v. Tavernier*, 316 F.3d 128, 134-35 (2d Cir. 2003) (internal quotation marks omitted).

Only the fourth prong is in dispute.  An arrest by a police officer is privileged if it is based on probable cause.  *Id.* at 135; *see Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.").  "Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks omitted).  "The existence of probable cause to arrest – even for a crime other than the one identified by the arresting officer – will defeat a claim of false arrest under the Fourth Amendment."  *Figueroa v. Mazza*, 825 F.3d 89, 99 (2d Cir. 2016).  "[I]t is well-established that a law enforcement official has probable cause to

arrest if he received his information from some person, normally the putative victim or eyewitness." *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (internal quotation marks omitted); *see Mistretta v. Prokesch*, 5 F. Supp. 2d 128, 133 (E.D.N.Y. 1998) ("When an officer is advised of a crime by a person who claims to be the victim, and that person signs a complaint accusing another, the officer generally has probable cause to arrest."). Probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

An arresting officer may also avoid liability for a false arrest claim by demonstrating that "he is protected from liability because he has qualified immunity." *Simpson v. City of N.Y.*, 793 F.3d 259, 265 (2d Cir. 2015). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (internal quotation marks omitted). "An officer's [probable cause] determination is objectively reasonable if there was 'arguable' probable cause at the time of the arrest – that is, if officers of reasonable competence could disagree on whether the probable cause test was met." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013) (internal quotation marks omitted); *see Arrington v. City of N.Y.*, 628 F. App'x 46, 49 (2d Cir. 2015) (summary order) ("For false arrest and malicious prosecution claims, an officer's probable cause determination is 'objectively reasonable' provided there was 'arguable' probable cause."). With respect to false arrest, dismissal "is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest." *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *see District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (qualified immunity applies unless "existing precedent" places the unlawfulness "of the particular arrest beyond debate") (internal quotation

marks omitted).  At the motion to dismiss stage, the qualified immunity defense may only be established if it is "based on facts appearing on the face of the complaint."  *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

The Elmsford Defendants argue that Officer Montesano and the three unidentified EPD officers had probable cause or, at a minimum, arguable probable cause to arrest Plaintiff for grand larceny in the third degree.  (Elmsford Ds' Mem. at 9-12.)  Under New York law, "[a] person is guilty of grand larceny in the third degree when he . . . steals property and . . . the value of the property exceeds three thousand dollars."  N.Y. Penal Law § 155.35(1).  "Steal[ing]" is defined as "wrongfully tak[ing], obtain[ing,] or withhold[ing] such property from an owner thereof" and can be committed "by trespassory taking, . . . trick, embezzlement, or obtaining property by false pretenses."  *Id.* § 155.05(1)-(2)(a).

According to the FAC, the arresting officers had statements from Fabian and Plaintiff.  Fabian alleged that Plaintiff "admitted to fraudulently using customers['] credit cards, and loading funds on Staple[s] [g]ift cards, then purchasing items from Staples and selling [them] on eBay for cash," and "gave a written statement confessing to" the same.  (FAC Ex. 11.)  Plaintiff, in his statement, admitted that he "reloaded Staples cash cards on multiple transactions using customer credit cards or cash in the amount of $3,500, and additional $1891 in rewards fraud."  (Hogan Decl. Ex. 1.)  He also said that he "charge[d] customers for design work by having them purchase gift cards for [him] in return for . . . work that [he] would do [in his] free time," "us[ed] the funds that were accredited to the gift cards to make purchases on the Staples website," and resold some of the items on eBay.  (*Id.* at 1-2.)

Based on the facts alleged, the arresting officers had probable cause to arrest Plaintiff for third degree larceny.  It is a fair reading of Plaintiff's statement that customers proffered credit

cards or cash to pay for $3500 in Staples goods and services, and instead of crediting those funds

to the customers' purchases, Plaintiff loaded the corresponding amount on Staples gift cards that

he then used for his own benefit.  It is less clear what "rewards fraud" is, but in the Court's

experience it would refer to the fraudulent claiming of entitlement to benefits under a program

through which the retailer offers cash back for making a specified amount or type of purchase.

In any event, Plaintiff also plainly stated that he loaded $1891 in "rewards fraud" onto the same

cards – activity that, whatever it is, sounds like larceny.

     Plaintiff reads his statement as if it is obvious that the "customer credit cards and cash,"

as well as the "rewards fraud," that he used to load the cards were proceeds of his legitimate

outside design work for customers.  But the statement does not say that.  There is also no

apparent explanation for why a legitimate service provider would require his customers to

purchase gift cards to pay him.  A straightforward, or at least reasonable, reading of the

statement is that Plaintiff loaded the gift cards with both funds that should have gone to Staples

and funds that Plaintiff earned from outside work.  His subsequent use of the cards to buy Staples

goods for resale using his employee discount might not itself amount to larceny, but that does

nothing to undermine the fact that his statement appears to admit to diverting $3500 in customer

payments and $1891 in "rewards fraud" from Staples to himself – which certainly amounts to

larceny.  Consistent with that statement, Fabian said that Plaintiff had "admitted to fraudulently

using customers credit cards and loading funds on Staple[s] [g]ift cards."  (FAC Ex. 11.)  The

officers therefore had, not just from Fabian's statement but from Plaintiff's, probable cause, or at

the very least arguable probable cause, to arrest Plaintiff.[5]

---

[5] It simply cannot be said that every reasonable officer would read Plaintiff's statement as admitting only to loading
legitimate earnings onto the cards, even if Plaintiff meant to admit to only that.  *See Jenkins v. City of N.Y.*, 478 F.3d
76, 87 (2d Cir. 2007) (no qualified immunity "[i]f officers of reasonable competence would have to agree that the
information possessed by the officer at the time of arrest did not add up to probable cause").

Plaintiff argues that his statement "contains truthful exculpatory language" on "the critical issue of customer authorization," (P's Opp. at 8), but the statement implies only that the customers authorized the outside work and the payment for it using Staples cards, not that the customers authorized what reads as if it is a separate issue:  the use of customer credit cards or cash or "rewards fraud" to load such cards.  Plaintiff likewise reads the Felony Complaint, (FAC Ex. 12), as if it charged him with larceny for doing outside work for customers.  But that is not a legitimate reading of the document in conjunction with Plaintiff's and Fabian's statements.  The Felony Complaint specifies that the time frame of the larceny was the same period during which Plaintiff admitted to reloading cards using customer credit cards, cash and "rewards fraud"; that the victim of the larceny was Staples; and that the amount was $5390 ($3500 plus $1891 is $5391).  It is thus plain that the accusation related to the use of customer credit cards, customer cash and "rewards fraud" to load Staples cards, not to the outside work Plaintiff did for Staples customers who purchased gift cards for him in return.

Plaintiff argues that courts should not dismiss false arrest claims at the motion to dismiss stage.  (*See* P's Opp. at 13-14.)  But "the legal principles stated in [false arrest cases decided after the motion to dismiss stage] apply . . . with equal force" to false arrest cases at the motion to dismiss stage.  *Ladoucier v. City of N.Y.*, No. 10-CV-5089, 2011 WL 2206735, at *3 n.4 (S.D.N.Y. June 6, 2011).  "[A] claim under § 1983 may fail [at the motion to dismiss stage] if the plaintiff's version of events establishes probable cause to arrest."  *Terio v. Michaud*, No. 10-CV-4276, 2010 WL 6032586, at *4 (S.D.N.Y. Dec. 3, 2010), *adopted by*, 2011 WL 868661 (S.D.N.Y. Mar. 10, 2011); *see Ladoucier*, 2011 WL 2206735, at *3-4 (dismissing false arrest claim at motion to dismiss stage where complaint alleged facts demonstrating existence of probable cause); *Michaels v. City of N.Y.*, No. 10-CV-2666, 2011 WL 570125, at *6 (S.D.N.Y.

Feb. 16, 2011) (same).  The FAC alleges facts demonstrating probable cause, and therefore it is appropriate to dismiss Plaintiff's false arrest claim now.

Plaintiff also argues that the purported probable cause was based entirely on the uncorroborated statement of an unreliable civilian.  (P's Opp. at 10-11.)  Fabian, as a field loss prevention manager, was a representative of Staples, the putative victim, and therefore his statement gave the arresting officers probable cause.  "[P]robable cause exists if a law enforcement officer received information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity."  *Betts*, 751 F.3d at 82 (alteration and internal quotation marks omitted).  While Plaintiff attempts to discredit Fabian based on his "scandalous" employment history, (P's Opp. at 11; *see* FAC ¶¶ 41-52), the Court need not consider those allegations because they were not available to the arresting officers at the time of the arrest.  *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it . . . .") (emphasis in original) (internal quotation marks omitted).  Moreover, Plaintiff overlooks the significance of his confession, which corroborated Fabian's statement and is itself a basis for probable cause.  *See Bryant v. Crowe*, 697 F. Supp. 2d 482, 490 (S.D.N.Y. 2010) ("[P]olice ha[ve] probable cause to arrest [a] suspect based on his signed confession.") (citing *Bowman v. City of Middletown*, 91 F. Supp. 2d 644, 660-61 (S.D.N.Y. 2000)).  Even if Plaintiff later "disavowed the statement . . . , the police d[id] not have to assume at the time of [the] confession that [he] w[ould] recant the statement." *Id.*[6]

---

[6] The FAC alleges that Fabian "coerced" Plaintiff into making his statement, (FAC ¶¶ 18, 65), presumably through "confrontational, guilt-presumptive law enforcement tactics," (*id.* ¶ 54).  Assuming that to be true, the FAC does not plausibly allege that the arresting officers were aware of Fabian's tactics, or had any reason to doubt the reliability

Finally, to the extent Plaintiff argues that his claims of innocence at the time of arrest imposed on the arresting officers a duty to further investigate, that is incorrect. "[T]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." *Panetta*, 460 F.3d at 395-96 (alteration, citation, and internal quotation marks omitted); *see Wesby*, 138 S. Ct. at 592 (observing that appellate cases "suggest that innocent explanations – even uncontradicted ones – do not have any automatic, probable-cause-vitiating effect"); *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (finding "probable cause where a police officer was presented with different stories from [the] alleged victim[s] and the arrestee"). In other words, "the arresting officer does not have to prove plaintiff's version wrong before arresting him." *Curley*, 268 F.3d at 70; *see Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989) ("It would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest . . . could be [made]."); *Criss v. City of Kent*, 867 F.2d 259, 263 (6th Cir. 1988) (officer "under no obligation to give any credence to a suspect's story"; "[t]o hold otherwise would be to allow every suspect, guilty or innocent, to avoid arrest simply by claiming 'it wasn't me'").

Because the face of the FAC demonstrates that the arresting officers had probable cause – or, at the very least arguable probable cause – to arrest Plaintiff, his false arrest claim must be dismissed.

---

of Plaintiff's statement. To the contrary, Plaintiff's signed statement disclaimed any such tactics and said that Plaintiff had not been subject to threats or coercion. Plaintiff alleges no facts suggesting that the officers had reason to believe otherwise.

2. <u>Malicious Prosecution</u>

Plaintiff alleges a federal malicious prosecution claim against Officer Montesano and Detective Dilisio. (FAC ¶¶ 128-32.) As with Plaintiff's false arrest claim, Plaintiff's malicious prosecution claim must be analyzed under New York law. *See Manganiello v. City of N.Y.*, 612 F.3d 149, 161 (2d Cir. 2010). To establish a malicious prosecution claim under New York law, "a plaintiff must prove (1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." *Id.* (internal quotation marks omitted). The Elmsford Defendants contend that Plaintiff has failed to sufficiently allege the third and fourth elements. (*See* Elmsford Ds' Mem. at 12-15.)[7]

As with false arrest claims, "the existence of probable cause is a complete defense to a claim of malicious prosecution in New York," *Savino v. City of N.Y.*, 331 F.3d 63, 72 (2d Cir. 2003), but unlike false arrest claims, the defendant must have possessed probable cause as to each offense charged, *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991). "In the context of a malicious prosecution claim, probable cause under New York law is the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir. 1994) (internal quotation marks omitted). Therefore, "the existence, or lack, of probable cause is measured as of the time the judicial proceeding is commenced (e.g.,

---

[7] The Elmsford Defendants argue in their reply brief that neither Officer Montesano nor Detective Dilisio initiated the prosecution. (Elmsford Ds' Reply at 5.) The Elmsford Defendants, however, waived this argument by "rais[ing] [it] for the first time in [their] reply brief." *ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 97 n.12 (2d Cir. 2007); *see, e.g., Mateo v. Bristow*, No. 12-CV-5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013). Even if it were not waived, the argument lacks merit because the FAC alleges that Officer Montesano and Detective Dilisio both filed an accusatory instrument against Plaintiff. *See Cameron v. City of N.Y.*, 598 F.3d 50, 63 (2d Cir. 2010); *Leibovitz v. Barry*, No. 15-CV-1722, 2016 WL 5107064, at *11 (E.D.N.Y. Sept. 20, 2016).

the time of the arraignment), not the time of the . . . arrest." *Morgan v. Nassau Cty.*, No. 03-CV-5109, 2009 WL 2882823, at *10 (E.D.N.Y. Sept. 2, 2009) (internal quotation marks omitted). "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined 'by the discovery of some intervening fact.'" *Johnson v. Constantellis*, 221 F. App'x 48, 50 (2d Cir. 2007) (summary order) (quoting *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

The Elmsford Defendants argue that "the arresting officers had probable cause for making the arrest at the time of arrest, and Plaintiff has not alleged the discovery of some intervening fact to impair that finding of probable cause." (Elmsford Ds' Mem. at 14.) Thus, they contend, Officer Montesano and Detective Dilisio had probable cause or, at a minimum, arguable probable cause, to initiate criminal proceedings against Plaintiff. (*Id.* at 13-15.) Plaintiff counters with arguments that address the Staples Defendants' arguments about civilian liability and whether Plaintiff sufficiently alleged favorable termination of the criminal proceeding. (P's Opp. at 15-19.) He does not address probable cause in the context of the malicious prosecution claim, but it is safe to assume that his position would be that the lack of probable cause at the time of arrest establishes lack of probable cause when Officer Montesano filed the Felony Complaint and when Detective Dilisio filed a superseding misdemeanor information. As discussed above, however, the arresting officers had probable cause, or at least arguable probable cause, to arrest Plaintiff for larceny. And the FAC does not allege any intervening fact that came to their attention that would have undermined probable cause.[8]

---

[8] Plaintiff alleges that he protested his innocence to Staples, Chief Foster, the Westchester County District Attorney, and the New York State Attorney General. (FAC ¶ 97; *id.* Exs. 18-19, 23-25.) He does not plausibly allege that these accounts found their way to Officer Montesano or Detective Dilisio before they filed their respective charging instruments. And even if they had, something more than an arrestee's denial of culpability or attribution of false motives to his accuser is necessary to "ma[k]e apparent" the "groundless nature of the charges." *Lowth v. Town of*

Accordingly, Officer Montesano and Detective Dilisio had probable cause to charge Plaintiff with larceny, and Plaintiff's malicious prosecution claim against them is dismissed.

### 3. Fair Trial

Plaintiff alleges that Officer Montesano denied Plaintiff his right to a fair trial by conspiring with Fabian to forward false evidence to prosecutors. (*See* FAC ¶ 144.) "When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983." *Ricciuti*, 124 F.3d at 130. A plaintiff must plausibly plead the following elements: "(1) investigating official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016) (citing *Ricciuti*, 124 F.3d at 130). The third element does not require that a trial actually have occurred as long as "the falsification caused material harm." *Schiller v. City of N.Y.*, No. 04-CV-10178, 2008 WL 200021, at *10 (S.D.N.Y. Jan. 23, 2008), *aff'd*, No. 04-CV-7922, 2009 WL 497580 (S.D.N.Y. Feb. 27, 2009); *see Douglas v. City of N.Y.*, 595 F. Supp. 2d 333, 346 (S.D.N.Y. 2009) (observing that "[t]he Second Circuit has

---

*Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996). Any other rule would mean that an officer would be required to constantly re-investigate to avoid liability. The accused's claim that he was falsely implicated is not exculpatory *evidence* that would make clear the charge was groundless. *See Parisi v. Suffolk Cty.*, No. 04-CV-2187, 2009 WL 4405488, at *11 (E.D.N.Y. Nov. 30, 2009). This is especially so here, where the officers had a written inculpatory statement which Plaintiff later attempted to contradict. "[I]t is difficult to imagine how any criminal defendant could ever be constitutionally prosecuted if mere knowledge of arguably exculpatory evidence alone were sufficient to dissipate probable cause." *Id.* Finally, at the very least Officer Montesano and Detective Dilisio would be entitled to qualified immunity. Officers of reasonable competence could disagree on whether a defendant's recantation of his confession (assuming they were aware of it) nullified probable cause. *See Tompkins v. City of N.Y.*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014) (qualified immunity for malicious prosecution unless new information made it "manifestly unreasonable for the defendant officer to charge the plaintiff with those crimes") (alteration and internal quotation marks omitted).

permitted a claim . . . for violation of the right to fair trial to proceed even where no trial took place," and that in *Ricciuti*, "no trial ever took place; the charges against plaintiff had been dismissed prior to the trial"). Probable cause is not a defense to a denial of fair trial claim. *See Garnett*, 838 F.3d at 278.

The Elmsford Defendants argue that the denial of the right to fair trial claim against Officer Montesano should be dismissed because the FAC does not allege that he fabricated evidence. (Elmsford Ds' Mem. at 15-17.) Plaintiff's response is perfunctory. He argues that "consistent with . . . *Garnett*, . . . the felony complaint containing false averments (as plausibly alleged in the FAC) violated plaintiff's fair trial rights." (P's Opp. at 24.) Plaintiff makes no attempt to explain how *Garnett* applies to this case. The FAC does not allege that Officer Montesano created any false evidence. Rather, it alleges that he relied on Plaintiff's and Fabian's statements – which, as discussed above, he was entitled to do.[9] Absent facts plausibly suggesting that Officer Montesano knew that the statements were false, no fair trial claim will lie. As a result, the denial of the right to fair trial claim against Officer Montesano is dismissed.

### 4. Failure to Intervene

Plaintiff alleges that the Elmsford Defendants had a duty to intervene to prevent the "aforementioned unlawful conduct" but failed to do so, thus violating Plaintiff's Fourth, Fifth, Sixth, and Fourteenth Amendment rights. (*See* FAC ¶¶ 167-68.)

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Terebesi v. Torreso*, 764 F.3d 217, 243 (2d Cir. 2014)

---

[9] Plaintiff's claim in this regard seems to rest on the same implausible interpretation previously discussed – that the statements concerned only private work for Staples customers, not diversion of Staples assets.

(internal quotation marks omitted). "An officer who fails to intercede in the use of excessive force or another constitutional violation is liable for the preventable harm caused by the actions of other officers." *Id.* But "in the absence of a constitutional violation, there can be no violation of the duty to intervene." *Troy v. City of N.Y.*, No. 13-CV-5082, 2014 WL 4804479, at *11 (S.D.N.Y. Sept. 25, 2014) (citing *Curley*, 268 F.3d at 72), *aff'd*, 614 F. App'x 32 (2d Cir. 2015) (summary order). Plaintiff has not alleged facts that rise to the level of a constitutional violation, and therefore his failure-to-intervene claim is dismissed.[10]

5. <u>Supervisory Liability</u>

Plaintiff alleges that Chief Foster "is liable as a supervisor," because "[a]fter being informed of the unlawful conduct of his subordinates, [he] failed to take reasonable remedial measures, or to conduct a reasonable investigation." (FAC ¶¶ 178-79.) But "for a supervisor to be liable under [§] 1983, there must have been an underlying constitutional deprivation." *Blyden v. Mancusi*, 186 F.3d 252, 265 (2d Cir. 1999); *see Raspardo v. Carlone*, 770 F.3d 97, 129 (2d Cir. 2014) (holding that there is no supervisory liability because there was no underlying constitutional violation). Because Plaintiff has not sufficiently alleged an underlying constitutional deprivation, his supervisory-liability claim also fails.

Moreover, even if there were an underlying violation, the claim for supervisory liability would not survive. First, although the Second Circuit has yet to speak definitively, there is a strong argument that after *Iqbal*, 556 U.S. at 677 ("reject[ing]" argument that "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution"), supervisory liability may be predicated only on direct involvement

---

[10] Moreover, even if a claim were stated, the officers who failed to intervene would be entitled to qualified immunity for the same reasons the officers who acted are.

in the constitutional violation or creation of a policy that sanctioned it. *See, e.g., Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) (other theories "impose the exact types of supervisory liability that *Iqbal* eliminated – situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate"), *aff'd*, 387 F. App'x 55 (2d Cir. 2010) (summary order); *see also Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) (expressing "considerable skepticism" that, post-*Iqbal*, supervisor could be held liable for anything other than his own individual actions); *see generally Taylor v. City of N.Y.*, No. 16-CV-7857, 2018 WL 1737626, at *8 n.8 (S.D.N.Y. Mar. 27, 2018) (collecting cases). Neither of those things is alleged here.

Second, even if liability may still be predicated on "the defendant, after being informed of the violation through a report or appeal, fail[ing] to remedy the wrong," *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), Chief Foster would at least be entitled to qualified immunity, because it was objectively reasonable to read Plaintiff's communications to Foster not as seeking help with a wrongful prosecution of Plaintiff, but as seeking the investigation and prosecution of Fabian. Both the letter and email explicitly alleged that Plaintiff had been a victim of extortion by Fabian and sought to report that crime to the police. (FAC Exs. 19, 23.) But "it is well-settled that an individual has no constitutional right to a police investigation, police action, or an arrest or prosecution of another person absent [facts not present here]." *Diefenbacher v. Davenport*, No. 04-CV-1071, 2007 WL 128876, at *4 (N.D.N.Y. Jan. 12, 2007); *see Fox v. City of N.Y.*, No. 03-CV-2268, 2004 WL 856299, at *8 (S.D.N.Y. Apr. 20, 2004) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person.") (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)). "Indeed, courts in the Second Circuit have long held that an individual has no constitutionally protected right to an

investigation by government officials of alleged wrongdoing by other government officials."

*Hayes v. Cty. of Sullivan*, 853 F. Supp. 2d 400, 433 (S.D.N.Y. 2012) (collecting cases).

"The only exception to this rule is when a failure to investigate the alleged official misconduct itself results in the alleged constitutional violation." *Wingate v. Horn*, No. 05-CV-2001, 2007 WL 30100, at *6 (S.D.N.Y. Jan. 4, 2007), *aff'd*, No. 07-2521, 2009 WL 320182 (2d Cir. Feb. 10, 2009) (summary order). But here both missives indicated that the District Attorney had agreed with Plaintiff that there was no evidence he had done anything wrong. In these circumstances, an objective reader reasonably would have believed that any peril to Plaintiff had ended and that no action was necessary to avoid violation of his constitutional rights. And, in any event, for the reasons discussed above, that Chief Foster did not prevent his subordinates from pursuing the larceny charge against Plaintiff would be protected by qualified immunity for the same reasons that the subordinates' pursuit of the charge is protected.[11]

Accordingly, the claim against Chief Foster based on supervisory liability is dismissed.

### C.  Section 1983 Claims Against the Staples Defendants

"Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'" *Ciambriello*, 292 F.3d at 323 (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1003 (1982)) (other internal quotation marks omitted). "[T]o prove a private actor acted under the color of state law when []he engaged in allegedly unconstitutional conduct, a plaintiff must point to evidence tending to show either (1) the existence of joint activity between the private actor and the state or its agents, or (2)

---

[11] In the letter and email to Chief Foster, as in the FAC and his brief on this motion, Plaintiff focuses only on the outside work for which he was paid in gift cards purchased by his clients, and ignores his admission to using customer credit cards, cash and "reward fraud" to reload cards.

a conspiracy between the state or its agents and the private actor." *Carrillos v. Inc. Vill. of Hempstead*, 87 F. Supp. 3d 357, 371 (E.D.N.Y. 2015). As discussed above, Plaintiff has not plausibly alleged a claim for § 1983 conspiracy. Plaintiff does not separately address joint action, but I will assume he would rely on the same allegations to show the existence of a joint activity between Fabian and the arresting officers. For the same reasons, that argument is also unpersuasive. *See Betts*, 751 F.3d at 85 ("[R]equesting police assistance and providing information that led to police action did not make [private party] a joint participant in state action."); *id*. at 86 (claim against private party "as a state actor boils down to the fact that [Plaintiff] was arrested upon the false accusation . . . made against him by a private citizen to the police," which "is insufficient to state a plausible claim that [the private citizen] and the arresting officers shared a common goal of violating [Plaintiff's] rights"). Accordingly, the § 1983 claims against the Staples Defendants are dismissed.

### D.     State Law Claims

"[T]he traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Having determined that all of the claims over which this Court has original jurisdiction should be dismissed, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state law causes of action for malicious prosecution (Claim Three), negligent hiring, training, retention, and supervision

(Claim Five),[12] and coercion (Claim Eleven).  *See id.* (citing 28 U.S.C. § 1367(c)(3)).

Accordingly, Plaintiff's state law claims are dismissed without prejudice.

## IV.    <u>LEAVE TO AMEND</u>

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to

amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to

amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory

motive on the part of the movant, repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility

of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman

v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, (*see* Doc. 49), after having the benefit of

pre-motion letters from the Defendants outlining their proposed grounds for dismissal, (*see* Docs.

38, 42), and the discussion at the September 13, 2017 pre-motion conference, (Minute Entry

dated Sept. 13, 2017).  Plaintiff's failure to fix deficiencies in his previous pleading, after being

provided ample notice of them, is alone sufficient ground to deny leave to amend *sua sponte*.[13]

*See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005)

(denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in

their complaints, including a procedure through which the plaintiffs were provided notice of

defects in the Consolidated Amended Complaint by the defendants and given a chance to amend

---

[12] There is no indication that Claim Five is intended to be a federal claim, but if it is so intended, it is dismissed as entirely conclusory.  *See, e.g.*, *Duryea v. Cty. of Livingston*, No. 06-CV-6436, 2007 WL 1232228, at *5 (W.D.N.Y. Apr. 26, 2007).

[13] The denial of fair trial, failure to intervene, and supervisory liability claims were not specifically discussed, but these claims fail for reasons (among others) that were discussed, (Doc. 57 Ex. A at 7), including the officers' entitlement to rely on information from a complaining witness.

their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Payne v. Malernathew*, No. 09-CV-1634, 2011 WL 3043920, at *5 (S.D.N.Y. July 22, 2011) ("That Plaintiff was provided notice of his pleading deficiencies and the opportunity to cure them is sufficient ground to deny leave to amend *sua sponte*.").

Further, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if he fails to specify how amendment would cure the pleading deficiencies in his complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *see also Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 797 F.3d 160, 190 (2d Cir. 2015) (denial of leave to amend would be proper where "request gives no clue as to how the complaint's defects would be cured") (internal quotation marks omitted).

## V.    **CONCLUSION**

For the reasons stated above, the Elmsford Defendants' motion, (Doc. 56) is GRANTED, and the Staples Defendants' motion, (Doc. 50), is GRANTED. The federal claims (Claims One, Two, Four, Eight, Nine, and Ten) are dismissed with prejudice. The following claims, having been withdrawn, are also dismissed with prejudice: (1) all claims against Akram and the EPD;

(2) all negligence claims against Staples and Fabian; (3) intentional infliction of emotional distress (Claim Six); and (4) negligent infliction of emotional distress (Claim Seven). The remaining state claims (Claims Three, Five, and Eleven) are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 50, 56), and close the case.

**SO ORDERED.**

Dated: July 10, 2018
        White Plains, New York

_____
        CATHY SEIBEL, U.S.D.J.